James J. Nicita
OSB No. 024068
302 Bluff Street
Oregon City, OR   97045
(503) 799-0725
james.nicita@gmail.com

Attorney for Plaintiff / Plaintiff *Pro Se*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **JAMES J. NICITA, a resident of Oregon** | Case No.  3:19-cv-01960-YY |
| **Plaintiff,** | **OBJECTIONS TO FINDINGS AND RECOMMENDATIONS** |
| **v.** | **Oral Argument Requested** |
| **DANIEL W. HOLLADAY, in his individual capacity; in his official capacity as mayor of the City of Oregon City, Oregon, a municipal corporation; and in his official capacity as a Commissioner of the Urban Renewal Commission of Oregon City,** | |
| **THE CITY OF OREGON CITY, a municipal corporation,** | |
| **and** | |
| **THE URBAN RENEWAL AGENCY, an Agency of the City of Oregon City,** | |
| **Defendants.** | |

Now comes the Plaintiff, James. J. Nicita, who files these Objections to the Magistrate's Findings and Recommendations dated October 27, 2021. (ECF 37.)

## I.    INTRODUCTION AND RELIEF REQUESTED

Plaintiff respectfully requests that this Court decline to adopt the foregoing Findings and Recommendations. Plaintiff objects to the entirety of the Magistrate's Findings and Recommendations. For the purposes of these Objections, Plaintiff focuses on certain select matters that he wishes particularly to highlight. Otherwise, Plaintiff relies on his pleadings below, including the following, herein incorporated by reference: 1) Plaintiff's Response to Defendants' Motion to Dismiss (ECF 16, filed April 20, 2020); 2) Plaintiff's Notice of Supplemental Authority (ECF 24, filed April 7, 2021); 3) the transcript of the oral argument held April 8, 2021 (Plaintiff has ordered this transcript and will file it promptly upon receipt); 4) Plaintiff's Motion for Leave to File Amended Complaint (ECF 26 including Attachment No. 1, proposed Second Amended Complaint, both filed May 10, 2021); 5) Plaintiff's Reply brief (ECF 31, filed June 15, 2021); 6) Plaintiff's Second Notice of Supplemental Authority (ECF 34, filed

September 24, 2021); and 7) Plaintiff's Amended Second Notice of

Supplemental Authority (ECF 35, filed September 27, 2021).

Plaintiff respectfully requests that this Court grant Plaintiff's May 10,

2021 Motion to Amend Plaintiff's First Amended Complaint (ECF 26, filed

May 10, 2021) and accept Plaintiffs proposed Second Amended Complaint.

(Attachment #1 to ECF 26). Finally Plaintiff respectfully requests that this

Court deny Defendants' Motion to Dismiss Plaintiff's First Amended

Complaint for Failure to State a Claim Upon Which Relief can be Granted.

(ECF 15, filed April 6, 2020.)

## II. FACTS AND PROCEDURAL HISTORY

Plaintiff accepts the recitation of facts in the Findings &

Recommendation, pp. 2-8, with one exception. At pp. 7-8, the Findings

state, "The court held a hearing on the motion, during which it discussed the

deficiencies in plaintiff's First Amended Complaint and denied defendant's

motion to dismiss as moot in light of plaintiff's forthcoming Motion to File

an Amended Complaint."

It is Plaintiff's recollection that the "deficiencies" discussed related to

Plaintiff's First Amendment retaliation claims. Plaintiff has ordered the

transcript of the April 8, 2021 oral argument to confirm or disprove his own

recollection. As suggested by Plaintiff's later Motion to Amend his First

Amended Complaint (ECF 26, p. 2):

> During oral argument on Defendants' motion to dismiss Plaintiff's First Amended Complaint, the Court proposed that Plaintiff amend his First Amended Complaint to address matters that arose in the briefing. Plaintiff's draft Second Amendment responds to the discussion during oral argument in particular with respect to Plaintiff's First Amendment retaliation claim: namely, whether Defendant Holladay's retaliatory actions consisted of more than "words," and included the imposition of one or more burdens and/or the denial of one or more rights or benefits.

Plaintiff does not recall that any of his pendent state claims were

discussed at oral argument, or that the Magistrate noted any deficiencies to

those claims. If the transcript proves his recollection faulty, he will readily

concede as much.

## III.    STANDARD OF REVIEW

These Objections present multiple legal standards for the Court to

consider. Plaintiff sets them forth below.

### A. Objections to Findings & Recommendations Under Fed. R. Civ. P. 72(b)(3).

The district court "must make a *de novo* determination" of any

objected-to portion of the Magistrate's recommendation. *Barnes v. Chase*

*Home Fin., LLC*, 825 F. Supp. 2d 1057, 1059 (D. Or. 2011). *De novo* review

"means the district court must consider the matter anew, as if it had not been heard before and as if no decision previously had been rendered." *United States v. Boulware*, 350 F. Supp. 2d 837, 841 (D. Hawaii 2004) (citing *Ness v. Comm'r*, 954 F.2d 1495, 1497 (9th Cir. 1992)).

 *B. Liberal Pleading Standard for Pro Se Litigants, Including Pro Se Attorneys*

 A pro se plaintiff's complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam). Thus, the court must construe pro se filings liberally. *Barnes, supra,* 825 F. Supp. 2d at 1060. Even *pro se* attorneys are entitled to the liberal *pro se* pleading standard. *Capp v. County of San Diego*, 940 F3d 1046, 1052 and 1058 (2019).[1]

 *C. Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6).*

 A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of

---

[1] Plaintiff raised this case for the stated proposition at the April 8, 2021 oral argument on Defendants' motion to dismiss, as should be confirmed by the transcript of that hearing once received and filed. Attached as Ex. 1 are the first two pages of the copy of the *Capp* opinion Plaintiff downloaded off the "Fastcase" legal database. Page 2 of the document, under the heading "Counsel," shows the Plaintiff Capp representing himself.

his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ).

Under the *pro se* standard, if a plaintiff fails to state a claim, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts, and should be granted more liberally to *pro se* plaintiffs." *Barnes, supra,* 825 F.Supp.2d at 1060 (D. Or. 2011), citing *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir.2003)..."

A *pro se* litigant is entitled to a written statement of deficiencies to guide the Rule 15 amendment after a complaint has been dismissed pursuant to *Fed R. Civ. Proc.* 12(b)(6). *Noll v. Carlson,* 809 F.2d 1446, 1448-1449 (9th Cir. 1986).

### D. Motion to Amend Complaint Under Fed. R. Civ. P. 15

"Rule 15's policy of favoring amendments to pleadings should be applied with 'extreme liberality.'" *United States v. Webb*, 655 F.2d 977, 979

(9th Cir.1981).  (citing *Rosenberg Brothers & Co. v. Arnold,* 283 F.2d 406

(9th Cir.1960) (per curiam)).  This policy is applied even more liberally to

pro se litigants. *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987).

## IV. ARGUMENT

### A.    *Procedural Errors of the Magistrate Judge*

The Magistrate erred by not applying the liberal standard of review for

*pro se* litigants in this case. Plaintiff cited *Capp v. County of San Diego,*

*supra*, 940 F3d at 1052, for this proposition at oral argument on Defendants'

motion to dismiss, April 8, 2021. The Magistrate's Findings &

Recommendations do not set forth this standard at p. 8, "Part III - Legal

Standard."

The principle error resulting from the Magistrate's failure to employ

the *pro se* standard of review is that Plaintiff was given insufficient notice,

including written notice, of alleged deficiencies in his First Amended

Complaint. As stated above, Plaintiff in particular does not recall the

Magistrate noting deficiencies in his pendent state law claims, although

again Plaintiff qualifies this statement pending receipt of the transcript of the

April 8, 2021 hearing on Defendants' motion to dismiss Plaintiff's First

Amended Complaint.

If the transcript does confirm Plaintiff's recollection, then none of Plaintiff's pendent state claims should be dismissed. In fact, none of Plaintiff's claims in total should be dismissed if the District Court finds that the claims can be cured by specific amendment or additional facts.

> B. *Plaintiff's Sixth Claim for Relief: Due Process:* The Magistrate Misconstrued Plaintiff's Fifth Amendment Due Process Claim Asserted Under *Wisconsin v. Constantineau* and *Paul v. Davis.*

In his motion to amend his First Amended Complaint, Plaintiff added two new claims based on the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. Plaintiff wrote: "During oral argument, Plaintiff notified the Court and Defendant's counsel that he had identified a Due Process claim in briefing his First Amendment claim, related to Defendants' denial without due process of Plaintiff's right and/or interest under Oregon law to his good name and reputation. The draft Second Amended Complaint adds the due process claim." (ECF 26, p. 2.) The authority Plaintiff cites in his proposed Second Amended Complaint is Or. Const. Art. I, Sec. 10. (Proposed SAC, ECF 26, Attachment 1 (hereinafter, "SAC" ___, para. 102.) This constitutional provision states, "No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due

course of law for injury done him in his person, property, or *reputation*."

(Emphasis added.)

In his reply before the Magistrate, Plaintiff further elaborated:

[T]he proposed Second Amended Complaint adds a new Due Process claim (proposed Sixth Claim for Relief) based on Defendants' deprivation without due process of law of Plaintiff's interest in his good name and reputation, said interest established by Oregon state law. *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). *Paul v. Davis,* 424 U.S. 693, 711, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). *Humphries v. County of Los Angeles*, 554 F.3d 1170, 1185 (9th Cir. 2009). *Endy v. County* of Los Angeles, 975 F.3d 757, 764 (9th Cir. 2020).

ECF 31, p. 3.

In *Wisconsin v. Constantineau,* The police chief of Hartford, Wisconsin, pursuant to a state statute that did not provide for notice or hearing, caused to be posted a flyer in all retail liquor outlets in Hartford that sales or gifts of liquor to appellee, a resident of that city, were forbidden for one year. The statute provided for such "posting," without notice or hearing, with respect to any person who "by excessive drinking" produced certain conditions or exhibited specified traits, such as exposing himself or family "to want" or becoming "dangerous to the peace' of the community."
*Wisconsin v. Constantineau, supra*, 400 U.S. at 434-435.

The plaintiff sought an injunction declaring the state statute a violation of her Fourteenth Amendment rights of due process. The Court did so, finding that "The label or characterization given an individual by 'posting,' though a mark of serious illness to some, is to others such a stigma or badge of disgrace that procedural due process requires notice and an opportunity to be heard." *Id.,* at 436. The Court held that "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Id.,* at 437.

The facts in *Paul v. Davis* were similar to those in *Wisconsin v. Constantineau.* Paul, the chief of police of Louisville, Kentucky posted flyers of "active shoplifters" containing a photograph of Davis bearing his name. Davis brought suit under 42 U.S.C. § 1983, alleging that Paul's action under color of law deprived him of his constitutional rights. *Paul v. Davis, supra,* 424 U.S. at 694-697.

However, the *Paul* court distinguished *Wisconsin,* arguably undercuttting the latter almost completely. *Paul* held that reputation was not in and of itself a liberty or property interest protected by the due process

clauses of the Fourteenth Amendment, because such protected interests must

be found in established state law.

> The second premise upon which the result reached by the Court of Appeals could be rested that the infliction by state officials of a "stigma" to one's reputation is somehow different in kind from infliction by a state official of harm to other interests protected by state law is equally untenable. The words "liberty" and "property" as used in the Fourteenth Amendment do not in terms single out reputation as a candidate for special protection over and above other interests that may be protected by state law. While we have in a number of our prior cases pointed out the frequently drastic effect of the "stigma" which may result from defamation by the government in a variety of contexts, this line of cases does not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either "liberty" or "property" by itself sufficient to invoke the procedural protection of the Due Process Clause.

*Paul v. Davis, supra,* 424 U.S. at 701. On the other hand, the *Paul* court

intimated that *if* a state does in fact create a right to one's reputation in state

law, then that right to reputation is protected by Fourteenth Amendment.

> It is apparent from our decisions that there exists a variety of interests which are difficult of definition but are nevertheless comprehended within the meaning of either "liberty" or "property" as meant in the Due Process Clause. *These interests attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state law, and we have repeatedly ruled that the procedural guarantees of the Fourteenth Amendment apply whenever the State seeks to remove or significantly alter that protected status.* In *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), for example, the State by issuing drivers' licenses recognized in its citizens a right to operate a vehicle on the highways of the State. The Court held that the State could not withdraw this right without giving petitioner due process. In *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the State

afforded parolees the right to remain at liberty as long as the conditions of their parole were not violated. Before the State could alter the status of a parolee because of alleged violations of these conditions, we held that the Fourteenth Amendment's guarantee of due process of law required certain procedural safeguards.

In each of these cases, as a result of the state action complained of, *a right or status previously recognized by state law* was distinctly altered or extinguished. It was this alteration, officially removing the interest from the recognition and protection previously afforded by the State, which we found sufficient to invoke the procedural guarantees contained in the Due Process Clause of the Fourteenth Amendment. But the interest in reputation alone which respondent seeks to vindicate in this action in federal court is quite different from the "liberty" or "property" recognized in those decisions. *Kentucky law does not extend to respondent any legal guarantee of present enjoyment of reputation* which has been altered as an result of petitioners' actions. Rather his interest in reputation is simply one of a number which the State may protect against injury by virtue of its tort law, providing a forum for vindication of those interests by means of damages actions. And any harm or injury to that interest, even where as here inflicted by an officer of the State, does not result in a deprivation of any "liberty" or "property" recognized by state or federal law, nor has it worked any change of respondent's status as theretofore recognized under the State's laws. For these reasons we hold that the interest in reputation asserted in this case is neither "liberty" nor "property" guaranteed against state deprivation without due process of law.

Respondent in this case cannot assert denial of any right vouchsafed to him by the State and thereby protected under the Fourteenth Amendment. That being the case, petitioners' defamatory publications, however seriously they may have harmed respondent's reputation, did not deprive him of any "liberty" or "property" interests protected by the Due Process Clause. [Emphasis added.]

*Paul v. Davis, supra,* 424 U.S. at 710-712. Finally, within its discussion, the

*Paul* court included a passage that the Ninth Circuit later termed the "stigma

plus" test:

> "There is undoubtedly language in Constantineau, which is sufficiently ambiguous to justify the reliance upon it by the Court of Appeals:..."
>
> (...)
>
> "'Where a person's good name, reputation, honor, or integrity is at stake *Because of what the government is doing to him*, notice and an opportunity to be heard are essential.' 400 U.S. 433, 437, 91 S.Ct. 507, at 510, 27 L.Ed.2d 515, at 519 (emphasis supplied)."
>
> The last paragraph of the quotation could be taken to mean that if a government official defames a person, without more, the procedural requirements of the Due Process Clause of the Fourteenth Amendment are brought into play. If read that way, it would represent a significant broadening of the holdings of Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952), and Anti-Fascist Comm. v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951), relied upon by the Constantineau Court in its analysis in the immediately preceding paragraph. We should not read this language as significantly broadening those holdings without in any way adverting to the fact if there is any other possible interpretation of Constantineau's language. We believe there is.
>
> We think that the italicized language in the last sentence quoted, "because of what the government is doing to him," *referred to the fact that the governmental action taken in that case deprived the individual of a right previously held under state law the right to purchase or obtain liquor in common with the rest of the citizenry.* "Posting," therefore, significantly altered her status as a matter of state law, *and it was that alteration of legal status which, combined with the injury resulting from the defamation, justified the invocation of procedural safeguards.* The "stigma" resulting from the defamatory character of the posting was doubtless an important factor in evaluating the extent of harm worked by that act, but we do not think that such defamation, standing alone,

deprived Constantineau of any "liberty" protected by the procedural guarantees of the Fourteenth Amendment. [Emphasis added.]

*Paul v. Davis*, 424 U.S. 693, 708-709. "Stigma plus," then, was the stigma created by the defamation, plus the deprivation of the state law right to purchase or obtain liquor. The *Paul* court reached this point because Kentucky had no state law that itself created a right to reputation.

Both *Humphries v. County of Los Angeles* and *Endy v. County of Los Angeles* applied "stigma plus" because California, like Kentucky, does not have a state law that creates a right to reputation. *Humphries* involved the stigma of the publicity of arrest as child abusers, "plus" inclusion on the California Child Abuse Central Index (CACI). *Humphries v. County of Los Angeles, supra*, 554 F.3d 1170 at 1184-1192. *Endy* involved the stigma of being investigated for child abuse "plus" inclusion in the Child Welfare Services Case Management System (CWS/CMS). *Endy v. County of Los Angeles, supra*, 975 F.3d at 764-768.

Plaintiff's case is distinguishable from *Paul, Humphries*, and *Endy*, because unlike in those three cases, where no state law or authority created the right to one's reputation, Oregon has precisely such law/authority: namely, Or. Const. Art. I, Sec. 10. As Plaintiff described in his pleadings

before the magistrate, Oregon Courts have consistently held that this Section of the Oregon Constitution provides that every individual has a remedy by due course of law *for injuries done to them or their reputation. Horton v. Or. Health and Science Univ.*, 359 Or. 168, 179, 376 P.3d 998 (2016).  If Plaintiff did not have an initial right, as enumerated in the plain language of Sec. 10, to his reputation and good name, then that provision would not seek to provide a remedy for injury to Plaintiff's reputation.

The *Horton* Court took pains to point out that there are some injuries for which Art. 1, Sec. 10 does not provide any remedy. *Id.*, at 180, citing *Juarez v. Windsor Rock Products, Inc.*, 341 Or. 160, 173, 144 P.3d 211 (2006) (loss of deceased's society, guidance, and emotional support did not constitute injury to person, property, or reputation within the meaning of remedy clause). In addition, "the legislature has modified common-law duties and, on occasion, has eliminated common-law causes of action when the premises underlying those duties and causes of action have changed." *Horton*, *supra,* 359 Or. at 219, citing *Perozzi v. Ganiere*, 149 Or. 330, 348, 40 P.2d 1009 (1935).

However, the legislature's power is not absolute. Art. 1, Sec. 10 is a constitutional limit on the legislature's authority to modify or repeal a

common law cause of action. The Court considers "whether the common-law cause of action that was modified continues "to protect *core interests* against injury to persons, property, or reputation..." *Horton, supra,* 359 Or. at 219-220.[2]

Therefore, Plaintiff's interest in his reputation and good name are protected by Or. Const. Art. 1, Sec. 10, a provision of Oregon state law. By extension, for the purposes of Plaintiff's First Amendment retaliation claim, Plaintiff's good name and reputation are a tangible interest impacted by Defendant Holladay's retaliatory activity; and for the purposes of Plaintiff's Due Process claim Defendants have deprived Plaintiff of his good name and reputation without due process of law under the Fourteenth Amendment to the U.S. Constitution.

The Magistrate's Findings & Recommendations err in numerous ways. To begin with, the Findings suggest that Plaintiff is asserting a "stigma

---

[2] See also, *Horton, supra,* 359 Or. at 283-284 (Landau, J., concurring opinion).

plus" claim, as described by *Endy* and another Ninth Circuit opinion, *Hart v. Parks*, 450 F.3d 1059, 1070 (9th Cir. 2006)).

Plaintiff is doing no such thing. As described above, Plaintiff's case is not a "stigma plus" case, because Plaintiff does not need the "plus." Because Oregon has a state law provision, Or. Const. Art. 1, Sec. 10, that itself creates an right to and interest in one's reputation, then no "plus" is needed. "Stigma" is enough.

Plaintiff cited *Humphries* and *Endy* not because he was asserting "stigma plus," but rather because they recite the following specific phrase, quoting *Paul*: "a right or status previously recognized by state law." *Humphries*, *supra,* 554 F3d at 1185, quoting *Paul*, *supra*, 424 U.S. at 711; *Endy, supra,* 975 F.3d at 764, quoting *Humphries* and *Paul*, *supra*. He was using that quote to support his "stigma only" position.

The Magistrate's confusion might lie in the unfortunate fact that *Humphries* is written in a manner that creates the misimpression that p. 711 of the *Paul* opinion is the source of the "stigma plus" test. *Humphries*, *supra,* 554 F3d at 1185. Just as unfortunately, *Endy* repeats this precise misattribution. *Endy, supra,* 975 F.3d at 764.

If anything, *Paul*, which does not even use the term "stigma plus," appears to describe the situation later termed "stigma plus" earlier in the opinion, at pp. 708-709, as described above in Plaintiff's explication of *Paul*. See also, *Humphries, supra,* 554 F3d at 1186.

The Magistrate next errs in completely ignoring Plaintiff's discussion of *Horton*. Instead, the Magistrate cites a completely different - and much older - Oregon Supreme Court case, *State v. Hart,* for the proposition that Or. Const. Art. I, Sec. 10 is not a due process clause. 299 Or. 128, 139, 699 P2d 1113 (1985) (en banc). (ECF 37, p. 34.)This case is irrelevant; Plaintiff in no way asserts that this constitutional provision is a due process clause.

The Magistrate's next error is the statement, "First, he cannot rely on the Oregon Constitution alone to create the "plus" for the stigma-plus test if a legally cognizable injury does not otherwise exist. And all of his asserted state law tort claims (and his federal claims) have been rejected, as discussed above."

Plaintiff again responds that he is not arguing "stigma plus." The Magistrate appears to be suggesting that because Defendants have a First Amendment right to defame Plaintiff - which Plaintiff obviously does not concede - then he does not have Fourteenth Amendment due process right to

his interest and his reputation as established by a provision of state law, Or. Const. Art. I, Sec. 10.

It might be a very interesting philosophical and legal question, worthy of law review articles, as to whether a right granted to one party by the First Amendment extinguishes the right granted to another party by the Fourteenth Amendment.

Fortunately, this case is much simpler than that. There is no conflict. Even under the Magistrate's framing of the matter (which again Plaintiff does not concede), the Defendants have a First Amendment right to defame Plaintiff and deprive him of his right to his reputation, *but only if they provide Plaintiff Fourteenth Amendment due process in advance.* That did not happen here.

Finally, the Magistrate errs in stating that Plaintiff did not demonstrate altering or extinguishment of one of his known rights. Plaintiff responds in three ways.

First, Plaintiff's proposed SAC certainly does plead "alteration" to his right to his good reputation. SAC paras 103 and 104. Second, to the extent that Defendant Holladay's defamatory statements were directed towards Plaintiff's professional reputation, they are defamatory *per se*. SAC paras.

69, 74. Third, Plaintiff's proposed Sixth Claim for Relief begins with para. 101, which realleges all previous paragraphs, including paras. 69 and 74 regarding defamation *per se.*

Plaintiff's SAC properly pleads a claim for violation of Plaintiff's Fourteenth Amendment due process rights as to his right and interest in his good name and reputation pursuant to Or. Const. Art. I, Sec. 10.

### C. The Magistrate Erred in Finding that Plaintiff Did Not State a Claim for Libel or Slander

The Magistrate dispenses with Plaintiff's libel (First Claim for Relief in Proposed SAC) and slander (Second Claim for Relief in proposed SAC) claims in a very extensive discussion at ECF 37, pp. 9-19 based on the Ninth Circuit case *Partington v. Bugliosi,* 56 F.3d 1147, 1152 (9th Cir. 1995). The gravamen of the Magistrate's discussion is that in the instant case, under *Partington* the First Amendment speech rights of Defendants trump Plaintiff's rights not to be defamed.

Plaintiff's response is straightforward, incorporating by reference herein the above Section B(1) of these Objections regarding the effect of the Due Process clause. Even if everything the Magistrate says about *Partington* applies - which Plaintiff does not concede - the Defendants are perfectly free

under the First Amendment to defame Plaintiff, but only if they provide

Fourteenth Amendment due process in advance. That did not happen here.

Plaintiff's proposed SAC properly states claims for libel and slander.

D. The Magistrate Erred in Finding that Plaintiff Did Not State a
   Claim for False Light.

The Magistrate erred in rejecting Plaintiff's Third Claim for Relief

based on False Light invasion of privacy. Findings, ECF 37, pp. 19-20. The

Magistrate actually agreed on the one hand that Plaintiff's proposed SAC

states a claim for false light, but on the other hand found that Plaintiff's

claim falls based on the same First Amendment considerations in

*Partington*, by which the Magistrate appears to mean the three-part test

enunciated in *Partingon,* adopted from *Unelko Corp. v. Rooney,* 912 F2d

1049, 1053 (9th Cir. 1990), cert. denied, 499 U.S. 961, 111 S.Ct. 1586, 113

L.Ed.2d 650 (1991), which in turn originated in the U.S Supreme Court's

case *Milkovich v. Lorain Journal Co*., 497 U.S. 1, 110 S.Ct. 2695, 111

L.Ed.2d 1 (1990). The Magistrate also applied a statement from an

out-of-circuit case that a plaintiff may not avoid the strictures of the burdens

of proof associated with defamation by resorting to a claim of false light

invasion. *Moldea v. New York Times Co.*, 22 F.3d 310, 319 (D.C. Cir. 1994)

(citing *Moldea v. New York Times Co.*, 15 F.3d 1137, 1151 (D.C. Cir. 1994).

The Magistrate erred for a simple reason. The three-part *Unelko* test

simply does not apply to false light claims. There is in fact a First

Amendment limitation on a false light claim, but it is a much, much lower

bar: namely, the requirement that a public figure establish that the defendant

acted with "actual malice." *Cantrell v. Forest City Publishing Company*, 419

U.S. 245, 249-251, citing *New York Times Co. v. Sullivan,* 376 U.S. 254,

280; (1974); *Meador v. New Times*, *Inc.* 36 F3d 1103, fn. 5 (9th Cir. 1994),

citing *Cantrell*, *supra.* A plaintiff must prove reckless disregard (or malice)

with respect to each defendant" *Dangerfield v. Star Editorial, Inc.*, 97 F.3d

1458 (9th Cir. 1996) (decided the year *Partington*), citing *Cantrell*, *supra*.

The first paragraph of Plaintiff's proposed SAC, para. 78, reallages

paras 1-76, which includes para. 34, which describes Defendant Holladay

being present at the City Commission meeting that discussed and acted upon

Plaintiff's Land Use Board of Appeals (LUBA) victory, contradicting his

defamatory statements that Plaintiff had never one a single appeal (paras. 41

and 49); paras 70  (Holladay "knew or should have known" that his

statements were false; i.e., he acted with actual malice) and 75 (same). In

addition, within the Third Claim for Relief, para. 81, Plaintiff alleges both

that a) "Defendant Holladay had knowledge of or acted in reckless disregard

as to the falsity of his statements…" and b) "Defendant Holladay knew or

should have known that his statements were false."

Plaintiff's Third Claim for Relief states a claim for False Light

invasion of privacy.

E. The Magistrate Erred in Finding that Plaintiff Did Not State a
Retaliation Claim for Violations of Plaintiff's First Amendment
Rights to Speech and to Petition for the Redress of Grievances.

The Magistrate's Findings regarding Plaintiff's Fifth Claim for Relief

concerning First Amendment retaliation that Plaintiff feels compelled to

highlight. Specifically, at ECF 16, p. 5-6 of Plaintiff's April 20, 2020

Response to Defendant's motion to dismiss Plaintiff's FAC, Plaintiff raised

the Ninth Circuit case  *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016)

for the proposition that a) Otherwise lawful government action may

nonetheless be unlawful if motivated by retaliation for having engaged in

activity protected under the First Amendment; and b) once a Plaintiff has

raised the allegation that a lawful act was nevertheless retaliatory, the burden

then shifts to Defendant Holladay to demonstrate that he would have taken

the same action even in the absence of Plaintiff's protected conduct. *Id.*

The Magistrate simply ignored this fundamental case. This disregard is the root of two of the many errors in the Magistrate's Findings regarding this claim for relief.

The first is Section 5(b)(ii) of the Findings, ECF 37, pp. 27-28, concerning Plaintiff's claim that Defendant Holladay voted to deny Plaintiff a fee waiver in a local land use hearing, in retaliation for Plaintiff's exercise of his right to petition for redress of grievances by filing land use appeals. It was certainly legal for Defendant Holladay to vote to deny Plaintiff's requested waiver of the onerous nearly $8,000 local appeal fee. But it was on Defendant Holladay to establish that he denied the waiver for a non-retaliatory motive. That cannot be established at the stage of an initial complaint.

[Plaintiff notes additionally that at ECF 16, p. 6, fn. 1 of Plaintiff's Response, Plaintiff stated, "If discovery were to reveal that a majority of the members of the City Commission had similarly retaliatory intent in voting to deny Plaintiff's request for a fee waiver and in imposing the onerous local appeal fee on Plaintiff, such facts would warrant an amendment of Plaintiff's complaint to expand this element of Plaintiff's First Amendment retaliation claim to Defendant City of Oregon City as well." Plaintiff would add here

the other Commissioners who voted to impose the onerous appeal fee, in their official capacities.]

The second is Section 5(b)(iii) of the Findings, ECF 37, pp. 28-29, regarding Defendant Holladay's refusal to recuse himself from a local land use hearing after being challenged for bias by Plaintiff. Again, in some circumstances it can be legal for an elected official to refuse to recuse themselves. However, Plaintiff alleges that Defendant Hollday's refusal to recuse himself was retaliatory. Whether or not it was in fact retaliatory requires discovery, testimony, etc., and cannot be resolved at the complaint stage.

In response to the Magistrate's fn. 8 in the Findings and Recommendations, Plaintiff responds that his appeals to the Oregon Court of Appeals and Oregon Supreme Court are simply not relevant here, because in the particular instance, Defendant Holladay's refusal to recuse himself was not one of the issues that Plaintiff raised in that particular appeal to the Court of Appeals. Even if he had, such an appeal would not involve a First Amendment retaliation claim; the two are evaluated on completely different standards. Finally, as to the Magistrate's statement, that "a potential violation of LUBA's impartiality requirements is not necessarily an act that could

'chill a person of ordinary firmness' in the context of a First Amendment
retaliation claim, and plaintiff has failed to plead any affirmative statutes or
caselaw suggesting it is," Plaintiff responds 1) if there is no case law, that is
because this is a case of first impression, 2) *O'Brien v. Welty* is sufficiently
on point, but the Magistrate completely ignored that case; and 3) the
possibility that *a voting majority* of city council might be influenced by the
bias of the mayor in a land use hearing, rendering that land use hearing a
meaningless show, a *fait accompli*, would absolutely chill a person of
ordinary firmness, especially if it involved the prospect of the city council
imposing an onerous official act against the *person* in the form of an
unaffordable $8,000 local appeal fee. Answering the question how many
ordinary people can afford an $8,000 local appeal fee for a land use hearing
immediately answers the question as to whether the prospect of a voting
majority of a city council, influenced by the mayor, imposing such a fee and
refusing to grant a waiver, would chill a person of ordinary firmness.

  The Magistrate acts as if this is a motion for summary judgment. This
is merely the complaint phase of Plaintiff's case. Plaintiff has adequately
pled a First Amendment retaliation claim in his proposed SAC.

///

**V. CONCLUSION**

      For all of the foregoing reasons, Plaintiff respectfully requests that this

Court grant Plaintiff's May 10, 2021 Motion to Amend Plaintiff's First

Amended Complaint (ECF 26, filed May 10, 2021) and accept Plaintiffs

proposed Second Amended Complaint. (Attachment #1 to ECF 26). Finally

Plaintiff respectfully requests that this Court deny Defendants' Motion to

Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim

Upon Which Relief can be Granted. (ECF 15, filed April 6, 2020.)


      DATED November 10, 2021

      Respectfully Submitted,

      <u>s/ James J. Nicita</u>
      James J. Nicita
      OSB No. 024068
      302 Bluff Street
      Oregon City, OR   97045
      (503) 799-0725
      james.nicita@gmail.com

      Attorney for Plaintiff / Plaintiff *Pro Se*

**JONATHAN C. CAPP; N.C., a minor, by
and thru their Guardian ad litem;
J.C., a minor, by and thru their
Guardian ad litem, Plaintiffs-
Appellants,**
**v.**
**COUNTY OF SAN DIEGO; KATHY
JACKSON; BOB PROKESCH;
JOHANNA FIRTH;
SAN DIEGO HEALTH AND HUMAN
SERVICES AGENCY, Defendants-
Appellees.**

**No. 18-55119**

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Argued and Submitted: July 10, 2019
August 30, 2019**

**Summaries:**

**Source: Justia**

Plaintiff and his children filed suit against the County, the Agency, and others, alleging 42 U.S.C. 1983 and Monell claims stemming from a child welfare investigation undertaken by defendants that allegedly violated plaintiff and his children's First, Fourth, and Fourteenth Amendment rights. The district court dismissed the claims as insufficiently pleaded or barred by qualified immunity. The Ninth Circuit held that plaintiff's first amended complaint (FAC) failed to plausibly allege Fourth Amendment, Fourteenth Amendment, and Monell claims. However, the panel held that plaintiff pleaded a plausible First Amendment claim where he alleged that he engaged in protected activity, that the alleged retaliation would objectively have had a chilling effect and that retaliation was the but-for motive for the social worker's actions. Furthermore, the social worker was not entitled to qualified immunity because a reasonable official would know that taking the serious step of threatening to terminate a parent's custody of his children, when the

official would not have taken this step absent her retaliatory intent, violates the First Amendment. Therefore, defendants were not entitled to qualified immunity on the First Amendment claim. The panel affirmed in part, reversed in part, and remanded for further proceedings.

**FOR PUBLICATION**

D.C. No. 3:16-cv-02870-AJB-MDD

OPINION

Appeal from the United States District Court for the Southern District of California Anthony J. Battaglia, District Judge, Presiding

Argued and Submitted July 10, 2019 Pasadena, California

Page 2

Before: MILAN D. SMITH, JR. and MICHELLE T. FRIEDLAND, Circuit Judges, and STANLEY A. BASTIAN,[*] District Judge.

Opinion by Judge Milan D. Smith, Jr.

**SUMMARY**[**]

**Civil Rights**

The panel affirmed in part and reversed in part the district court's dismissal of plaintiffs' claims as insufficiently pled in an action brought by Jonathan Capp and his two minor children arising from a child welfare investigation undertaken by County of San Diego social workers that allegedly violated plaintiffs' First, Fourth, and Fourteenth Amendment rights.

Plaintiffs asserted, in part, that social workers retaliated against Capp in violation of the First Amendment after he questioned abuse allegations against him and criticized the County. Plaintiffs asserted that



Ex. 1

defendants placed Capp on the Child Abuse Central Index and coerced his ex-wife to file an ex parte custody application.

The panel first rejected the retaliation claim premised on the Child Abuse Central Index listing. The panel held that

Page 3

taking the allegations as a whole, the first amended complaint did not plausibly allege that Capp was placed on the Index as intentional retaliation. Focusing on plaintiffs' allegation that defendant social worker coerced Capp's former wife to file the ex parte custody application, the panel found that pursuant to the liberal pleading standard afforded pro se litigants, plaintiffs plausibly alleged that Capp engaged in protected activity, that the alleged retaliation would objectively have had a chilling effect and that retaliation was the but-for motive for the social worker's actions. Plaintiffs therefore pleaded a plausible First Amendment retaliation claim. The panel further concluded that the accused defendant social worker was not entitled to qualified immunity. The panel held that a reasonable official would know that taking the serious step of threatening to terminate a parent's custody of his children, when the official would not have taken this step absent her retaliatory intent, violates the First Amendment.

The panel held that the district court properly dismissed plaintiffs' Fourth Amendment and Fourteenth Amendment claims, and claims brought pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), which alleged that defendants interviewed the minor children while they were at school without Capp's consent. The panel held that the first amended complaint contained no facts as to whether the interviews were conducted without either parent's permission, the length of the interviews, or the specific circumstances of the interviews. Moreover,

the panel held that even if plaintiffs had pleaded a plausible Fourth Amendment claim, defendants would be entitled to qualified immunity because the right of minor children to be free from unconstitutional seizures and interrogations by social workers had not been clearly established.

Page 4

Rejecting the Fourteenth Amendment substantive due process claim, the panel held that although Capp might have been subjected to an investigation by the County's Health and Human Services Agency, that alone was not cognizable as a violation of the liberty interest in familial relations. The panel rejected the *Monell* claim, concluding that plaintiffs failed to plead a plausible constitutional violation stemming from defendants' interviews with the children. Moreover, even if plaintiffs had pleaded a plausible Fourth Amendment claim, the first amended complaint ascribed defendants' alleged misconduct to official policy in a conclusory fashion that was insufficient to state a viable claim.

**COUNSEL**

Jonathan Charles Capp (argued), Law Offices of Jonathan C. Capp, San Diego, California, pro se Plaintiff-Appellant.

Christina Snider (argued), Senior Deputy; Thomas E. Montgomery, County Counsel; Office of County Counsel, San Diego, California; for Defendant-Appellee.

Page 5

**OPINION**

M. SMITH, Circuit Judge:

Plaintiffs Jonathan Capp and his children, N.C. and J.C., assert § 1983 and *Monell* claims against Defendants County of San Diego (the County); the County's Health

Ex. 1



CERTIFICATE OF FILING AND SERVICE

I certify that on November 10, 2021 I filed the foregoing *Objections to Findings and Recommendations* with the U.S. District Court of Oregon via the Court's electronic filing system, and served Defendants Daniel W. Holladay, City of Oregon City, and Oregon City Urban Renewal Agency by E-File to the their following counsel:


John R. Barhoum, OSB No. 045150
Email: john.barhoum@chockbarhoum.com
Jeffery W. Hansen, OSB No. 923290
Email: jeff.hansen@chockbarhoum.com
Joseph A. Rohner, IV, OSB No. 064919
Email: joseph.rohner@chockbarhoum.com
Chock Barhoum LLP
121 SW Morrison St., Suite 415
Portland, OR   97204
503-223-3000


DATED November 10, 2021

s/ James J. Nicita
James J. Nicita
OSB No. 024068
302 Bluff Street
Oregon City, OR   97045
(503) 650-2496          voice
james.nicita@gmail.com

Attorney for Plaintiff