James J. Nicita, OSB No. 024068
302 Bluff Street
Oregon City, OR   97045
Telephone (503)-799-0725
Email: james.nicita@gmail.com

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **JAMES J. NICITA, a resident of Oregon**<br><br>**Plaintiff,**<br><br>v.<br><br>**DANIEL W. HOLLADAY, in his individual capacity and in his official capacity as mayor of the City of Oregon City, Oregon,**<br><br>**and**<br><br>**THE CITY OF OREGON CITY, a municipal corporation,**<br><br>**Defendants.** | **Case No.  3:19-cv-01960-YY**<br><br>**SECOND AMENDED COMPLAINT**<br><br>**SUIT FOR INJUNCTIVE, DECLARATORY AND EQUITABLE RELIEF; AND FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff alleges:

## INTRODUCTION

### 1.

Plaintiff seeks redress against Defendants for denial of his federal First and Fourteenth Amendment rights to exercise free speech and to petition for redress of grievances, without retaliation by Defendants. Plaintiff seeks:

Complaint for Injunctive, Declaratory and Equitable
Relief; and for Damages- 1

**James J. Nicita**
**Attorney at Law**
**302 Bluff Street**
**Oregon City, Oregon 97045**
**p) (503)-799-0725**
**e) james.nicita@gmail.com**

(1)    declarations that Defendants have violated the First and Fourteenth Amendments to the U.S. Constitution.

(2)    declarations that in violating the U.S. Constitution, the Defendants have violated the civil and other rights of the Plaintiff.

(3)    a jury trial to determine whether the Defendants have deprived Plaintiff of his First, and Fourteenth Amendment rights.

(5)    an award of nominal, monetary, punitive and/or compensatory damages, in amounts to be determined at trial, if the jury finds Defendants guilty of the allegations asserted in the previous paragraph;

(6)    injunctive relief ordering Defendant Oregon City to return all costs or fees assessed against Plaintiff in violation of his First and Fourteenth Amendment rights.

(7)    the assessment of reasonable costs, expenses, and attorney fees; and

(8)    other equitable relief that the Court may deem appropriate.

## JURISDICTION

## 2.

Jurisdiction is invoked pursuant 28 U.S.C. §§ 1331 and 1343. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First and Fourteenth Amendments to the Constitution of the United States.

## VENUE

## 3.

Venue of this court is invoked pursuant to 28 U.S.C. § 1391. The events giving rise to the claims occurred within this Division of Oregon, as alleged below. Plaintiff James J. Nicita and

Complaint for Injunctive, Declaratory and Equitable
Relief; and for Damages- 2

**James J. Nicita**
**Attorney at Law**
**302 Bluff Street**
**Oregon City, Oregon 97045**
**p) (503)-799-0725**
**e) james.nicita@gmail.com**

Defendant Daniel W. Holladay both reside in Oregon City, Clackamas County. Defendant City of Oregon City is located in Clackamas County, Oregon.

## PARTIES AND STANDING

### 4.

Plaintiff James J. Nicita is a resident and voter in Oregon City, where he has lived since January of 2007. He owns his home in Oregon City, and pays property taxes to Defendant Oregon City.  He served as an appointed member of the Historic Review Board of Defendant Oregon City from 2008 to 2009. He served as an elected member of the City Commission of Defendant City of Oregon City from 2009 to 2011, and by virtue of that elected office also served as a member of the Urban Renewal Commission (URC) of Defendant Oregon City during that same time period. Plaintiff practices law, and maintains an office in his residence at 302 Bluff Street. Plaintiff specializes in public-interest land use and environmental law. During the period covered by this Complaint, he regularly participated in local land use proceedings. He has appeared *pro se* and as the legal representative of other parties in appeals of land use decisions of Defendant Oregon City.

A.      Plaintiff has been harmed personally and financially by the actions of Defendants in retaliation for Plaintiff's exercise of his rights to speech and to petition for redress of grievances, as set forth in this complaint.

### 5.

At the time Plaintiff filed this case, Defendant Daniel W. Holladay served as mayor of Defendant City of Oregon City.  Holladay previously served as a City Commissioner of

**James J. Nicita**
**Attorney at Law**
**302 Bluff Street**
**Oregon City, Oregon 97045**
**p) (503)-799-0725**
**e) james.nicita@gmail.com**

Defendant City of Oregon City from 1999 to 2003. Upon information and belief, Holladay is an electrician by profession.

**6.**

Defendant City of Oregon City is a municipal corporation and a political subdivision of the State of Oregon.

## GENERAL ALLEGATIONS

**7.**

Shortly after Plaintiff moved to Oregon City in 2007, the urban renewal agency of Defendant Oregon City adopted the 10th Amendment to the Oregon City Urban Renewal Plan. The two centerpieces of the plan were a) a mall on the closed Rossman landfill, known as "The Rivers," and a mixed-used development surrounding Clackamette Cove, and known as "The Cove." The revised plan would subsidize these projects, and the plan, without a public vote, increased by $100 million the urban renewal debt limit, from approximately $30 million to approximately $130 million.

**8.**

Passage of the 10th Amendment provoked a political reaction. Some opponents unsuccessfully petitioned for a referral to the voters of the decision to raise the urban renewal debt limit. Others filed an ultimately unsuccessful lawsuit claiming that the city charter required a public vote before the City could issue urban renewal bonds. In 2008, a group circulated an initiative petition to change the city charter to require a public vote before urban renewal bonds could be issued. Plaintiff participated in this effort, and had collected approximately 100

**James J. Nicita**
**Attorney at Law**
**302 Bluff Street**
**Oregon City, Oregon 97045**
**p) (503)-799-0725**
**e) james.nicita@gmail.com**

signatures on petitions when one the co-chief petitioners, withdrew from the effort, and on that basis, all of the signatures were ruled invalid. The incident demoralized those remaining in the petition drive, and the campaign was not able to recover and collect the required number of signatures.

**9.**

By that time, Plaintiff had decided to run for the City Commission of Oregon City, and was elected that fall of 2008. Three of Plaintiff's most important campaign positions were related to urban renewal: a) opposition to the proposed Rivers mall on the Rossman Landfill; b), skepticism regarding the subsidy for and design of The Cove, including the degree of tree removal involved on the perimeter of Clackamette Cove, and c) support for an amendment to the Oregon City charter to allow citizens the right to vote before the City or its urban renewal agency could issue bonds for urban renewal projects; both The Rivers and The Cove projects were relying on such urban renewal bonding.

**10.**

During his first two years on the City Commission, Plaintiff was, generally, in a numeric 3-2 minority on the City Commission and, generally, a 7-2 minority on the URC.

**11.**

In November 2009, a significant vote took place regarding The Cove proposal. Plaintiff voted as part of a 6-3 minority against purchasing, for $1.2 million, the "work product" of the developer Clackamette Cove, LLC, with whom the OCURA had entered into a "disposition and development agreement." This work product included architectural and engineering drawings, as

Complaint for Injunctive, Declaratory and Equitable
Relief; and for Damages- 5

James J. Nicita
Attorney at Law
302 Bluff Street
Oregon City, Oregon 97045
p) (503)-799-0725
e) james.nicita@gmail.com

well as the work product of Clackamette Cove LLC's own legal counsel. Plaintiff felt that this purchase was a giveaway of taxpayer funds.

## 12.

After the fall 2010 election, Plaintiff was, generally, in a 3-2 numeric majority on the City Commission and, generally, a 5-4 majority on the URC. At the first meeting of the new Commission in January 2011, Plaintiff called for a referral to the voters in the May 2011 election of three charter amendments: a) to give voters the right to vote on urban renewal bond issuance; b) to give the Commission, rather than the city manager, the power to hire and fire the city attorney; and c) based on a suggestion of the new mayor, to institute a May primary for Commission races. The City attorney prepared drafts of these charter amendments. To get the measure on the May 2010 ballot, the City Commission would have to approve the referral by February 16th; which was a tight timeline.

## 13.

The urban renewal charter amendment proposal provoked a ferocious response from a former mayor, Dan Fowler, who served from 1991 to 1999. A real estate developer and co-owner of numerous properties near the site of the proposed Rivers mall, Fowler continued to wield significant influence in city affairs, which he used to advance his financial and development interests. Along with a small group of fellow business owners, and newly-allied political associates such as Defendant Holladay, who supported The Rivers, Fowler  mounted an intense lobbying effort against the urban renewal charter amendment; Holladay vowed to "kill it." Fowler wrote an editorial falsely claiming that Plaintiff wanted to build an incinerator on the

Complaint for Injunctive, Declaratory and Equitable
Relief; and for Damages- 6

**James J. Nicita**
**Attorney at Law**
**302 Bluff Street**
**Oregon City, Oregon 97045**
**p) (503)-799-0725**
**e) james.nicita@gmail.com**

Rossman Landfill instead of The Rivers. His piece called publicly for people to turn out at a City Commission meeting at the Pioneer Center, a city-owned facility with an auditorium. The lobbying pressure quickly succeeded in making another Commissioner abandon his support for the urban renewal charter amendment.

**14.**

Fowler's pressure campaign culminated in a Commission meeting on February 2nd, 2011, where a large crowd of people appeared at the City's Pioneer Center auditorium, most of who opposed the charter amendment and supported The Rivers project. Looking at the crowd from the Commission table, Plaintiff saw several people who supported the charter amendment and/or opposed The Rivers, but who did not speak during the meeting, apparently intimidated by the charter amendment opponents and/or supporters of The Rivers. Now without a majority on Commission, Plaintiff agreed to table all three of the charter amendment proposals, however Plaintiff stood to express his opinion that he still believed from talking to citizens that they wanted the right to vote on urban renewal debt issuance, and that he would continue to support that.  Plaintiff shortly thereafter teamed up with citizens to organize another initiative petition drive to enact the same charter amendment language that the city attorney had prepared for the Commission but which had been tabled.

**15.**

At the subsequent February 16th, 2011 Urban Renewal Commission meeting, also at the Pioneer Center, there was also a very large crowd, but this time the balance of the speakers spoke either against The Rivers or for the charter amendment. One commissioner moved to "invite" the

Complaint for Injunctive, Declaratory and Equitable
Relief; and for Damages- 7

**James J. Nicita**
**Attorney at Law**
**302 Bluff Street**
**Oregon City, Oregon 97045**
**p) (503)-799-0725**
**e) james.nicita@gmail.com**

developer of The Rivers to submit a proposal to the urban renewal agency. Because Plaintiff opposed the project, a position many in the audience that night shared, but in recognition of the many who spoke in favor of the project, he abstained. The motion passed with five votes in favor, two against, and two abstentions.

**16.**

From February until July of 2011, the URC negotiated with the developer over The Rivers. It held executive sessions concerning the negotiations on April 6th, 2011 and April 20th, 2011. Plaintiff raised numerous concerns, including whether the landfill owner might be using urban renewal to inflate artificially the asking price of the landfill, and whether the proposed mall worked economically.

**17.**

At the same time, supporters of The Rivers like Fowler continued to lobby, and began to threaten recall against elected officials. Fowler circulated an e-mail on May 3rd, 2011, in which he threatened, "We have to let our commissioners know that this is important to Oregon City and we expect to get it done. If they don't, we will remove them from office." Ultimately, negotiations failed by mid-June, particularly over the OCURA's demand that the developer and the landfill owner present the URC with a signed sales agreement before the URC would commit urban renewal funds to the project. In July, Fowler and his faction, including Defendant Holladay, launched a recall campaign against Plaintiff.

**18.**

Complaint for Injunctive, Declaratory and Equitable
Relief; and for Damages- 8

**James J. Nicita**
**Attorney at Law**
**302 Bluff Street**
**Oregon City, Oregon 97045**
**p) (503)-799-0725**
**e) james.nicita@gmail.com**

The nominal Chief Petitioner of the recall campaign was an individual named Rex Parks.
At the time Plaintiff filed this case, Parks was serving a prison sentence after having been
convicted of a) Attempt to Commit a Class B Felony - Sexual Abuse in the First Degree,
161.405(2)(c), Felony Class C, committed on or between 04/03/2014 and 04/02/2016; and b)
Delivery of Marijuana to Person Under 18, 475.860(3)(a), Felony Class C, committed on or
between 12/01/2016 and 01/01/2017. *State v. Rex Eliot Parks*, Deschutes County Circuit Court
Case No. 17CR65991.

**19.**

Parks and Defendant Holladay announced the recall campaign in Plaintiff's presence
during the citizen comment agenda item at the City Commission meeting of July 20, 2011.
Holladay read a letter from the owner of the Rossman landfill, who was reacting to a mass e-mail
to constituents Plaintiff had sent out in which he, among other things, reiterated very publicly his
concern that urban renewal not be used to inflate artificially the sales price of the landfill.
Among the false statements Holladay adopted as his own was that Plaintiff could be "single-
handedly" credited with the chasing away of 1,000 plus jobs and hundreds of millions of dollars
in investment. In fact, The Rivers failed because of the terms that were imposed by the
unanimous agreement of the urban renewal commissioners before the latter would enter into a
disposition and development agreement for that project, and primarily that that the developer and
the landowner enter into a purchase and sale agreement and provided it to the OCURA.

**20.**

**James J. Nicita**
**Attorney at Law**
**302 Bluff Street**
**Oregon City, Oregon 97045**
**p) (503)-799-0725**
**e) james.nicita@gmail.com**

During the course of the recall campaign, Defendant Holladay, Fowler, and their

accomplices generated a campaign of virulent propaganda against Plaintiff. In one "robocall,"

Clara Patricia Fowler, nka Patricia M. Jennings, in an extremely angry voice, called Plaintiff "a

Dee-troit lawyer with no roots in Oregon City," said of Plaintiff, "He doesn't care!" and referred

to The Rivers mall as the "Cabela's Center," after a proposed anchor tenant for The Rivers mall.

Another robocall featured Rex Parks, who identified himself by name, and defended Dan Fowler.

Defendant Holladay was overhead using very violent language against Plaintiff in the

headquarters of the recall campaign. On or about December 6, 2011, the recall passed by a vote

of 3,015 to 2,399, 55.7% to 44.3%.

**21.**

In July of 2012, the petition of the group that included Plaintiff to amend the Oregon City

charter to require a vote before the issuance of urban renewal bonded indebtedness qualified for

the November 2012 ballot as Measure 3-407. In November, Measure 3-407 passed by a vote of

9,559 to 3,830, or 71.4% to 28.6%.

**22.**

On January 6th, 2014, as a private citizen, Plaintiff made a presentation to the Oregon

City Citizen Involvement Committee on why he felt that the Oregon City charter should be

amended to empower the Commission rather than the city manager to hire and fire the city

attorney. In the  middle of Plaintiff's presentation, Defendant Holladay suddenly sat next to

Plaintiff at the microphone table, and proceeded to hold forth with no other apparent reason than

to disrupt Plaintiff's presentation and attempt to discredit Plaintiff. Holladay made several false

Complaint for Injunctive, Declaratory and Equitable
Relief; and for Damages- 10

**James J. Nicita**
**Attorney at Law**
**302 Bluff Street**
**Oregon City, Oregon 97045**
**p) (503)-799-0725**
**e) james.nicita@gmail.com**

or unsubstantiated statements in the course of his diatribe, and was corrected on one of his

allegations by then- mayor Doug Neeley:

> **Holladay:** My name is Dan Holladay, and just a little background I am a former City Commissioner, I served four years on the City Commission, served on the school board, various County boards, and other things, and I am the current chairman of the Friends of Willamette Falls Media Center, which runs the Willamette Falls Media Center, which provides the transparency that you see today on the television.
>
> So I guess I just have a few things to say. As my mom used to fondly tell me, "Just because everyone else is jumping off High Rocks Bridge, doesn't necessarily mean you need to. So when we get this big list of say, you know all these other cities are doing it this way, and it's just Oregon City and Tualatin, if you look at the broader picture, all the cities in the state, those numbers change dramatically.
>
> We look at the model charter, and if you look at the author of the model charter, there's a little story behind that. He was a city attorney over in the east- I don't know, Pendleton, Umatilla, something, fifteen or so years ago,- he got terminated by his city manager. And a few years later, he is working fort his law firm, and the League of Oregon Cities comes to them and says, "We want you to write a model charter for cities. And so one his little things that he put in this model charter was a way to prevent another city manager from being terminated by - or another city attorney from being terminated by a city manager - so he wanted it to happen from a political standpoint.
>
> And we're talking about political standpoints. That's where I really have an issue. Because as we have seen in the County and other places, elections mean things. And if a majority turns over on the· City Commission, that can - if we were doing it this way that can facilitate the termination of an attorney. And an attorney, kind of like the municipal court judge, really needs to be able to be just the attorney for the city, and not necessarily being under some kind of political control. Because once they are under that political control, now they are saying, "I have to find a way to make a ruling that pleases the City Commission, rather than making a decision or a ruling that is the best thing for the city..."
>
> […]
>
> The other big issue that I have, is that, while there are a couple little case studies here, I still have yet to see an actual justification. This seems to be a solution in search of a problem. I haven't really seen anything that really jumps out at me that says, "Wow, this is something we really need to change our charter for. And a big part of this is cost control. Let's not forget that [Garvey] Schubert & Barer are not inexpensive folks. So if any individual City Commissioner has the ability to just call up and say "I want to hear what you have to say about this or that…remember every time the attorney picks up the phone the clock starts ticking, and that's expensive. And if we go back to the time that Mr. Nicita was on the City Commission, those legal fees were dramatically higher than any time in the past for any individual City Commissioner.

**James J. Nicita**
**Attorney at Law**
**302 Bluff Street**
**Oregon City, Oregon 97045**
**p) (503)-799-0725**
**e) james.nicita@gmail.com**

So I think a lot of this is really just looking for a second bite of the apple. Because let's not forget that the City Commission has already decided this recently. I don't know, Doug [Neeley] you can probably update me but three or four years ago, in a 4-1 decision, Mr. Nicita being the only yes vote, said they don't want to put this charter amendment forward. So, that's all I have to say.

**Nicita:** Mr. Holladay is incorrect on several of his facts. And one of the things that he is incorrect about is that when we tabled the charter amendment I was in favor of that tabling. That was a unanimous vote to table that question. And part of it was because of the political pressure that Mr. Holladay and others brought to bear on the Commission at that time. So I don't really agree with what Mr. Holladay says on that, or his unsubstantiated charges regarding attorney fees...

**Neeley:** Just for the record, there were three things that were put on for charter consideration, and James Nicita is quite right that it was a unanimous decision to table all of those.

### 23.

In the fall 2014 election for City Commission, Defendant Holladay ran for mayor. A group supporting Holladay called Friends of Oregon City distributed within the Oregonian and Oregon City News a "hit piece" flyer against the opponents of Holladay and the candidates allied with him. The flyer invoked the 2011 recall against Plaintiff. The flyer associated Holladay's mayor opponent with the failure of The Rivers mall, when that individual was in no way associated with the negotiations over The Rivers in 2011. Defendant Holladay was elected mayor in November.

### 24.

On February 15, 2016, as part of public comment on a land use hearing for a proposed expansion of Willamette Falls Hospital in Oregon City, Plaintiff wrote an e-mail to City staff pointing out that the staff report had not been issued seven days in advance of the City Commission's first hearing on the matter, as required by city code. In response, during the City Commission meeting of February 17, Defendant Holladay conceded that the staff report had

Complaint for Injunctive, Declaratory and Equitable Relief; and for Damages- 12

**James J. Nicita**
**Attorney at Law**
**302 Bluff Street**
**Oregon City, Oregon 97045**
**p) (503)-799-0725**
**e) james.nicita@gmail.com**

not been issued per city code, but nonetheless verbally attacked Plaintiff during the

Commission meeting:

> **Holladay:** So, I have from... a letter sent by James Nicita to... looks like to Laura
> Terway, copied to Mr. Kabeiseman and Ms. Richter, discussing this particular thing. I
> bring to your attention that Oregon City for at least the last twenty years has been issuing
> its staff reports and agendas on Friday afternoon for the Wednesday following meeting.
> That was true in the case of the couple of years that Mr. Nicita sat on the Commission.
> Yet for some reason at this particular point in time they've chosen to throw in a little
> wrench into this thing to make it last a couple more weeks, for what I can see as no
> particular good reason, just to slow things down, just to be a fly in the ointment, sand in
> the gears. So, that's where we are. We are going to follow the letter of the law. We're
> going to move it down two weeks. And we are going to do it anyway. It's once again
> wasting the City's time and taxpayer money for useless kinds of things. So, that's my
> statement as just Dan Holladay, not the mayor, not anybody else. But I'm very frustrated
> that this kind of stuff continues to happen by people who want to obfuscate and stop
> anything from happening in Oregon City. So now I would entertain a motion to continue
> this to a date certain of March 2nd.

### 25.

On April 27, 2016, Plaintiff filed with the Oregon Land Use Board of Appeals (LUBA)

an appeal, later joined by others, of Defendant Oregon City's approval of a comprehensive plan

amendment and zone change requested by Historic Properties, LLC, for a parcel of land at the

intersection of Beavercreek Road and Highway 213 in Oregon City. Historic Properties is co-

owned by former Oregon City mayor Dan Fowler, the principal organizer of the 2011 recall

campaign against Plaintiff.

### 26.

Plaintiff successfully secured from LUBA a remand of the City's decision. LUBA

sustained Plaintiff's third assignment of error, that the City had not complied with the

requirement in Oregon Statewide Planning Goal 5 and its implementing regulations by not

**James J. Nicita**
**Attorney at Law**
**302 Bluff Street**
**Oregon City, Oregon 97045**
**p) (503)-799-0725**
**e) james.nicita@gmail.com**

analyzing whether polluted storm water discharges from intensified development created a "conflicting use" with Newell Creek. *Nicita et. al. v. Oregon City et. al.*, LUBA No. 2016-045, 75 Or LUBA 38 (2017).

### 27.

Plaintiff appealed to the Oregon Court of Appeals LUBA's resolution in 2016-045 of his first assignment of error, regarding whether the subject property met the standards for "mixed use corridor" designation with Defendant Oregon City's comprehensive plan and zoning regulations. The Court of Appeals sustained LUBA's opinion below, however it did publish a written opinion regarding the issue. The City cross-appealed from LUBA's remand on the Goal 5 assignment of error, but the Court of Appeals sustained LUBA's remand on this issue in favor of Plaintiff. *Nicita et. al. v. Oregon City et. al.* Court of Appeals case no. A164237, 286 Or App 659 (2017). Plaintiff petitioned the Oregon Supreme Court to review the Court of Appeals' opinion regarding the issue of mixed-use corridor comprehensive plan and zoning designation. The latter denied the petition. Supreme Court case no. S065260, 399 P3d 1087.

### 28.

On or about November 29, 2017, Plaintiff appealed to the City Commission of Oregon City a decision of the Planning Commission approving a master plan for a mixed-used development and Phase I of that development, a hotel to be known as the Abernethy Place Hotel. The applicant was Hackett Hospitality, LLC, of which Historic Properties, LLC held an interest. Plaintiff's was concerned that the design of the hotel did not comply with the 1990 End of the Oregon Trail Master Plan or its 1991 Design Guidelines. As part of his local appeal, Plaintiff

**James J. Nicita**
**Attorney at Law**
**302 Bluff Street**
**Oregon City, Oregon 97045**
**p) (503)-799-0725**
**e) james.nicita@gmail.com**

requested, pursuant to Oregon City Municipal Code (OCMC) 17.50.290(C), a waiver of the local

appeal fee of $3,488.00 plus "actual attorney fees," authorized pursuant to OCMC 17.50.290 and

Resolution 17-18 (2017).

**29.**

The City Commission denied Plaintiff's request for a fee waiver, and assessed Plaintiff

"actual attorney fees" in the amount of $4,427.50, for a total local appeal fee of $7,915.50. The

City Commission voted to sustain the Planning Commission's approval and deny Plaintiff's

appeal.

**30.**

The City Commission heard Plaintiff's appeal on February 7, 2018. After closing the

record and listening to other Commissioners' deliberations, Defendant Holladay made the

following statement:

> **Holladay:** I think we go down a dangerous road when someone makes a mission
> to kill a project just to kill a project.

Defendant Holladay's statement caused Plaintiff intense anguish, humiliation, and mental

distress. Plaintiff stood up in the audience, challenged Defendant Holladay on grounds of bias,

and demanded that he recuse himself from the final vote on Plaintiff's request for a fee waiver

and on the merits of Plaintiff's land use appeal. Defendant Holladay refused to do so. The City

Commission voted to deny Plaintiff's request for a fee waiver, and to deny his land use appeal

appeal.

**31.**

Complaint for Injunctive, Declaratory and Equitable
Relief; and for Damages- 15

**James J. Nicita**
**Attorney at Law**
**302 Bluff Street**
**Oregon City, Oregon 97045**
**p) (503)-799-0725**
**e) james.nicita@gmail.com**

On April 11, 2018, Plaintiff appealed the City Commission's approval of the Abernethy

Place Hotel to LUBA. Plaintiff raised two assignments of error. The first concerned the legality

under state law of Defendant Oregon City's local appeal fee, and the second concerned whether

the proposed Abernethy Place Hotel complied with the 1990 End of the Oregon Trail Master

Plan and 1991 Design Guidelines. On November 30, 2018, LUBA sustained the City's decisions.

*Nicita v. Oregon City, et al,* LUBA No. 2018-038. The Court of Appeals affirmed without

opinion on March 20, 2019. Court of Appeals case no. A169700. The Supreme Court denied

Plaintiff's petition for review on August 1, 2019. Supreme Court case no. S066739.

**32.**

In June 2020, numerous Oregon City residents and voters, not including Plaintiff,

organized and commenced a recall campaign against Defendant Holladay. The filed statement of

justification approved June 23, 2020, alleged, *inter alia*:

- "Holladay is the subject of a misconduct investigation ordered by the four Oregon City Commissioners.
- Taxpayers are footing the bill for multiple lawsuits related to Holladay's corrupt business deals and behavior.
  (...)
- Holladay exhibits dishonest and irresponsible behavior, abusing the power of his office.
- Holladay uses his office to silence and denigrate the voices of elected colleagues and constituents who disagree with him.

**33.**

On October 1, 2020, the Clackamas County Elections Office verified that the Chief

Petitioner had submitted 3,037 valid Oregon City elector signatures for the recall petition.

**34.**

Complaint for Injunctive, Declaratory and Equitable
Relief; and for Damages- 16

**James J. Nicita**
**Attorney at Law**
**302 Bluff Street**
**Oregon City, Oregon 97045**
**p) (503)-799-0725**
**e) james.nicita@gmail.com**

On October 2, 2020, Plaintiff sent an email to counsel for Defendant Holladay and the city attorney of Defendant Oregon City to give notice of Plaintiff's request that Defendant Holladay preserve his official records subject to discovery whether or not he was recalled, and whether or not they were generated on an email account of Defendant Oregon City or a private email account.

**35.**

On November 10, 2020, Oregon City electors voted to recall Defendant Holladay. The statement of justification quoted in part in the preceding paragraph appeared on the ballot. The result was 9,253 votes (68.04%) in favor, and 4,347 (31.96%) votes against.

### CLAIM FOR RELIEF:
### VIOLATION OF FIRST AND FOURTEENTH AMENDMENT

**36.**

Plaintiff realleges paragraphs 1-90.

**37.**

Plaintiff was engaged in constitutionally-protected activity. His land use appeals were protected First Amendment speech and petitions for the redress of grievances. His First Amendment rights are protected through the Fourteenth Amendment.

**38.**

Defendant Holladay's vote to impose an onerous appeal fee on Plaintiff, and his refusal to recuse himself during Plaintiff's Abernethy Hotel appeal would chill a person of ordinary firmness from engaging in the protected activity. As further evidenced by his prior history of disparagement of Plaintiff, Defendant Holladay's retaliatory actions were acts of willful malice,

Complaint for Injunctive, Declaratory and Equitable
Relief; and for Damages- 17

**James J. Nicita**
**Attorney at Law**
**302 Bluff Street**
**Oregon City, Oregon 97045**
**p) (503)-799-0725**
**e) james.nicita@gmail.com**

were intentional, and were undertaken in gross or reckless disregard of Plaintiff's constitutional rights.

**39.**

There is a causal connection between the government Defendant Holladay's retaliatory animus and the subsequent injury to Plaintiff and to Plaintiff's First Amendment-protected rights to petition for the redress of grievances and to speech. Holladay's retaliatory acts would not have occurred but for Plaintiff's exercising constitutional rights, including the right to appeal land use decisions. Plaintiff's actions were substantial and motivating factors in Defendant Holladay's conduct.

**40.**

Defendant Holladay's vote to impose an onerous appeal fee of $7,915.50 on Plaintiff constituted an adverse action imposing an acute financial burden upon Plaintiff. His refusal to recuse himself during the Abernethy Hotel appeal constituted an adverse action that denied Plaintiff of the benefit of an impartial review panel in a quasi-judicial land use proceeding, as guaranteed under Oregon law.

**41.**

Defendant Holladay was acting under the color of Oregon law. He was acting either individually or in his official capacity as Oregon City mayor. He used official meetings of Defendant City of Oregon City to undertake his acts of retaliation against Plaintiff.

**42.**

Complaint for Injunctive, Declaratory and Equitable
Relief; and for Damages- 18

**James J. Nicita**
**Attorney at Law**
**302 Bluff Street**
**Oregon City, Oregon 97045**
**p) (503)-799-0725**
**e) james.nicita@gmail.com**

Upon information and belief, Plaintiff's First Amendment-protected activities were also a substantial and motivating factor in the conduct of a majority of City Commissioners who voted on February 7, 2018, also acting under the color of Oregon law, to deny Plaintiff's request for a fee waiver and to impose an onerous appeal fee of $7,915.50 on Plaintiff; conduct that would chill a person of ordinary firmness from engaging in such protected activities. Therefore Defendant City of Oregon City is also liable to Plaintiff for violation of Plaintiff's First and Fourteenth Amendment rights.

**43.**

WHEREFORE, Plaintiff prays for the following relief:

(1)    declarations that Defendants have violated the First and Fourteenth Amendments to the U.S. Constitution,;

(2)    declarations that in violating the U.S. Constitution, the Defendants have violated the civil and other rights of the Plaintiff.

(3)    a jury trial to determine whether the Defendants have deprived Plaintiff of his First and Fourteenth Amendment rights.

(8)    an award of monetary and compensatory damages of $25,000 respectively, or an amount to be determined at trial, if the jury finds Defendants guilty of the allegations asserted in this complaint;

(9)    punitive damages in the amount of $25,000, or an amount to be determined at trial, for the violation of Plaintiff's First and Fourteenth Amendment Rights.

(10)    nominal damages in an amount to be determined at trial;

(11)    injunctive relief ordering Defendant Oregon City to return all costs or fees assessed against Plaintiff in violation of his First and Fourteenth Amendment rights.

(12)    the assessment of reasonable costs, expenses, and attorney fees; and

**James J. Nicita**
**Attorney at Law**
**302 Bluff Street**
**Oregon City, Oregon 97045**
**p) (503)-799-0725**
**e) james.nicita@gmail.com**

(13)    other equitable relief that the Court may deem appropriate.


DATED: April 20, 2022.

Respectfully Submitted,

s/ James J. Nicita
James J. Nicita, OSB No. 024068
302 Bluff Street
Oregon City, OR   97045
Telephone (503) 799-0725
Email: james.nicita@gmail.com

James J. Nicita
Attorney at Law
302 Bluff Street
Oregon City, Oregon 97045
p) (503)-799-0725
e) james.nicita@gmail.com

CERTFICATE OF FILING AND SERVICE

I certify that on April 20 2022, I filed the foregoing *Second Amended Complaint* with the

U.S. District Court of Oregon via the Court's electronic filing system, and served Defendants

Daniel W. Holladay and City of Oregon City by E-File to the their following counsel:

Jeffery W. Hansen, OSB No. 923290
jeff.hansen@chockbarhoum.com
Jordyn Parsons, OSB No. 174321
jordyn.parsons@chockbarhoum.com
Chock Barhoum LLP
121 SW Morrison St., Suite 415
Portland, OR   97204
503-223-3000

DATED April 20, 2022

s/ James J. Nicita
James J. Nicita
OSB No. 024068
302 Bluff Street
Oregon City, OR   97045
(503) 650-2496   voice
james.nicita@gmail.com

James J. Nicita
Attorney at Law
302 Bluff Street
Oregon City, Oregon 97045
p) (503)-799-0725
e) james.nicita@gmail.com