The Honorable Youlee Yim You

James J. Nicita
OSB No. 024068
302 Bluff Street
Oregon City, OR   97045
(503) 799-0725
james.nicita@gmail.com

Plaintiff *Pro Se*

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| **JAMES J. NICITA, a resident of Oregon** | Case No.  3:19-cv-01960-YY |
| **Plaintiff,** | **DECLARATION OF JAMES NICITA IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL PRODUCTION FROM SCHWABE WILLIAMSON & WYATT, P.C.** |
| **v.** | |
| **DANIEL W. HOLLADAY, in his individual capacity; in his official capacity as mayor of the City of Oregon City, Oregon,** | |
| **and** | |
| **THE CITY OF OREGON CITY, a municipal corporation,** | |
| **Defendants.** | |

I, James Nicita, declare:

    1. I am the Plaintiff in the above-referenced action, and I make this declaration in support

of the accompanying motion to compel production from Schwabe Williamson & Wyatt, P.C.

Declaration of James Nicita in Support of Plaintiff's
Motion to Compel Production From Schwabe
Williamson & Wyatt, P.C. - 1

James J. Nicita
Attorney at Law
302 Bluff Street
Oregon City, Oregon 97045
p) (503)-799-0725
e) james.nicita@gmail.com

(hereinafter "Schwabe.") This declaration is based on personal knowledge, and I am competent to testify to the matters stated herein.

2. I attended the special general meeting of the McLoughlin Neighborhood Association (MNA) on November 20, 2017, during which the MNA purported to reverse its earlier decision to appeal the Oregon City Planning Commission's approval of the proposed Abernethy Place Hotel to the Oregon City City Commission. I saw Mr. Michael C. Robinson in attendance at this meeting.

3. Attached as Ex. A is a true and correct copy of Judge Marco Hernandez's April 4, 2022 Order (Doc. 44) in this instant case, as downloaded from the CM/ECF system of the United States District Court of Oregon.

4. Attached as Ex. B is a true and correct copy of Plaintiff's Second Amended Complaint dated April 20, 2022 (Doc. 47) in the instant case, as downloaded from the CM/ECF system of the United States District Court of Oregon.

5. Attached as Ex. C is a true and correct copy of Defendants Daniel W. Holladay and City of Oregon City's Answer to Plaintiff's Second Amended Complaint dated May 18, 2022 (Doc. 52) in the instant case, as downloaded from the CM/ECF system of the United States District Court of Oregon.

6. Attached as Ex. D are true and correct copies of pertinent pages excerpted from Plaintiff's initial disclosures in the instant case, as served upon Defendants in this case on July 5, 2022.

**Declaration of James Nicita in Support of Plaintiff's
Motion to Compel Production From Schwabe
Williamson & Wyatt, P.C. - 2**

                                      **James J. Nicita
Attorney at Law
302 Bluff Street
Oregon City, Oregon 97045
p) (503)-799-0725
e) james.nicita@gmail.com**

7. Attached as Ex. E. is a true and correct copy of Appendix A of Defendants Daniel Holladay and the City of Oregon City Initial Disclosure Statement Pursuant to FRCP 26(A)(1) dated July 19, 2022 (Doc 55-1) in the instant case, as downloaded from the CM/ECF system of the United States District Court of Oregon.

8. Attached as Ex. F. are true and correct copies of the following:

a)  pp. 1-6 of 13: Plaintiff's first *subpoena duces tecum* to Schwabe dated July 7, 2023, including completed proof of service.

b)  pp. 7-9 of 13: Schwabe's "Objection to Subpoena to Produce Documents, Information, or Objects or Permit Inspection of Premises in a Civil Action" dated July 17, 2023, which I received as an attachment to an email message from Ms. Rayanne Sherwood, Legal Assistant at Schwabe.

c)  pp. 10-13 of 13: My email response to Schwabe's objections, which I emailed to Mr. Colin Folawn, Schwabe general counsel, on August 3, 2023.

9. Attached as Ex. G. are true and correct copies of the following:

a)  pp. 1-6 of 13: Plaintiff's second *subpoena duces tecum* to Schwabe dated August 23, 2023, including completed proof of service of the subpoena on September 5, 2023.

b)  pp. 7-9 of 13: Schwabe's "Objection to Subpoena to Produce Documents, Information, or Objects or Permit Inspection of Premises in a Civil Action" dated September 11, 2023, which I received as an attachment to an email message from Ms. Rayanne Sherwood, Legal Assistant at Schwabe.

10. Attached as Ex. H are true and correct copies of email exchanges between myself and Mr. Colin Folawn, general counsel for Schwabe, and an email report from FreeConferenceCall.com, which document the email and telephonic consultation process prior to

**Declaration of James Nicita in Support of Plaintiff's**
**Motion to Compel Production From Schwabe**
**Williamson & Wyatt, P.C. - 3**

**James J. Nicita**
**Attorney at Law**
**302 Bluff Street**
**Oregon City, Oregon 97045**
**p) (503)-799-0725**
**e) james.nicita@gmail.com**

the filing of the instant motion to compel.

11. Attached as Ex. I are true and correct copies of documents pertaining to my appeal of the Oregon City Planning Commission's approval of the proposed Abernethy Place Hotel to the Oregon City City Commission, and my request for a waiver of the appeal fee. These documents are contained in my personal copy of the local record which Defendant City of Oregon City provided me in the course of my appeal of Defendants Oregon City's final decision to the Oregon Land Use Board of Appeals (LUBA), LUBA No. 2018-038.

12. Attached as Ex. J is a true and correct copy of an invoice dated January 11, 2018 from Oregon City city attorney Bill Kabeiseman to Oregon City city manager Tony Komkol for legal services through the end of 2017, pertaining to Plaintiff's appeal of the Abernethy Place Hotel. Defendants provided this document to Plaintiff in partial compliance with Plaintiff's discovery requests to Defendants in the instant case.

13. Attached as Ex. K are true and correct copies of documents I received from Mr. Daniel Fowler in partial response to the *subpoena duces tecum* I served upon him. (Doc. 86.) The documents from Mr. Fowler's collection each follow the respective cover emails to me from Mr. Fowler to which the documents are attached:

- Ex. K pp. 2-5 of 16 are attached to Ex. K. p. 1 of 16.

- Ex. K pp. 7-8 of 16 are attached to Ex. K. p. 6 of 16.

- Ex. K pp. 10-13 of 16 are attached to Ex. K p. 9 of 16.

- Ex. K pp. 15-16 are attached to Ex. K p. 14 of 16.

Declaration of James Nicita in Support of Plaintiff's
Motion to Compel Production From Schwabe
Williamson & Wyatt, P.C. - 4

James J. Nicita
Attorney at Law
302 Bluff Street
Oregon City, Oregon 97045
p) (503)-799-0725
e) james.nicita@gmail.com

DATED: November 24, 2023


/s/ James J. Nicita
James J. Nicita
OSB No. 024068
302 Bluff Street
Oregon City, OR   97045
(503) 799-0725
james.nicita@gmail.com

Plaintiff *Pro Se*

**Declaration of James Nicita in Support of Plaintiff's**
**Motion to Compel Production From Schwabe**
**Williamson & Wyatt, P.C. - 5**

**James J. Nicita**
**Attorney at Law**
**302 Bluff Street**
**Oregon City, Oregon 97045**
**p) (503)-799-0725**
**e) james.nicita@gmail.com**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMES J. NICITA, an individual,

        Plaintiff,

    v.

DANIEL W. HOLLADAY, in his individual
capacity; in his official capacity as mayor of the City
of Oregon City, Oregon, a municipal corporation;
and in his official capacity as a Commissioner of the
Urban Renewal Commission of Oregon City, and
THE CITY OF OREGON CITY, a municipal
corporation, and THE URBAN RENEWAL AGENCY,
an agency of the City of Oregon City,

        Defendants.

No. 3:19-cv-01960-YY

ORDER

HERNÁNDEZ, District Judge:

    Magistrate Judge You issued a Findings and Recommendation on October 27, 2021, in

which she recommends that this Court deny Plaintiff's Motion for Leave to Amend and grant

Defendant's Motion to Dismiss, resulting in the dismissal of this action with prejudice. F&R, ECF 37. The matter is now before the Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b).

Plaintiff filed timely objections to the Magistrate Judge's Findings and Recommendation. Pl. Obj., ECF 39. When any party objects to any portion of the Magistrate Judge's Findings & Recommendation, the district court must make a *de novo* determination of that portion of the Magistrate Judge's report. 28 U.S.C. § 636(b)(1); *Dawson v. Marshall*, 561 F.3d 930, 932 (9th Cir. 2009); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

The Court has carefully considered Plaintiff's objections, and the Court has also reviewed the pertinent portions of the record *de novo*. The Court adopts Magistrate Judge You's Findings and Recommendation except for her recommendation regarding one claim: Plaintiff's First Amendment retaliation claim based on Defendant Holladay's vote to deny Plaintiff a fee waiver. Although Judge You recommends dismissing that claim, the Court finds that Plaintiff has plausibly plead a viable retaliation claim under *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016).

## First Amendment Retaliation

To state a First Amendment Retaliation claim, a plaintiff must plausibly allege facts supporting three elements:

> [A] plaintiff must show that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct. *Id.*

In *O'Brien*, the Ninth Circuit explained that "lawful government action may nonetheless be unlawful if motivated by retaliation for having engaged in activity protected under the First Amendment." *Id.* (citing an earlier decision holding "that a plaintiff need not establish the

2 - ORDER

absence of probable cause for a police officer's seizure of the plaintiff's personal property to make out a First Amendment retaliation claim"). Indeed, in *O'Brien*, the panel held that a decision by university faculty to initiate disciplinary proceedings against a student would chill a reasonable person's rights even though the disciplinary proceedings and other sanctions were ostensibly appropriate under the university's student conduct code. *See id.* at 933–34. The issue was, as the court explained, "whether defendants imposed that discipline as retaliation for O'Brien's protected activity." *Id.* at 935. Put plainly, a First Amendment retaliation claim cannot fail as a matter of law merely because the allegedly retaliatory conduct was otherwise lawful. *See id.*

Here, viewing the complaint's allegations in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, the Court concludes that he has plausibly pled facts supporting all three elements. The first element is easily disposed of; as Judge You noted, "[c]onstituents have an 'enormous first amendment interest in directing speech about public issues to those who govern their city.'" F&R 25 (citing *White v. City of Norwalk*, 900 F.2d 1421, 1425 (9th Cir. 1990)). So, Plaintiff's assorted challenges and grievances regarding various proposed City developments, including the challenge for which he was denied a fee waiver, were protected under the First Amendment.

Turning to the chilling effect, the Court concludes that Plaintiff has plausibly alleged that Defendant Holladay's conduct "would chill a person of ordinary firmness from continuing to engage in the protect activity." *O'Brien*, 818 F.3d at 932. A "person of ordinary firmness" would find her free speech rights chilled by Defendant Holladay's vote not to waive a nearly $8,000 fee, doubly so where the rest of the Commission agreed, and the fee was actually imposed. Although voting against waiving the fee—which comprised a filing fee and attorney's fees—was

lawful under local law, that lawfulness does not make it any less chilling under *O'Brien*. Voting to impose—or voting not to discharge—a significant financial burden would make an ordinary person think twice before engaging in the protected activity that precipitated such burden. Indeed, it is this "state action" affecting Plaintiff's "tangible interests"—i.e., Holladay's vote to impose a significant fee that was in fact imposed—that allows Plaintiff's retaliation claim to cross the plausibility threshold. *See Mulligan v. Nichols*, 835 F.3d 983, 989 (9th Cir. 2016). Were Plaintiff's claim based solely on Defendant's attendant speech, discussed further below, his claim would likely not meet the "high bar" for retaliation claims arising from speech from government officials. *Id.* But, as pled, Plaintiff focuses on Defendant Holladay's vote to impose an onerous fee, and a jury could find that action "reasonably likely to deter an ordinary person from engaging in protected speech and conduct." *O'Brien*, 818 F.3d at 933 (internal citations omitted).

Finally, the Court concludes that Plaintiff's plausibly alleged that his protected activity was "a substantial or motivating factor in Defendant [Holladay]'s conduct." *Id.* at 932. Just before Defendant Holladay voted to deny Plaintiff's fee request, Holladay stated—on the meeting record and in front of his fellow Commissioners—that "I think we go down a dangerous road when someone makes it a mission to kill a project just to kill a project," allegedly referring to Plaintiff's attempts to stop the development, i.e., his protected activity. SAC ¶ 37. Indeed, Plaintiff alleged several other instances where Defendant Holladay disparaged Plaintiff's past protected activity, strengthening an inference that Plaintiff's current protected activity was a motivating factor in Defendant's vote against waiving the fee. *See, e.g.,* SAC ¶ 30. At the plausibility stage, Plaintiff has done enough. Although Plaintiff may fail to support his claim with admissible evidence, or he may fail to show more than nominal damages because the

evidence reveals that the other Commissioners' votes lacked a retaliatory motive, these potential

roadblocks are irrelevant at the pleading stage. Instead, looking only at the well-pleaded

allegations in the Second Amended Complaint, Plaintiff has plausibly alleged that his protected

conduct was a "substantial or motivating factor" in Defendant Holladay's vote against waiving

the fee. *Id.* at 932. And, again, even supposing that vote was otherwise lawful, that lawfulness

does not preclude Plaintiff's retaliation claim. *See id.*

### Plaintiff's Other Claims

Regarding Plaintiff's objections to Judge You's recommended dismissal of his other

claims, the Court finds they lack merit and agrees with Judge You's recommendation that his

other claims be dismissed with prejudice and will not rehash her thorough analysis. The Court

pauses only to address Plaintiff's global objection that Judge You failed to provide him with a

detailed description of the deficiencies in his amended complaint before deeming further

amendment futile—a service he claims he deserves as a pro se litigant. Pl.'s Br. 7. Tellingly,

Plaintiff objects that he deserved liberal treatment and detailed notice of his complaint's

deficiencies, yet he does not explain how he would cure those deficiencies if he were granted

leave to amend, choosing instead to argue that his allegations were never inadequate in the first

place. Looking to the record, the Court finds that the Magistrate Judge's generous, liberal

treatment of Plaintiff's "pro se" complaint was proper given Plaintiff's status as a member of the

Oregon State Bar.[1] *See Osgood v. Main Street Marketing, LLC*, 2017 WL 131829, at *3 (S.D.

---

[1]Plaintiff was admitted to the Oregon State Bar in 2002, and his present status is "Active
Pro Bono," meaning that he is authorized to provide legal services only to indigent clients
referred by pro bono programs. *See OSB Membership Directory*, Oregon State Bar,
osbar.org/members, (last accessed March 8, 2022).

Ex. A
P. 5 of 6

Cal. 2017) (noting that the contours of the pro-se leniency rule in the context of attorneys representing themselves are ill-defined).

## CONCLUSION

The Court ADOPTS Magistrate Judge You's Findings and Recommendation, ECF 37, except for her recommendation that Plaintiff's First Amendment Retaliation claim be dismissed, which the Court declines to adopt for the reasons described above. Therefore, Plaintiff's Motion for Leave to Amend, ECF 26 is GRANTED in part and DENIED in part, and Defendant's Motion to Dismiss, ECF 15, is GRANTED in part and DENIED in part. Every claim in Plaintiff's Proposed Second Amended Complaint except his First Amendment Retaliation claim against Defendant Holladay based on Holladay's vote to deny Plaintiff's fee waiver is DISMISSED with prejudice.

IT IS SO ORDERED.

DATED: _____ April 4, 2022 _____.

MARCO A. HERNÁNDEZ
United States District Judge

James J. Nicita, OSB No. 024068
302 Bluff Street
Oregon City, OR   97045
Telephone (503)-799-0725
Email: james.nicita@gmail.com

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **JAMES J. NICITA, a resident of Oregon**<br><br>**Plaintiff,**<br><br>v.<br><br>**DANIEL W. HOLLADAY, in his individual capacity and in his official capacity as mayor of the City of Oregon City, Oregon,**<br><br>**and**<br><br>**THE CITY OF OREGON CITY, a municipal corporation,**<br><br>**Defendants.** | **Case No.  3:19-cv-01960-YY**<br><br>**SECOND AMENDED COMPLAINT**<br><br>**SUIT FOR INJUNCTIVE, DECLARATORY AND EQUITABLE RELIEF; AND FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff alleges:

## INTRODUCTION

## 1.

Plaintiff seeks redress against Defendants for denial of his federal First and Fourteenth Amendment rights to exercise free speech and to petition for redress of grievances, without retaliation by Defendants. Plaintiff seeks:

Complaint for Injunctive, Declaratory and Equitable Relief; and for Damages- 1

**James J. Nicita**
**Attorney at Law**
**302 Bluff Street**
**Oregon City, Oregon 97045**
**p) (503)-799-0725**
**e) james.nicita@gmail.com**

(1)    declarations that Defendants have violated the First and Fourteenth Amendments to the U.S. Constitution.

(2)    declarations that in violating the U.S. Constitution, the Defendants have violated the civil and other rights of the Plaintiff.

(3)    a jury trial to determine whether the Defendants have deprived Plaintiff of his First, and Fourteenth Amendment rights.

(5)    an award of nominal, monetary, punitive and/or compensatory damages, in amounts to be determined at trial, if the jury finds Defendants guilty of the allegations asserted in the previous paragraph;

(6)    injunctive relief ordering Defendant Oregon City to return all costs or fees assessed against Plaintiff in violation of his First and Fourteenth Amendment rights.

(7)    the assessment of reasonable costs, expenses, and attorney fees; and

(8)    other equitable relief that the Court may deem appropriate.

## JURISDICTION

### 2.

Jurisdiction is invoked pursuant 28 U.S.C. §§ 1331 and 1343. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First and Fourteenth Amendments to the Constitution of the United States.

## VENUE

### 3.

Venue of this court is invoked pursuant to 28 U.S.C. § 1391. The events giving rise to the claims occurred within this Division of Oregon, as alleged below. Plaintiff James J. Nicita and

Complaint for Injunctive, Declaratory and Equitable
Relief; and for Damages- 2

**James J. Nicita**
**Attorney at Law**
**302 Bluff Street**
**Oregon City, Oregon 97045**
**p) (503)-799-0725**
**e) james.nicita@gmail.com**

Ex. B
P. 2 of 21

Defendant Daniel W. Holladay both reside in Oregon City, Clackamas County. Defendant City of Oregon City is located in Clackamas County, Oregon.

## PARTIES AND STANDING

### 4.

Plaintiff James J. Nicita is a resident and voter in Oregon City, where he has lived since January of 2007. He owns his home in Oregon City, and pays property taxes to Defendant Oregon City.  He served as an appointed member of the Historic Review Board of Defendant Oregon City from 2008 to 2009. He served as an elected member of the City Commission of Defendant City of Oregon City from 2009 to 2011, and by virtue of that elected office also served as a member of the Urban Renewal Commission (URC) of Defendant Oregon City during that same time period. Plaintiff practices law, and maintains an office in his residence at 302 Bluff Street. Plaintiff specializes in public-interest land use and environmental law. During the period covered by this Complaint, he regularly participated in local land use proceedings. He has appeared *pro se* and as the legal representative of other parties in appeals of land use decisions of Defendant Oregon City.

A.      Plaintiff has been harmed personally and financially by the actions of Defendants in retaliation for Plaintiff's exercise of his rights to speech and to petition for redress of grievances, as set forth in this complaint.

### 5.

At the time Plaintiff filed this case, Defendant Daniel W. Holladay served as mayor of Defendant City of Oregon City.  Holladay previously served as a City Commissioner of

Complaint for Injunctive, Declaratory and Equitable
Relief; and for Damages- 3

**James J. Nicita**
**Attorney at Law**
**302 Bluff Street**
**Oregon City, Oregon 97045**
**p) (503)-799-0725**
**e) james.nicita@gmail.com**

Ex. B
P. 3 of 21

Defendant City of Oregon City from 1999 to 2003. Upon information and belief, Holladay is an electrician by profession.

6.

Defendant City of Oregon City is a municipal corporation and a political subdivision of the State of Oregon.

**GENERAL ALLEGATIONS**

7.

Shortly after Plaintiff moved to Oregon City in 2007, the urban renewal agency of Defendant Oregon City adopted the 10th Amendment to the Oregon City Urban Renewal Plan. The two centerpieces of the plan were a) a mall on the closed Rossman landfill, known as "The Rivers," and a mixed-used development surrounding Clackamette Cove, and known as "The Cove." The revised plan would subsidize these projects, and the plan, without a public vote, increased by $100 million the urban renewal debt limit, from approximately $30 million to approximately $130 million.

8.

Passage of the 10th Amendment provoked a political reaction. Some opponents unsuccessfully petitioned for a referral to the voters of the decision to raise the urban renewal debt limit. Others filed an ultimately unsuccessful lawsuit claiming that the city charter required a public vote before the City could issue urban renewal bonds. In 2008, a group circulated an initiative petition to change the city charter to require a public vote before urban renewal bonds could be issued. Plaintiff participated in this effort, and had collected approximately 100

Complaint for Injunctive, Declaratory and Equitable
Relief; and for Damages- 4

**James J. Nicita**
**Attorney at Law**
**302 Bluff Street**
**Oregon City, Oregon 97045**
**p) (503)-799-0725**
**e) james.nicita@gmail.com**

signatures on petitions when one the co-chief petitioners, withdrew from the effort, and on that

basis, all of the signatures were ruled invalid. The incident demoralized those remaining in the

petition drive, and the campaign was not able to recover and collect the required number of

signatures.

**9.**

By that time, Plaintiff had decided to run for the City Commission of Oregon City, and

was elected that fall of 2008. Three of Plaintiff's most important campaign positions were related

to urban renewal: a) opposition to the proposed Rivers mall on the Rossman Landfill; b),

skepticism regarding the subsidy for and design of The Cove, including the degree of tree

removal involved on the perimeter of Clackamette Cove, and c) support for an amendment to the

Oregon City charter to allow citizens the right to vote before the City or its urban renewal agency

could issue bonds for urban renewal projects; both The Rivers and The Cove projects were

relying on such urban renewal bonding.

**10.**

During his first two years on the City Commission, Plaintiff was, generally, in a numeric

3-2 minority on the City Commission and, generally, a 7-2 minority on the URC.

**11.**

In November 2009, a significant vote took place regarding The Cove proposal. Plaintiff

voted as part of a 6-3 minority against purchasing, for $1.2 million, the "work product" of the

developer Clackamette Cove, LLC, with whom the OCURA had entered into a "disposition and

development agreement." This work product included architectural and engineering drawings, as

Complaint for Injunctive, Declaratory and Equitable
Relief; and for Damages- 5

James J. Nicita
Attorney at Law
302 Bluff Street
Oregon City, Oregon 97045
p) (503)-799-0725
e) james.nicita@gmail.com

well as the work product of Clackamette Cove LLC's own legal counsel. Plaintiff felt that this purchase was a giveaway of taxpayer funds.

### 12.

After the fall 2010 election, Plaintiff was, generally, in a 3-2 numeric majority on the City Commission and, generally, a 5-4 majority on the URC. At the first meeting of the new Commission in January 2011, Plaintiff called for a referral to the voters in the May 2011 election of three charter amendments: a) to give voters the right to vote on urban renewal bond issuance; b) to give the Commission, rather than the city manager, the power to hire and fire the city attorney; and c) based on a suggestion of the new mayor, to institute a May primary for Commission races. The City attorney prepared drafts of these charter amendments. To get the measure on the May 2010 ballot, the City Commission would have to approve the referral by February 16th; which was a tight timeline.

### 13.

The urban renewal charter amendment proposal provoked a ferocious response from a former mayor, Dan Fowler, who served from 1991 to 1999. A real estate developer and co-owner of numerous properties near the site of the proposed Rivers mall, Fowler continued to wield significant influence in city affairs, which he used to advance his financial and development interests. Along with a small group of fellow business owners, and newly-allied political associates such as Defendant Holladay, who supported The Rivers, Fowler mounted an intense lobbying effort against the urban renewal charter amendment; Holladay vowed to "kill it." Fowler wrote an editorial falsely claiming that Plaintiff wanted to build an incinerator on the

Complaint for Injunctive, Declaratory and Equitable
Relief; and for Damages- 6

James J. Nicita
Attorney at Law
302 Bluff Street
Oregon City, Oregon 97045
p) (503)-799-0725
e) james.nicita@gmail.com

Rossman Landfill instead of The Rivers. His piece called publicly for people to turn out at a City Commission meeting at the Pioneer Center, a city-owned facility with an auditorium. The lobbying pressure quickly succeeded in making another Commissioner abandon his support for the urban renewal charter amendment.

## 14.

Fowler's pressure campaign culminated in a Commission meeting on February 2nd, 2011, where a large crowd of people appeared at the City's Pioneer Center auditorium, most of who opposed the charter amendment and supported The Rivers project. Looking at the crowd from the Commission table, Plaintiff saw several people who supported the charter amendment and/or opposed The Rivers, but who did not speak during the meeting, apparently intimidated by the charter amendment opponents and/or supporters of The Rivers. Now without a majority on Commission, Plaintiff agreed to table all three of the charter amendment proposals, however Plaintiff stood to express his opinion that he still believed from talking to citizens that they wanted the right to vote on urban renewal debt issuance, and that he would continue to support that.  Plaintiff shortly thereafter teamed up with citizens to organize another initiative petition drive to enact the same charter amendment language that the city attorney had prepared for the Commission but which had been tabled.

## 15.

At the subsequent February 16th, 2011 Urban Renewal Commission meeting, also at the Pioneer Center, there was also a very large crowd, but this time the balance of the speakers spoke either against The Rivers or for the charter amendment. One commissioner moved to "invite" the

Complaint for Injunctive, Declaratory and Equitable
Relief; and for Damages- 7

**James J. Nicita**
**Attorney at Law**
**302 Bluff Street**
**Oregon City, Oregon 97045**
**p) (503)-799-0725**
**e) james.nicita@gmail.com**

developer of The Rivers to submit a proposal to the urban renewal agency. Because Plaintiff opposed the project, a position many in the audience that night shared, but in recognition of the many who spoke in favor of the project, he abstained. The motion passed with five votes in favor, two against, and two abstentions.

**16.**

From February until July of 2011, the URC negotiated with the developer over The Rivers.  It held executive sessions concerning the negotiations on April 6th, 2011 and April 20th, 2011. Plaintiff raised numerous concerns, including whether the landfill owner might be using urban renewal to inflate artificially the asking price of the landfill, and whether the proposed mall worked economically.

**17.**

At the same time, supporters of The Rivers like Fowler continued to lobby, and began to threaten recall against elected officials. Fowler circulated an e-mail on May 3rd, 2011, in which he threatened, "We have to let our commissioners know that this is important to Oregon City and we expect to get it done. If they don't, we will remove them from office." Ultimately, negotiations failed by mid-June, particularly over the OCURA's demand that the developer and the landfill owner present the URC with a signed sales agreement before the URC would commit urban renewal funds to the project. In July, Fowler and his faction, including Defendant Holladay, launched a recall campaign against Plaintiff.

**18.**

Complaint for Injunctive, Declaratory and Equitable
Relief; and for Damages- 8

**James J. Nicita**
**Attorney at Law**
**302 Bluff Street**
**Oregon City, Oregon 97045**
**p) (503)-799-0725**
**e) james.nicita@gmail.com**

The nominal Chief Petitioner of the recall campaign was an individual named Rex Parks. At the time Plaintiff filed this case, Parks was serving a prison sentence after having been convicted of a) Attempt to Commit a Class B Felony - Sexual Abuse in the First Degree, 161.405(2)(c), Felony Class C, committed on or between 04/03/2014 and 04/02/2016; and b) Delivery of Marijuana to Person Under 18, 475.860(3)(a), Felony Class C, committed on or between 12/01/2016 and 01/01/2017. *State v. Rex Eliot Parks*, Deschutes County Circuit Court Case No. 17CR65991.

**19.**

Parks and Defendant Holladay announced the recall campaign in Plaintiff's presence during the citizen comment agenda item at the City Commission meeting of July 20, 2011. Holladay read a letter from the owner of the Rossman landfill, who was reacting to a mass e-mail to constituents Plaintiff had sent out in which he, among other things, reiterated very publicly his concern that urban renewal not be used to inflate artificially the sales price of the landfill. Among the false statements Holladay adopted as his own was that Plaintiff could be "single-handedly" credited with the chasing away of 1,000 plus jobs and hundreds of millions of dollars in investment. In fact, The Rivers failed because of the terms that were imposed by the unanimous agreement of the urban renewal commissioners before the latter would enter into a disposition and development agreement for that project, and primarily that that the developer and the landowner enter into a purchase and sale agreement and provided it to the OCURA.

**20.**

Complaint for Injunctive, Declaratory and Equitable Relief; and for Damages- 9

**James J. Nicita**
**Attorney at Law**
**302 Bluff Street**
**Oregon City, Oregon 97045**
**p) (503)-799-0725**
**e) james.nicita@gmail.com**

Ex. B
P. 9 of 21

During the course of the recall campaign, Defendant Holladay, Fowler, and their accomplices generated a campaign of virulent propaganda against Plaintiff. In one "robocall," Clara Patricia Fowler, nka Patricia M. Jennings, in an extremely angry voice, called Plaintiff "a Dee-troit lawyer with no roots in Oregon City," said of Plaintiff, "He doesn't care!" and referred to The Rivers mall as the "Cabela's Center," after a proposed anchor tenant for The Rivers mall. Another robocall featured Rex Parks, who identified himself by name, and defended Dan Fowler. Defendant Holladay was overhead using very violent language against Plaintiff in the headquarters of the recall campaign. On or about December 6, 2011, the recall passed by a vote of 3,015 to 2,399, 55.7% to 44.3%.

### 21.

In July of 2012, the petition of the group that included Plaintiff to amend the Oregon City charter to require a vote before the issuance of urban renewal bonded indebtedness qualified for the November 2012 ballot as Measure 3-407. In November, Measure 3-407 passed by a vote of 9,559 to 3,830, or 71.4% to 28.6%.

### 22.

On January 6th, 2014, as a private citizen, Plaintiff made a presentation to the Oregon City Citizen Involvement Committee on why he felt that the Oregon City charter should be amended to empower the Commission rather than the city manager to hire and fire the city attorney. In the  middle of Plaintiff's presentation, Defendant Holladay suddenly sat next to Plaintiff at the microphone table, and proceeded to hold forth with no other apparent reason than to disrupt Plaintiff's presentation and attempt to discredit Plaintiff. Holladay made several false

Complaint for Injunctive, Declaratory and Equitable
Relief; and for Damages- 10

**James J. Nicita**
**Attorney at Law**
**302 Bluff Street**
**Oregon City, Oregon 97045**
**p) (503)-799-0725**
**e) james.nicita@gmail.com**

or unsubstantiated statements in the course of his diatribe, and was corrected on one of his

allegations by then- mayor Doug Neeley:

> **Holladay:** My name is Dan Holladay, and just a little background I am a former City Commissioner, I served four years on the City Commission, served on the school board, various County boards, and other things, and I am the current chairman of the Friends of Willamette Falls Media Center, which runs the Willamette Falls Media Center, which provides the transparency that you see today on the television.
>
> So I guess I just have a few things to say. As my mom used to fondly tell me, "Just because everyone else is jumping off High Rocks Bridge, doesn't necessarily mean you need to. So when we get this big list of say, you know all these other cities are doing it this way, and it's just Oregon City and Tualatin, if you look at the broader picture, all the cities in the state, those numbers change dramatically.
>
> We look at the model charter, and if you look at the author of the model charter, there's a little story behind that. He was a city attorney over in the east- I don't know, Pendleton, Umatilla, something, fifteen or so years ago,- he got terminated by his city manager. And a few years later, he is working fort his law firm, and the League of Oregon Cities comes to them and says, "We want you to write a model charter for cities. And so one his little things that he put in this model charter was a way to prevent another city manager from being terminated by - or another city attorney from being terminated by a city manager - so he wanted it to happen from a political standpoint.
>
> And we're talking about political standpoints. That's where I really have an issue. Because as we have seen in the County and other places, elections mean things. And if a majority turns over on the· City Commission, that can - if we were doing it this way that can facilitate the termination of an attorney. And an attorney, kind of like the municipal court judge, really needs to be able to be just the attorney for the city, and not necessarily being under some kind of political control. Because once they are under that political control, now they are saying, "I have to find a way to make a ruling that pleases the City Commission, rather than making a decision or a ruling that is the best thing for the city..."
>
> […]
>
> The other big issue that I have, is that, while there are a couple little case studies here, I still have yet to see an actual justification. This seems to be a solution in search of a problem. I haven't really seen anything that really jumps out at me that says, "Wow, this is something we really need to change our charter for. And a big part of this is cost control. Let's not forget that [Garvey] Schubert & Barer are not inexpensive folks. So if any individual City Commissioner has the ability to just call up and say "I want to hear what you have to say about this or that…remember every time the attorney picks up the phone the clock starts ticking, and that's expensive. And if we go back to the time that Mr. Nicita was on the City Commission, those legal fees were dramatically higher than any time in the past for any individual City Commissioner.

Complaint for Injunctive, Declaratory and Equitable
Relief; and for Damages- 11

**James J. Nicita**
**Attorney at Law**
**302 Bluff Street**
**Oregon City, Oregon 97045**
**p) (503)-799-0725**
**e) james.nicita@gmail.com**

Ex. B
P. 11 of 21

So I think a lot of this is really just looking for a second bite of the apple. Because let's not forget that the City Commission has already decided this recently. I don't know, Doug [Neeley] you can probably update me but three or four years ago, in a 4-1 decision, Mr. Nicita being the only yes vote, said they don't want to put this charter amendment forward. So, that's all I have to say.

**Nicita:** Mr. Holladay is incorrect on several of his facts. And one of the things that he is incorrect about is that when we tabled the charter amendment I was in favor of that tabling. That was a unanimous vote to table that question. And part of it was because of the political pressure that Mr. Holladay and others brought to bear on the Commission at that time. So I don't really agree with what Mr. Holladay says on that, or his unsubstantiated charges regarding attorney fees...

**Neeley:** Just for the record, there were three things that were put on for charter consideration, and James Nicita is quite right that it was a unanimous decision to table all of those.

### 23.

In the fall 2014 election for City Commission, Defendant Holladay ran for mayor. A group supporting Holladay called Friends of Oregon City distributed within the Oregonian and Oregon City News a "hit piece" flyer against the opponents of Holladay and the candidates allied with him. The flyer invoked the 2011 recall against Plaintiff. The flyer associated Holladay's mayor opponent with the failure of The Rivers mall, when that individual was in no way associated with the negotiations over The Rivers in 2011. Defendant Holladay was elected mayor in November.

### 24.

On February 15, 2016, as part of public comment on a land use hearing for a proposed expansion of Willamette Falls Hospital in Oregon City, Plaintiff wrote an e-mail to City staff pointing out that the staff report had not been issued seven days in advance of the City Commission's first hearing on the matter, as required by city code. In response, during the City Commission meeting of February 17, Defendant Holladay conceded that the staff report had

Complaint for Injunctive, Declaratory and Equitable
Relief; and for Damages- 12

**James J. Nicita**
**Attorney at Law**
**302 Bluff Street**
**Oregon City, Oregon 97045**
**p) (503)-799-0725**
**e) james.nicita@gmail.com**

not been issued per city code, but nonetheless verbally attacked Plaintiff during the

Commission meeting:

**Holladay:** So, I have from... a letter sent by James Nicita to... looks like to Laura Terway, copied to Mr. Kabeiseman and Ms. Richter, discussing this particular thing. I bring to your attention that Oregon City for at least the last twenty years has been issuing its staff reports and agendas on Friday afternoon for the Wednesday following meeting. That was true in the case of the couple of years that Mr. Nicita sat on the Commission. Yet for some reason at this particular point in time they've chosen to throw in a little wrench into this thing to make it last a couple more weeks, for what I can see as no particular good reason, just to slow things down, just to be a fly in the ointment, sand in the gears. So, that's where we are. We are going to follow the letter of the law. We're going to move it down two weeks. And we are going to do it anyway. It's once again wasting the City's time and taxpayer money for useless kinds of things. So, that's my statement as just Dan Holladay, not the mayor, not anybody else. But I'm very frustrated that this kind of stuff continues to happen by people who want to obfuscate and stop anything from happening in Oregon City. So now I would entertain a motion to continue this to a date certain of March 2nd.

### 25.

On April 27, 2016, Plaintiff filed with the Oregon Land Use Board of Appeals (LUBA)

an appeal, later joined by others, of Defendant Oregon City's approval of a comprehensive plan

amendment and zone change requested by Historic Properties, LLC, for a parcel of land at the

intersection of Beavercreek Road and Highway 213 in Oregon City. Historic Properties is co-

owned by former Oregon City mayor Dan Fowler, the principal organizer of the 2011 recall

campaign against Plaintiff.

### 26.

Plaintiff successfully secured from LUBA a remand of the City's decision. LUBA

sustained Plaintiff's third assignment of error, that the City had not complied with the

requirement in Oregon Statewide Planning Goal 5 and its implementing regulations by not

Complaint for Injunctive, Declaratory and Equitable
Relief; and for Damages- 13

**James J. Nicita**
**Attorney at Law**
**302 Bluff Street**
**Oregon City, Oregon 97045**
**p) (503)-799-0725**
**e) james.nicita@gmail.com**

analyzing whether polluted storm water discharges from intensified development created a "conflicting use" with Newell Creek. *Nicita et. al. v. Oregon City et. al.*, LUBA No. 2016-045, 75 Or LUBA 38 (2017).

## 27.

Plaintiff appealed to the Oregon Court of Appeals LUBA's resolution in 2016-045 of his first assignment of error, regarding whether the subject property met the standards for "mixed use corridor" designation with Defendant Oregon City's comprehensive plan and zoning regulations. The Court of Appeals sustained LUBA's opinion below, however it did publish a written opinion regarding the issue. The City cross-appealed from LUBA's remand on the Goal 5 assignment of error, but the Court of Appeals sustained LUBA's remand on this issue in favor of Plaintiff. *Nicita et. al. v. Oregon City et. al.* Court of Appeals case no. A164237, 286 Or App 659 (2017). Plaintiff petitioned the Oregon Supreme Court to review the Court of Appeals' opinion regarding the issue of mixed-use corridor comprehensive plan and zoning designation. The latter denied the petition. Supreme Court case no. S065260, 399 P3d 1087.

## 28.

On or about November 29, 2017, Plaintiff appealed to the City Commission of Oregon City a decision of the Planning Commission approving a master plan for a mixed-used development and Phase I of that development, a hotel to be known as the Abernethy Place Hotel. The applicant was Hackett Hospitality, LLC, of which Historic Properties, LLC held an interest. Plaintiff's was concerned that the design of the hotel did not comply with the 1990 End of the Oregon Trail Master Plan or its 1991 Design Guidelines. As part of his local appeal, Plaintiff

Complaint for Injunctive, Declaratory and Equitable
Relief; and for Damages- 14

**James J. Nicita**
**Attorney at Law**
**302 Bluff Street**
**Oregon City, Oregon 97045**
**p) (503)-799-0725**
**e) james.nicita@gmail.com**

requested, pursuant to Oregon City Municipal Code (OCMC) 17.50.290(C), a waiver of the local

appeal fee of $3,488.00 plus "actual attorney fees," authorized pursuant to OCMC 17.50.290 and

Resolution 17-18 (2017).

### 29.

The City Commission denied Plaintiff's request for a fee waiver, and assessed Plaintiff

"actual attorney fees" in the amount of $4,427.50, for a total local appeal fee of $7,915.50. The

City Commission voted to sustain the Planning Commission's approval and deny Plaintiff's

appeal.

### 30.

The City Commission heard Plaintiff's appeal on February 7, 2018. After closing the

record and listening to other Commissioners' deliberations, Defendant Holladay made the

following statement:

> **Holladay:** I think we go down a dangerous road when someone makes a mission
> to kill a project just to kill a project.

Defendant Holladay's statement caused Plaintiff intense anguish, humiliation, and mental

distress. Plaintiff stood up in the audience, challenged Defendant Holladay on grounds of bias,

and demanded that he recuse himself from the final vote on Plaintiff's request for a fee waiver

and on the merits of Plaintiff's land use appeal. Defendant Holladay refused to do so. The City

Commission voted to deny Plaintiff's request for a fee waiver, and to deny his land use appeal

appeal.

### 31.

Complaint for Injunctive, Declaratory and Equitable
Relief; and for Damages- 15

**James J. Nicita**
**Attorney at Law**
**302 Bluff Street**
**Oregon City, Oregon 97045**
**p) (503)-799-0725**
**e) james.nicita@gmail.com**

On April 11, 2018, Plaintiff appealed the City Commission's approval of the Abernethy

Place Hotel to LUBA. Plaintiff raised two assignments of error. The first concerned the legality

under state law of Defendant Oregon City's local appeal fee, and the second concerned whether

the proposed Abernethy Place Hotel complied with the 1990 End of the Oregon Trail Master

Plan and 1991 Design Guidelines. On November 30, 2018, LUBA sustained the City's decisions.

*Nicita v. Oregon City, et al,* LUBA No. 2018-038. The Court of Appeals affirmed without

opinion on March 20, 2019. Court of Appeals case no. A169700. The Supreme Court denied

Plaintiff's petition for review on August 1, 2019. Supreme Court case no. S066739.

### 32.

In June 2020, numerous Oregon City residents and voters, not including Plaintiff,

organized and commenced a recall campaign against Defendant Holladay. The filed statement of

justification approved June 23, 2020, alleged, *inter alia*:

- "Holladay is the subject of a misconduct investigation ordered by the four Oregon City Commissioners.
- Taxpayers are footing the bill for multiple lawsuits related to Holladay's corrupt business deals and behavior.
  (...)
- Holladay exhibits dishonest and irresponsible behavior, abusing the power of his office.
- Holladay uses his office to silence and denigrate the voices of elected colleagues and constituents who disagree with him.

### 33.

On October 1, 2020, the Clackamas County Elections Office verified that the Chief

Petitioner had submitted 3,037 valid Oregon City elector signatures for the recall petition.

### 34.

Complaint for Injunctive, Declaratory and Equitable
Relief; and for Damages- 16

**James J. Nicita**
**Attorney at Law**
**302 Bluff Street**
**Oregon City, Oregon 97045**
**p) (503)-799-0725**
**e) james.nicita@gmail.com**

On October 2, 2020, Plaintiff sent an email to counsel for Defendant Holladay and the city attorney of Defendant Oregon City to give notice of Plaintiff's request that Defendant Holladay preserve his official records subject to discovery whether or not he was recalled, and whether or not they were generated on an email account of Defendant Oregon City or a private email account.

**35.**

On November 10, 2020, Oregon City electors voted to recall Defendant Holladay. The statement of justification quoted in part in the preceding paragraph appeared on the ballot. The result was 9,253 votes (68.04%) in favor, and 4,347 (31.96%) votes against.

**CLAIM FOR RELIEF:**
**VIOLATION OF FIRST AND FOURTEENTH AMENDMENT**

**36.**

Plaintiff realleges paragraphs 1-90.

**37.**

Plaintiff was engaged in constitutionally-protected activity. His land use appeals were protected First Amendment speech and petitions for the redress of grievances. His First Amendment rights are protected through the Fourteenth Amendment.

**38.**

Defendant Holladay's vote to impose an onerous appeal fee on Plaintiff, and his refusal to recuse himself during Plaintiff's Abernethy Hotel appeal would chill a person of ordinary firmness from engaging in the protected activity. As further evidenced by his prior history of disparagement of Plaintiff, Defendant Holladay's retaliatory actions were acts of willful malice,

Complaint for Injunctive, Declaratory and Equitable
Relief; and for Damages- 17

James J. Nicita
Attorney at Law
302 Bluff Street
Oregon City, Oregon 97045
p) (503)-799-0725
e) james.nicita@gmail.com

Ex. B
P. 17 of 21

were intentional, and were undertaken in gross or reckless disregard of Plaintiff's constitutional rights.

**39.**

There is a causal connection between the government Defendant Holladay's retaliatory animus and the subsequent injury to Plaintiff and to Plaintiff's First Amendment-protected rights to petition for the redress of grievances and to speech. Holladay's retaliatory acts would not have occurred but for Plaintiff's exercising constitutional rights, including the right to appeal land use decisions. Plaintiff's actions were substantial and motivating factors in Defendant Holladay's conduct.

**40.**

Defendant Holladay's vote to impose an onerous appeal fee of $7,915.50 on Plaintiff constituted an adverse action imposing an acute financial burden upon Plaintiff. His refusal to recuse himself during the Abernethy Hotel appeal constituted an adverse action that denied Plaintiff of the benefit of an impartial review panel in a quasi-judicial land use proceeding, as guaranteed under Oregon law.

**41.**

Defendant Holladay was acting under the color of Oregon law. He was acting either individually or in his official capacity as Oregon City mayor. He used official meetings of Defendant City of Oregon City to undertake his acts of retaliation against Plaintiff.

**42.**

Complaint for Injunctive, Declaratory and Equitable
Relief; and for Damages- 18

**James J. Nicita**
**Attorney at Law**
**302 Bluff Street**
**Oregon City, Oregon 97045**
**p) (503)-799-0725**
**e) james.nicita@gmail.com**

Ex. B
P. 18 of 21

Upon information and belief, Plaintiff's First Amendment-protected activities were also a substantial and motivating factor in the conduct of a majority of City Commissioners who voted on February 7, 2018, also acting under the color of Oregon law, to deny Plaintiff's request for a fee waiver and to impose an onerous appeal fee of $7,915.50 on Plaintiff; conduct that would chill a person of ordinary firmness from engaging in such protected activities. Therefore Defendant City of Oregon City is also liable to Plaintiff for violation of Plaintiff's First and Fourteenth Amendment rights.

## 43.

WHEREFORE, Plaintiff prays for the following relief:

(1)     declarations that Defendants have violated the First and Fourteenth Amendments to the U.S. Constitution,;

(2)     declarations that in violating the U.S. Constitution, the Defendants have violated the civil and other rights of the Plaintiff.

(3)     a jury trial to determine whether the Defendants have deprived Plaintiff of his First and Fourteenth Amendment rights.

(8)     an award of monetary and compensatory damages of $25,000 respectively, or an amount to be determined at trial, if the jury finds Defendants guilty of the allegations asserted in this complaint;

(9)     punitive damages in the amount of $25,000, or an amount to be determined at trial, for the violation of Plaintiff's First and Fourteenth Amendment Rights.

(10)    nominal damages in an amount to be determined at trial;

(11)    injunctive relief ordering Defendant Oregon City to return all costs or fees assessed against Plaintiff in violation of his First and Fourteenth Amendment rights.

(12)    the assessment of reasonable costs, expenses, and attorney fees; and

Complaint for Injunctive, Declaratory and Equitable
Relief; and for Damages- 19

**James J. Nicita**
**Attorney at Law**
**302 Bluff Street**
**Oregon City, Oregon 97045**
**p) (503)-799-0725**
**e) james.nicita@gmail.com**

(13)     other equitable relief that the Court may deem appropriate.

DATED: April 20, 2022.

Respectfully Submitted,

s/ James J. Nicita
James J. Nicita, OSB No. 024068
302 Bluff Street
Oregon City, OR   97045
Telephone (503) 799-0725
Email: james.nicita@gmail.com

Complaint for Injunctive, Declaratory and Equitable
Relief; and for Damages- 20

James J. Nicita
Attorney at Law
302 Bluff Street
Oregon City, Oregon 97045
p) (503)-799-0725
e) james.nicita@gmail.com

Ex. B
P. 20 of 21

CERTFICATE OF FILING AND SERVICE

I certify that on April 20 2022, I filed the foregoing *Second Amended Complaint* with the

U.S. District Court of Oregon via the Court's electronic filing system, and served Defendants

Daniel W. Holladay and City of Oregon City by E-File to the their following counsel:

Jeffery W. Hansen, OSB No. 923290
jeff.hansen@chockbarhoum.com
Jordyn Parsons, OSB No. 174321
jordyn.parsons@chockbarhoum.com
Chock Barhoum LLP
121 SW Morrison St., Suite 415
Portland, OR   97204
503-223-3000

DATED April 20, 2022

s/ James J. Nicita
James J. Nicita
OSB No. 024068
302 Bluff Street
Oregon City, OR   97045
(503) 650-2496   voice
james.nicita@gmail.com

Complaint for Injunctive, Declaratory and Equitable
Relief; and for Damages- 21

**James J. Nicita**
**Attorney at Law**
**302 Bluff Street**
**Oregon City, Oregon 97045**
**p) (503)-799-0725**
**e) james.nicita@gmail.com**

**John R. Barhoum, OSB No. 045150**
Email: john.barhoum@chockbarhoum.com
**Jeffery W. Hansen, OSB No. 923290**
Email: jeff.hansen@chockbarhoum.com
Chock Barhoum LLP
121 SW Morrison St., Suite 500
Portland, OR  97204
Telephone: 503.223.3000

      Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| JAMES J. NICITA, a resident of Oregon | Case No. 3:19-cv-01960-YY |
| Plaintiff, | |
| v. | **DEFENDANTS DANIEL W. HOLLADAY AND CITY OF OREGON CITY'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT** |
| DANIEL W. HOLLADAY, in his individual capacity and in his official capacity as mayor of the City of Oregon City, Oregon, | |
| and | DEMAND FOR JURY TRIAL |
| THE CITY OF OREGON CITY, a municipal corporation, | |
| Defendants. | |

      In answer to Plaintiff James Nicita's Second Amended Complaint, Defendants Daniel W.

Holladay and the City of Oregon City (hereinafter "Defendants") admit, deny and allege as

Page 1     DEFENDANTS DANIEL W. HOLLADAY AND CITY OF OREGON CITY'S
                ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

follows:

## INTRODUCTION

### 1.

In response to paragraph 1 and its subparts, this paragraph appears to be a general statement of the claim for relief alleged and the damages sought. To the extent a response is required, Defendants deny they have violated Plaintiff's First and Fourteenth Amendment rights, and further deny that Plaintiff is entitled to the relief requested.

## JURISDICTION

### 2.

Defendants admit to the allegations in paragraph 2 of Plaintiff's Second Amended Complaint.

## VENUE

### 3.

Defendants admit the allegations in paragraph 3 of Plaintiff's Second Amended Complaint.

## PARTIES AND STANDING

### 4.

In response to paragraph 4, Defendants deny the allegations in subpart A, and specifically that Plaintiff has been harmed personally and financially, and that Defendants retaliated against Plaintiff for the exercise of this right to speech and to petition for redress of grievances. Defendants admit to the remaining allegations in paragraph 4 detailing Plaintiff's residency, history of positions within the community and his law practice.

### 5.

In answer to paragraph 5, Defendants admit only that Defendant Holladay previously

Page 2    DEFENDANTS DANIEL W. HOLLADAY AND CITY OF OREGON CITY'S
         ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

served as Mayor of Oregon City as well as a City Commissioner. Except as expressly admitted herein, Defendants deny the remaining allegations of paragraph 5 of Plaintiff's Second Amended Complaint.

6.

Defendants admit to the allegations in paragraph 6 of Plaintiff's Second Amended Complaint.

<h2 style="text-align:center">GENERAL ALLEGATIONS</h2>

7.

In response to paragraphs 7 and 8, Defendants only admit that Defendant Oregon City adopted the 10th Amendment to the Oregon City Urban Renewal Plan, and that the plan included "The Rivers" project and "The Cove" project. Defendants are without information sufficient to admit or deny the remaining allegations in paragraphs 7 and 8 of Plaintiff's Second Amended Complaint and therefore deny the same.

8.

In response to paragraphs 9 and 10, Defendants admit that Plaintiff was elected to the City Commission in Fall of 2008. Defendants are without information sufficient to admit or deny the remaining allegations in paragraphs 9 and 10 of Plaintiff's Second Amended Complaint and therefore deny the same.

9.

In response to paragraph 11, Defendants admit that the URC participated in a vote regarding the Cove proposal. Defendants lack information sufficient to either admit or deny the remaining allegations of paragraph 11 of Plaintiff's Second Amended Complaint and therefore deny the same.

Page 3      DEFENDANTS DANIEL W. HOLLADAY AND CITY OF OREGON CITY'S
            ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

CIS140.3

Ex. C
P. 3 of 9

10.

Defendants are without information sufficient to either admit or deny the allegations in paragraphs 12 through 16 of Plaintiff's Second Amended Complaint and therefore deny the same.

11.

In response to paragraphs 17 through 20, Defendants only admit that a recall campaign was initiated against Plaintiff Nicita, and that a recall passed in December of 2011. Defendants are without information sufficient to admit or deny the remaining allegations in paragraphs 17 through 20 of Plaintiff's Second Amended Complaint and therefore deny the same.

12.

In response to paragraphs 21 through 24, Defendants only admit that Defendant Holladay ran for Mayor of Oregon City in 2014 and was elected that November. Defendants lack information sufficient to admit or deny the remaining allegations in paragraphs 21 through 24 of Plaintiff's Second Amended Complaint and therefore deny the same.

13.

In answer to paragraphs 25 through 31 of Plaintiff's Second Amended Complaint, Defendants admit only that on or about April 2016, Plaintiff filed a petition with the Oregon Land Use Board of Appeals (LUBA) that was later joined by others regarding Oregon City's approval of zoning issues requested by Historic Properties, LLC, regarding a parcel of land near Beavercreek Road and Highway 213 that resulted in a series of filings in the LUBA resulting in LUBA No. 2016-045, 75 OrLUBA 38 (2017) as well as additional appeals and filings that resulted in decisions by the Oregon Court of Appeals and Oregon Supreme Court bearing the case numbers A164237 and S065260; that the decisions and opinions of these tribunals generally recited the history of the litigation, their legal factual findings and legal conclusions as well as decisions that

Page 4     DEFENDANTS DANIEL W. HOLLADAY AND CITY OF OREGON CITY'S
           ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

speak for themselves; and that during the course of these proceedings the City Commission denied Plaintiff's request for a fee waiver. Except as expressly admitted herein, each and every remaining allegation of paragraphs 25 through 31 is denied

14.

In response to paragraphs 32 through 35, Defendants only admit that a recall campaign against Defendant Holladay was initiated that ultimately resulted in his recall in November 2020. Defendants are without information sufficient to admit or deny the remaining allegations in paragraphs 32 through 35 of Plaintiff's Second Amended Complaint.

## CLAIM FOR RELIEF:

## VIOLATION OF FIRST AND FOURTEENTH AMENDMENT

15.

In answer to paragraph 36 of Plaintiff's Second Amended Complaint, Defendants reallege and incorporate by reference paragraphs 1 through 13 above as though set forth fully herein

16.

Defendants deny the allegations in paragraphs 37 through 42 of Plaintiff's Second Amended Complaint.

17.

Defendants acknowledge that paragraph 43 consists of a prayer for relief. Defendants deny that Plaintiff is entitled to the relief requested.

## FIRST AFFIRMATIVE DEFENSE

## (Failure to State a Claim)

18.

Plaintiff fails to state a claim upon which relief may be granted.

Page 5    DEFENDANTS DANIEL W. HOLLADAY AND CITY OF OREGON CITY'S
         ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

CIS140.3

## SECOND AFFIRMATIVE DEFENSE

### (Prevailing Government Interest)

19.

Denial of the fee waiver served a substantial state interest that superseded Plaintiff's constitutional rights.

## THIRD AFFIRMATIVE DEFENSE

### (Qualified Immunity)

20.

Defendants Holladay and Oregon City are entitled to qualified immunity from liability under 42 U.S.C. § 1983 because each acted in good faith and a reasonable Commissioner in his position would not have known that any of their actions or inactions would have violated a clearly established, federally protected right of Plaintiff.

## FOURTH AFFIRMATIVE DEFENSE

### (Quasi-Judicial Immunity)

**21.**

Defendants Holladay and Oregon City are entitled to immunity for those acts and decisions involving the payment of fees and expenses pertaining to litigation surrounding the development and zoning described in Plaintiff's Second Amended Complaint in light of the provisions of Oregon City Municipal Code 17.50.290(c) and applicable related provisions and resolutions of Oregon City, if any.

/ / /

/ / /

/ / /

Page 6     DEFENDANTS DANIEL W. HOLLADAY AND CITY OF OREGON CITY'S
ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

CIS140.3

Ex. C
P. 6 of 9

WHEREFORE, Defendants pray for a judgment in their favor, for their costs and disbursements incurred herein and for other such relief as this court deems equitable, just, and proper.

Dated this 18th day of May, 2022.

**CHOCK BARHOUM LLP**

John R. Barhoum, OSB No. 045150
Email: john.barhoum@chockbarhoum.com
Jeffery W. Hansen, OSB No. 923290
Email: jeff.hansen@chockbarhoum.com
Attorneys for Defendants

DEFENDANTS DANIEL W. HOLLADAY AND CITY OF OREGON CITY'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

CIS140.3

**John R. Barhoum, OSB No. 045150**
Email: john.barhoum@chockbarhoum.com
**Jeffery W. Hansen, OSB No. 923290**
Email: jeff.hansen@chockbarhoum.com
Chock Barhoum LLP
121 SW Morrison St., Suite 500
Portland, OR 97204
Telephone: 503.223.3000

      Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JAMES J. NICITA, a resident of Oregon | Case No. 3:19-cv-01960-YY |
| Plaintiff, | |
| v. | **CERTIFICATE OF SERVICE** |
| DANIEL W. HOLLADAY, in his individual capacity and in his official capacity as mayor of the City of Oregon City, Oregon, | |
| and | |
| THE CITY OF OREGON CITY, a municipal corporation, | |
| Defendants. | |

     I hereby certify that a true copy of the foregoing **DEFENDANTS DANIEL W. HOLLADAY AND CITY OF OREGON CITY'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT** was served on:

Page 1     **CERTIFICATE OF SERVICE**

CIS140.3

James J. Nicita
Attorney at Law
302 Bluff Street
Oregon City, OR 97045
*Attorneys for Plaintiff*

☐ By hand delivery
☐ By first-class mail*
☑ By electronic service through
ECF system as identified on the
Notice of Electronic Filing (NEF)
☐ By facsimile transmission
Fax #:
☑ By e-mail:
james.nicita@gmail.com

**\***With first-class postage prepaid and deposited in Portland, Oregon.

Dated this 18th day of May, 2022.

**CHOCK BARHOUM LLP**

John R. Barhoum, OSB No. 045150
Email: john.barhoum@chockbarhoum.com
Jeffery W. Hansen, OSB No. 923290
Email: jeff.hansen@chockbarhoum.com
Attorneys for Defendants

Page 2        **CERTIFICATE OF SERVICE**

CIS140.3

The Honorable Youlee Yim You

James J. Nicita
OSB No. 024068
302 Bluff Street
Oregon City, OR   97045
(503) 799-0725
james.nicita@gmail.com

Plaintiff *Pro Se*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **JAMES J. NICITA, a resident of Oregon** | **Case No.  3:19-cv-01960-YY** |
| **Plaintiff,** | |
| **v.** | **PLAINTIFF'S INITIAL DISCLOSURES PURSUANT TO FRCP 26(a)(1)** |
| **DANIEL W. HOLLADAY, in his individual capacity; in his official capacity as mayor of the City of Oregon City, Oregon,** | |
| **and** | |
| **THE CITY OF OREGON CITY, a municipal corporation,** | |
| **Defendants.** | |

Pursuant to Federal Rule of Civil Procedure 26(a)(1), Plaintiff makes the

following initial disclosures. Discovery is ongoing and Plaintiff reserves his right to

supplement these disclosures as discovery proceeds. The inclusion of documents in this

disclosure statement shall not be construed to waive attorney-client privilege and/or work

product privilege, either generally or as they may attach to particular documents, nor does

inclusion of a document in this disclosure constitute a stipulation regarding the

Ex. D
P. 1 of 5

admissibility of any document, nor does it waive any objections to any discovery request related to the subject matter of these disclosures.

## A.  F.R.C.P. 26(a)(1)(A)(i)

The following persons have been identified as individuals likely to have discoverable information that Plaintiff may use to support his claims:

1. **Plaintiff: James Nicita**
   **302 Bluff Street**
   **Oregon City, Oregon 97045**
   **(503) 799-0725**

   James Nicita is the Plaintiff in this matter and has knowledge related to Defendants' liability and all aspects of his damages. He is a fifteen-year resident of Oregon City, and has served as an appointed member of the Historic Review Board of Oregon City, and as an elected member of the City Commission of Oregon City. By virtue of his election to the City Commission of Oregon City, he also served as a member of the Urban Renewal Commission of Oregon City. His interests extend to land use, environmental, and historic preservation matters. He has been harmed by Defendants' violations of his constitutional rights.

   **Representatives, Employees, Former Employees, Elected Officials, Former Elected Officials, Appointed Officials, and Former Appointed Officials of Defendant City of Oregon City.** The following individuals are potential witnesses that have discoverable information regarding the facts related to Defendants' liability, defenses and affirmative defenses, and Plaintiff's damages.

2. Daniel W. Holladay, former Mayor and Urban Renewal Commissioner, City of Oregon City

3. Brian Shaw, former City Commissioner and Urban Renewal Commissioner, City of Oregon City

4. Nancy Ide, former City Clerk, City Commissioner and Urban Renewal Commissioner, City of Oregon City

5. Renate Mengelberg, former City Commissioner and Urban Renewal Commissioner, City of Oregon City

Ex. D
P. 2 of 5

22. Kattie Riggs, former City Clerk, City of Oregon City

23. Laura Terway, former Community Development Director, City of Oregon City

24. Peter Walter, former Staff Planner, City of Oregon City

25. James Band, Police Chief, City of Oregon City

26. Ryan Kersey, Code Enforcement Manager, City of Oregon City

27. Zachary Knudson, Code Enforcement Officer, City of Oregon City

28. John Lewis, Director of Public Works, City of Oregon City

29. Nancy Kraushaar, former Director of Public Works, City of Oregon City

30. Eric Hand, Stormwater Manager, Department of Public Works, City of Oregon City

31. Scott Katrina, Employee, Department of Public Works, City of Oregon City

32. David Knoll, Director of Information & Technology Department, City of Oregon City

**Individuals and Organizations Not Affiliated With Defendant City of Oregon City.** The following individuals are potential witnesses that have discoverable information regarding the facts related to Defendants' liability, defenses, and affirmative defenses, and Plaintiff's damages.

33. Daniel Fowler, Co-Owner, Historic Properties, LLC, former campaign volunteer, Recall Nicita Committee, Co-Founder, Oregon City Business Alliance

34. Patricia Jennings, fka Patricia Fowler, Historic Properties, LLC, former campaign volunteer, Recall Nicita Committee

35. Mark Foley, former Co-Owner, Historic Properties, LLC

36. Michael Robinson, Attorney for Historic Properties, LLC

37. Rex Parks, Jr. Chief Petitioner, Recall Nicita Campaign

Ex. D
P. 3 of 5

CERTFICATE OF SERVICE

I JAMES J. NICITA, hereby certify that on July 5, 2022 I caused to be delivered

via electronic mail the foregoing PLAINTIFF'S INITIAL DISCLOSURES PURSUANT

TO FRCP 26(a)(1) upon the following:


Jeffery W. Hansen, OSB No. 923290
jeff.hansen@chockbarhoum.com
Jordyn Parsons, OSB No. 174321
jordyn.parsons@chockbarhoum.com
Chock Barhoum LLP
121 SW Morrison St., Suite 415
Portland, OR 97204
(503) 223-3000

DATED July 5, 2022

s/ James J. Nicita
James J. Nicita
OSB No. 024068
302 Bluff Street
Oregon City, OR   97045
(503) 799-0725
james.nicita@gmail.com

Plaintiff *Pro Se*

Ex. D
P. 4 of 5

10

DATED July 5, 2022

Respectfully Submitted,

/s/ James J. Nicita
James J. Nicita
OSB No. 024068
302 Bluff Street
Oregon City, OR   97045
(503) 799-0725
james.nicita@gmail.com

Plaintifff *Pro Se*

Ex. D
P. 5 of 5

**APPENDIX A**

**DEFENDANTS DANIEL HOLLADAY AND THE CITY OF OREGON CITY INITIAL DISCLOSURE STATEMENT PURSUANT TO FRCP 26(A)(1)**

**Individuals who may have discoverable information relevant to disputed facts alleged with particularity in the pleadings.**

|   | **Individual** | **Contact Information** |
|---|---|---|
| **1** | Daniel Holladay | c/o Chock Barhoum LLP<br>121 SW Morrison Street, Suite 500<br>Portland, OR 97204<br>Telephone: 503-223-3000 |
| **2** | Carrie Richter | c/o Chock Barhoum LLP<br>121 SW Morrison Street, Suite 500<br>Portland, OR 97204<br>Telephone: 503-223-3000 |
| **3** | Brian Shaw | c/o Chock Barhoum LLP<br>121 SW Morrison Street, Suite 500<br>Portland, OR 97204<br>Telephone: 503-223-3000 |
| **4** | Nancy Ide | c/o Chock Barhoum LLP<br>121 SW Morrison Street, Suite 500<br>Portland, OR 97204<br>Telephone: 503-223-3000 |
| **5** | Renate Mengelberg | c/o Chock Barhoum LLP<br>121 SW Morrison Street, Suite 500<br>Portland, OR 97204<br>Telephone: 503-223-3000 |
| **6** | Denise McGriff | c/o Chock Barhoum LLP<br>121 SW Morrison Street, Suite 500<br>Portland, OR 97204<br>Telephone: 503-223-3000 |
| **7** | Dan Fowler | |
| **8** | Michael Robinson | Palisch Homes<br>210 SW Wilson Avenue, Suite 100<br>Bend, OR 97702<br>Telephone: 541-385-6762 |

Ex. E

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

James J. Nicita

)
)

*Plaintiff*
)

v.
)   Civil Action No. 3:19-cv-01960-YY

DANIEL W. HOLLADAY,  et. al.,
)
)

*Defendant*
)

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                         Schwabe, Williamson & Wyatt, P.C.

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: SEE ATTACHED.

| Place: 302 Bluff Street, Oregon City, Oregon 97045 | Date and Time: July 28, 2023, 10 a.m. |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:       July 7, 2023

|  *CLERK OF COURT* | OR | |
|---|---|---|
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
James Nicita, Plaintiff
_____ , who issues or requests this subpoena, are:
James Nicita, 302 Bluff Street, Oregon City, Oregon, 97045; james.nicita@gmail.com, 503-799-0725

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Ex. F
P. 1 of 13

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 3:19-cv-01960-YY

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* Schwabe, Williamson & Wyatt, PC.
on *(date)* July 7, 2023.

☒ I served the subpoena by delivering a copy to the named person as follows: Jennifer Guinasso, registered agent

_____ on *(date)* July 7, 2023 ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ 45.00 for services, for a total of $ 45.00 .

I declare under penalty of perjury that this information is true.

Date: 9/28/23

_____
*Server's signature*

MICHAEL T. TSERLMAT
*Printed name and title*

17785 DURIE CT. GLADSTONE OR. 97027
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**TO:**        **Schwabe, Williamson & Wyatt, P.C.**

In accordance with Rules 26 and 45 of the Federal Rules of Civil Procedure, Plaintiff James J. Nicita hereby requests that you, Schwabe, Williamson & Wyatt, P.C., provide Plaintiff, by the date specified on this *subpoena duces tecum,* the documents requested below.

This request is continuing and Plaintiff respectfully requests supplemental answers from you if you, directly or indirectly, obtain further information of the nature sought herein between the time you are served with this *subpoena duces tecum* and the time of trial. Please provide supplementary information as it is made known to you. This *subpoena duces tecum* is directed to that information.

This *subpoena duces tecum* is directed to all knowledge and all sources of information with respect to the subject matter indicated, If you object to any of the requests for production of documents in this *subpoena duces tecum*, the reasons for the objection must be stated with particularity. If you object to any part of a request for production of documents in this *subpoena duces tecum*, the part objected to must be specified.

### INSTRUCTIONS & DEFINITIONS

This *subpoena duces tecum* is directed to you, Schwabe, Williamson & Wyatt, P.C., and the disclosures shall include all information known to you. When used in this *subpoena duces tecum*, the term "document" means any book, pamphlet, periodical, letter, report, memorandum, notation, message, electronic message, electronically stored information (ESI), metadata, fax, telegram, cable, record, study, working paper, chart, graph, index, tape, minutes, contract, lease, invoice, record of purchase or sale,

1

Ex. F
P. 4 of 13

correspondence, electronic or other transcription of taping of telephone or personal conversations or conferences, and any and all other written, printed, typed, taped, punched, filed or graphic matter however produced or reproduced.

The documents requested in this *subpoena duces tecum* do not include documents that clearly indicate that Plaintiff is or should be already in possession of such document. An example would be where Plaintiff's email address is included on a sent list or recipient list of an email message.

### DOCUMENTS REQUESTED

All communications between attorney Michael C. Robinson, Oregon State Bar member #910909, on behalf of his client Hackett Hospitality Group, LLC, on the one hand, and William Kabeiseman, City Attorney of Oregon City, and/or Carrie Richter, Deputy City Attorney of Oregon City, on the other hand, regarding the following:

1) The land use hearings before the Planning Commission of Oregon City, regarding the proposed Abernethy Place Hotel, land use files CP-17-0002, DP-17-0003, and NR-17-0004.

2) The deliberation or consideration, publicly or privately, of the McLoughlin Neighborhood Association in Oregon City to appeal the approval of Oregon City Planning Commission of the proposed Abernethy Place Hotel, land use files CP-17-0002, DP-17-0003, and NR-17-0004, to the Oregon City City Commission, and to request a waiver of the required appeal fee.

3) The Special General Meeting of the McLoughlin Neighborhood Association held on or about November 20, 2017, which Michael C. Robinson attended.

4) Plaintiff James J. Nicita's efforts in early 2018 to get the McLoughlin
Neighborhood Association to request a fee waiver for Plaintiff's, or any other individual
member of the McLoughlin Neighborhood Association's, appeal of the approval of
Oregon City Planning Commission proposed Abernethy Place Hotel, land use files CP-
17-0002, DP-17-0003, and NR-17-0004, to the Oregon City City Commission.

5) Plaintiff's appeal to the Oregon City City Commission of the Planning
Commission approval of the proposed Abernethy Place Hotel, and his request to the City
Commission for a waiver of the local appeal fee. File Nos. AP-17-0006 and PC-18-014.

6) Plaintiff's appeal of the City Commission's final decision on AP-17-0006 and PC-
18-014 to the Land Use Board of Appeals, *Nicita v. Oregon City*, Case No. 2018-038.

7) Plaintiff's appeal of LUBA No. 2018-038 to the Oregon Court of Appeals. *Nicita
v. Oregon City.* Case No. A169700.

8) Plaintiff's appeal of COA Case No. A169700 to the Oregon Supreme Court. Case
No. S066739.

Ex. F
P. 6 of 13

# Schwabe

July 17, 2023

**Colin Folawn, General Counsel**
Admitted in Washington and Oregon
D: 206-407-1500
cfolawn@schwabe.com

VIA E-MAIL (JAMES.NICITA@GMAIL.COM)
AND U.S. FIRST CLASS MAIL

James J. Nicita
302 Bluff St.
Oregon City, OR  97045

RE:     Objection to Subpoena to Produce Documents, Information, or Objects or to Permit
         Inspection of Premises in a Civil Action
         Our File No.:  118422-158256

Dear Mr. Nicita:

We write regarding a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action ("the subpoena") that was delivered to my firm's Portland office on or about July 7, 2023. Please consider this letter the written objection of Schwabe, Williamson & Wyatt, P.C. ("Schwabe"), as well as notice that my firm will not be complying with the subpoena absent a court order issued after a conferred-upon motion to compel. *See* Fed. R. Civ. P. 45(d)(2)(B) (providing that a person commanded to produce documents may serve an objection).

**The substance and scope of the subpoena does not appear to comply with the Federal Rules of Civil Procedure, the Oregon Rules of Professional Conduct, or Oregon statute.**

The subpoena appears to be objectionable for several reasons: (1) it seeks documents and information that could be viewed as confidential under RPC 1.6, RPC 1.9, and/or RPC 1.18; (2) it seeks documents and information that could be attorney-client privileged, confidential, or protected work product; (3) it is overly broad and unduly burdensome and therefore not within the scope of discovery permissible under Fed. R. Civ. P. 26(b)(1); and (4) sufficient time was not provided for compliance.

A.     **Client confidentiality**

The subpoena appears to seek information potentially relating to the representation of a current, former, or prospective client, the disclosure of which is prohibited under the Oregon Rules of Professional Conduct[1] and Oregon law.[2] Oregon's rule of professional conduct on confidentiality provides as follows:

---

[1] *See* Or. RPC 1.6, 1.9, and 1.18.
[2] ORS 9.460(3).

James J. Nicita
July 17, 2023
Page 2

> A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b).[3]

OR. RPC 1.6(a) (emphasis added).

The definition of "information relating to the representation of a client" reveals that it includes *all* information relating to the representation, regardless of source:

> "Information relating to the representation of a client" denotes both information protected by the attorney-client privilege under applicable law, and other information gained in a current or former professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client.

OR. RPC 1.0(f).

Similarly, ORS 9.460(3) dictates that "An attorney shall [m]aintain the confidences and secrets of the attorney's clients consistent with the rules of professional conduct…."

Even after the cessation of a matter, information remains protected under the rule regarding former clients. *See* OR. RPC 1.9(c)(2) (providing that, as to former clients, an attorney shall not "reveal information relating to the representation except as these Rules would permit or require with respect to a client").

We see no basis for seeking consent to disclose or divulge information relating to the representation of a prospective, former, or current client. Therefore, we must object to the subpoena.

### B.    Attorney-client privilege and attorney work product

The subpoena seeks a wide range of documents and communications that could fall under the attorney-client privilege or attorney work product doctrine. This firm is not permitted to disclose privileged information. *See* ORS 40.225. Further, the cessation of the attorney-client relationship does not extinguish the attorney-client privilege.

In addition, to the extent that the subpoena seeks materials, information, and documents created or collected in anticipation of litigation or other protected trial preparation materials, such items are not discoverable. *See* FED. R. CIV. P. 26(b)(3). This remains true even if the work product is made by a non-attorney. *Id.*

We are not currently aware of any exception or waiver that would somehow permit Schwabe to disclose privileged or otherwise protected information. We see no basis for disclosing or divulging

---

[3] Subsection 1.6(b) provides certain exceptions, none of which apply here.

James J. Nicita
July 17, 2023
Page 3

privileged information or work product. As discussed in the following section(s), we also have not
been permitted time to identify responsive documents, let alone generate a privilege log.

### C.    Undue burden and expense and inability to comply within the time permitted

Not only is the disclosure objectionable as discussed above, but it is also objectionable based on
its breadth. This firm would incur substantial expense in reviewing its files for responsive
documents. Moreover, there is not enough time to comply with the subpoena.

Schwabe is not a party to the case in which the subpoena was served. Thus, we find it difficult to
see how any meaningful concept of fairness or reasonableness would require a non-party to bear
the expense of such an undertaking. The productivity that would be lost would be substantial, and
it would significantly outweigh any utility of such an exercise. *See* FED. R. CIV. P. 26(b)(1).

Due to the extremely burdensome nature of the subpoena, Schwabe objects and will not comply.

### D.    Time spent in preparation and document review

If you were to move for an order to compel compliance with the subpoena, you should expect
Schwabe to oppose such a motion and seek to shift to you the fees and costs involved in searching
for and reviewing responsive documents and generating a privilege log. No arrangements have
been made to compensate the firm for the time that would be required to review documents for
responsiveness and privilege.

These objections are made based upon the information that we have as of the date of this letter,
and we reserve the right to add, amend, or withdraw objections upon the receipt of additional
information.

Thank you for your attention to this matter. Absent a court order on a properly conferred-upon
motion to which the firm will have the opportunity to respond, the firm will not comply with the
subpoena.

Best regards,

SCHWABE, WILLIAMSON & WYATT, P.C.

*/s/ Colin Folawn*

Colin Folawn

CJF
cc:    Jeffrey W. Hansen, Esq.
       John R. Barhoum, Esq.
       Jordyn M. Parson, Esq.

PDX\112784\144512\ASM\36998834.1



James Nicita <james.nicita@gmail.com>

## Nicita v Holladay - U.S. District Court Case No. 3:19-cv-01960-YY - Subpoena Duces Tecum

**James Nicita** <james.nicita@gmail.com>                                    Thu, Aug 3, 2023 at 4:21 PM
To: CFolawn@schwabe.com
Cc: "Helton, Anna" <AHelton@schwabe.com>, rsherwood@schwabe.com, Jeff Hansen
<jeff.hansen@chockbarhoum.com>, Jordyn Parsons <jordyn.parsons@chockbarhoum.com>, John Barhoum
<john.barhoum@chockbarhoum.com>

Dear Mr. Folawn:

Thank you for your letter of July 17, 2023, in which you state your firm's objections to the subpoena I caused to be served upon your firm on July 7, 2023 in the case *Nicita v. Holladay and City of Oregon City*, U.S. District Court case no. 3:19-cv-01960-YY.

This email communication will serve as my written response to the stated objections. If you could kindly confirm receipt with a short reply, I would appreciate it.

My response to the objections is as follows:

### A. Client confidentiality

The principal problem with this objection is that it is based on state ethics rules and laws. However, ethics rules do not create evidentiary privileges in a court of law. *Crimson Trace Corp. v. Davis Wright Tremaine,* LLP, 355 Or 476, 500-501 (2014), citing State *v. Miller,* 300 Or 203, 215-216 (1985).

Notwithstanding the foregoing, the objection does not stand up even under the cited ethics rules themselves.

I spent a fair amount of time reviewing the Oregon State Bar's "Barbook" of annotated Oregon Rules of Professional conduct. There is nothing in the authority contained therein suggesting that either ORPC 1.0(f) or 1.6(a) are even remotely as broad as the objection would read them; i.e., the rules do not apply beyond client "confidences" and "secrets." The subpoena *only* requests materials exchanged between Mr. Robinson and the city attorneys of Oregon City, and would by their very nature involve neither; and if in fact they did, such confidences and secrets would have been waived.

Finally, ORCP 1.6(a) would not apply due to the operation of ORCP 1.6(b)(5), which, contrary to fn. 3 of the objection, allows for the disclosure of information related to the representation of a client in order to "comply with other law." FRCP 26, related to discovery, and FRCP 45, related to subpoenas, certainly constitute "other law;" and the subpoena requests neither client confidences nor client secrets.

Ex. F
P. 10 of 13

### B.  Attorney-client privilege and attorney work product

Neither of these objections have merit. The subpoena only asks for communications between Mr. Robinson and outside parties. These communications are not protected. Even if Mr. Robinson had included in his communications to the city attorneys of Oregon City information that originally had been subject to attorney-client privilege, such disclosure would have waived the privilege. *Weil v. Investment/Indicators, Research & Mgmt., Inc.*, 647 F2d 18, (9th Cir. 1981).

As for attorney work product, as the objection acknowledges in subsection C, your firm is not a party to the case in support of which the subpoena has been issued. Neither is your firm's former client. Nonparties cannot claim work product doctrine protection.  *In re California Public Utilities Commission*, 892 F2d 778, 781 (9th Cir. 1989).

The legal conclusion in the preceding paragraph alerts me to my need to request from your firm Mr. Robinson's internal attorney work product regarding the Abernethy Hotel matter, inclusive of the imposition of the nearly $8,000 local appeal fee that is the basis of my First Amendment claim. I intend to do so.

### C.  Undue burden and expense and inability to comply within the time permitted.

I do not see merit to any of the objections stated in this section. I don't think the scope of the request was broad at all, and I believe that your firm had ample time to respond within the time period stated in the subpoena.

That said, I will state that the deadline given in the subpoena was driven for the most part by the fact that at the time I caused it to be served upon your firm the discovery cutoff in the case was July 31, 2023.

The Court has now extended the discovery deadline on joint motion of the parties, to January 29, 2024. For that reason, and for further reasons stated below, I will not be filing a motion to compel based on the deadline stated in the July 7, *subpoena duces tecum.*

Otherwise, notwithstanding the stated objections, I do see some merit in an argument not raised in the objections.

There is a small amount of out-of-district case law suggesting that it is an undue burden on a nonparty to respond to a *subpoena duces tecum* when the party issuing the subpoena has not yet requested the same material from a party. *Genus Lifesciences, Inc. v. Lannett Co., Inc.* 2019 WL 7313047 (N.D. Ca. 2019).

I had not previously requested from the Defendants some of the material I requested in the subpoena served upon your firm. To cover my bases, this week I served upon the Defendants a new request for production of the same material I requested from your firm.

If the Defendants deny my request, then it is appropriate to pursue the material from your firm. *Fleites*

*v. Mindgeek S.A.R.L.,* 2022 WL 18397365 (C.D. Ca. 2022).

I will share that to date, the Defendants have completely stonewalled me in discovery. They have yet to disclose a single document that is responsive to my discovery requests. Therefore, I anticipate that it will in fact be necessary for me to pursue from your firm the documentation I requested in the subpoena I caused to be served upon you on July 7.

### D.  Time spent in preparation and document review.

The objection offers no authority for the proposition that your firm could tax me for the costs of complying with the subpoena, particularly because it does not request any confidential or privileged information.

Given my response to the previous objection however, it seems to me that the responsibility for any costs would lie with the Defendants if they do not provide me with the same information I requested in the July 7 subpoena to your firm, which I have now requested from them. Therefore they would be liable for any such costs, if merited, if I ultimately have to file a motion to compel to obtain said documentation from your firm.

### E.  Conclusion

Based on all of the foregoing, I will not imminently be seeking to enforce the July 7, 2023 subpoena to your firm through a motion to compel.

Moving forward, I will be requesting from your firm at least some of Mr. Robinson's internal attorney work product regarding the Abernethy Hotel matter, inclusive of the imposition of the nearly $8,000 local appeal fee that is the basis of my First Amendment claim.

I still need to research whether it would be best to submit that request in a second *subpoena duces tecum,* or to amend the current one, or to withdraw the current one and submit a substitute. I intend to have that question resolved by August 15, 2023, and will follow up accordingly.

Please consider this email part of my effort to confer on this matter prior to filing any future motion to compel. I look forward to working with you on this matter further in the next several weeks.

Thank you for your kind consideration of this matter. If you have any questions please do not hesitate to contact me.

*/s/ James J. Nicita*
Plaintiff

cc:     Jeffrey W. Hansen, Esq.
        Jordyn M. Parson, Esq.
        John R. Barhoum, Esq.

James Nicita

Ex. F
P. 12 of 13

Attorney at Law
302 Bluff Street
Oregon City, OR  97045

p) 503-799-0725
e) james.nicita@gmail.com

CONFIDENTIALITY NOTICE: This message is confidential and may be privileged. If you believe that this email has been sent to you in error, please reply to the sender that you received the message in error; then please delete this e-mail. Thank you.


On Mon, Jul 17, 2023 at 2:43 PM Sherwood, Rayanne <rsherwood@schwabe.com> wrote:

> Mr. Nicita,
>
>
> Please see the attached correspondence. A copy will follow via U.S. Mail.
>
>
> Sincerely,
>
> Rayanne Sherwood
>
>
> **Rayanne Sherwood**
>
> ▬▬
>
> Legal Assistant
>
> *Pronouns: she, her, hers*
>
> (206) 689-1208
>
> rsherwood@schwabe.com
>
>
> Schwabe
>
>
> _____
>
> NOTICE: This email may contain material that is confidential, privileged and/or
> attorney work product for the sole use of the intended recipient. Any review,

Ex. F
P. 13 of 13

2023-11-14, 20:24

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

| | |
|---|---|
| James J. Nicita | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 3:19-cv-01960-YY |
| DANIEL W. HOLLADAY, et. al., | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                        Schwabe, Williamson & Wyatt, P.C.

*(Name of person to whom this subpoena is directed)*

☐ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: SEE ATTACHED.

| Place: | Date and Time: |
|---|---|
| 302 Bluff Street, Oregon City, Oregon 97045 | October 1, 2023, 10 a.m. |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: August 23, 2023

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
James Nicita, Plaintiff
_____ , who issues or requests this subpoena, are:
James Nicita, 302 Bluff Street, Oregon City, Oregon, 97045; james.nicita@gmail.com, 503-799-0725

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 3:19-cv-01960-YY

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* Schwabe, Williamson & Wyatt

on *(date)* on September 5, 2023 .

☒ I served the subpoena by delivering a copy to the named person as follows: Schwabe, Williamson & Wyatt, c/o Danielle Farvey

on *(date)* September 5, 2023 ; or

❏ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$

My fees are $ 0 for travel and $ 45.00 for services, for a total of $ 45.00 .

I declare under penalty of perjury that this information is true.

Date: 9/5/2023

_____
Server's signature

MICHAEL BERMAN
_____
Printed name and title

17785 DUNE CT, GLADSTONE OR. 97027
_____
Server's address

Additional information regarding attempted service, etc.:

Case 3:19-cv-01960-YY   Document 99   Filed 11/24/23   Page 63 of 120

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**TO:**       **Schwabe, Williamson & Wyatt, P.C.**

In accordance with Rules 26 and 45 of the Federal Rules of Civil Procedure, Plaintiff James J. Nicita hereby requests that you, Schwabe, Williamson & Wyatt, P.C., provide Plaintiff, by the date specified on this *subpoena duces tecum,* the documents requested below.

This request is continuing and Plaintiff respectfully requests supplemental answers from you if you, directly or indirectly, obtain further information of the nature sought herein between the time you are served with this *subpoena duces tecum* and the time of trial. Please provide supplementary information as it is made known to you. This *subpoena duces tecum* is directed to that information.

This *subpoena duces tecum* is directed to all knowledge and all sources of information with respect to the subject matter indicated, If you object to any of the requests for production of documents in this *subpoena duces tecum*, the reasons for the objection must be stated with particularity. If you object to any part of a request for production of documents in this *subpoena duces tecum*, the part objected to must be specified.

**INSTRUCTIONS & DEFINITIONS**

This *subpoena duces tecum* is directed to you, Schwabe, Williamson & Wyatt, P.C., and the disclosures shall include all information known to you. When used in this *subpoena duces tecum*, the term "document" means any book, pamphlet, periodical, letter, report, memorandum, notation, message, electronic message, electronically stored information (ESI), metadata, fax, telegram, cable, record, study, working paper, chart, graph, index, tape, minutes, contract, lease, invoice, record of purchase or sale,

Ex. G
P. 4 of 9

correspondence, electronic or other transcription of taping of telephone or personal conversations or conferences, and any and all other written, printed, typed, taped, punched, filed or graphic matter however produced or reproduced.

The documents requested in this *subpoena duces tecum* do not include documents that clearly indicate that Plaintiff is or should be already in possession of such document. An example would be where Plaintiff's email address is included on a sent list or recipient list of an email message.

## DOCUMENTS REQUESTED

All documentation, including but not limited to attorney work product (documents and tangible things prepared by a party or his representative in anticipation of litigation) of Michael C. Robinson, Oregon State Bar member #910909, but specifically excluding documents subject to the attorney-client privilege, regarding the following:

1) The deliberation or consideration, publicly or privately, of the McLoughlin Neighborhood Association in Oregon City to appeal the approval of Oregon City Planning Commission of the proposed Abernethy Place Hotel, land use files CP-17-0002, DP-17-0003, and NR-17-0004, to the Oregon City City Commission, and to request a waiver of the required appeal fee.

2) The Special General Meeting of the McLoughlin Neighborhood Association held on or about November 20, 2017, which Michael C. Robinson attended.

3) Plaintiff James J. Nicita's efforts in early 2018 to get the McLoughlin Neighborhood Association to request a fee waiver for Plaintiff's, or any other individual member of the McLoughlin Neighborhood Association's, appeal of the approval of

2

Oregon City Planning Commission proposed Abernethy Place Hotel, land use files CP-17-0002, DP-17-0003, and NR-17-0004, to the Oregon City City Commission.

4) Plaintiff's appeal to the Oregon City City Commission of the Planning Commission approval of the proposed Abernethy Place Hotel, and his request to the City Commission for a waiver of the local appeal fee. File Nos. AP-17-0006 and PC-18-014.

Also excluded from this request are the documents that Plaintiff has already requested from Schwabe, Williamson & Wyatt, P.C. in his first *subpoena duces tecum* to Schwabe, Williamson & Wyatt, P.C. dated July 1, 2023 and served on or about July 7, 2023.

# Schwabe

September 11, 2023

**Colin Folawn, General Counsel**
Admitted in Washington and Oregon
D: 206-407-1500
cfolawn@schwabe.com

VIA E-MAIL (JAMES.NICITA@GMAIL.COM)
AND U.S. FIRST CLASS MAIL

James J. Nicita
302 Bluff St.
Oregon City, OR  97045

RE:    Objection to Subpoena to Produce Documents, Information, or Objects or to Permit
       Inspection of Premises in a Civil Action
       Our File No.:  118422-158256

Dear Mr. Nicita:

We write regarding a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action ("the subpoena") that was delivered to my firm's Portland office on or about September 5, 2023. The subpoena followed an earlier one that you withdrew without prejudice.

Please consider this letter the written objection of Schwabe, Williamson & Wyatt, P.C. ("Schwabe"), as well as notice that my firm will not be complying with the subpoena absent a court order issued after a conferred-upon motion to compel. *See* FED. R. CIV. P. 45(d)(2)(B) (providing that a person commanded to produce documents may serve an objection).

**<u>The substance and scope of the subpoena does not appear to comply with the Federal Rules
of Civil Procedure, the Oregon Rules of Professional Conduct, or Oregon statute.</u>**

The subpoena appears to be objectionable for several reasons: (1) it seeks documents and information that could be viewed as confidential under RPC 1.6, RPC 1.9, and/or RPC 1.18; (2) it seeks documents and information that are confidential and protected work product; (3) it is overly broad and unduly burdensome and therefore not within the scope of discovery permissible under FED. R. CIV. P. 26(b)(1); and (4) sufficient time was not provided for compliance.

### A.    Client confidentiality

The subpoena appears to seek information relating to the representation of a current, former, or prospective client, the disclosure of which is prohibited under the Oregon Rules of Professional

James J. Nicita
September 11, 2023
Page 2

Conduct[1] and Oregon law.[2] Oregon's rule of professional conduct on confidentiality provides as follows:

> A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b).[3]

OR. RPC 1.6(a) (emphasis added).

The definition of "information relating to the representation of a client" reveals that it includes *all* information relating to the representation, regardless of source:

> "Information relating to the representation of a client" denotes both information protected by the attorney-client privilege under applicable law, and other information gained in a current or former professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client.

OR. RPC 1.0(f).

Similarly, ORS 9.460(3) dictates that "An attorney shall [m]aintain the confidences and secrets of the attorney's clients consistent with the rules of professional conduct…."

Even after the cessation of a matter, information remains protected under the rule regarding former clients. *See* OR. RPC 1.9(c)(2) (providing that, as to former clients, an attorney shall not "reveal information relating to the representation except as these Rules would permit or require with respect to a client").

We see no basis for seeking consent to disclose or divulge information relating to the representation of a prospective, former, or current client. Therefore, we must object to the subpoena.

**B.    Attorney work product**

The subpoena specifically notes that it seeks "documents and tangible things prepared by a party or his representative in anticipation of litigation." Such items are not discoverable. *See* FED. R. CIV. P. 26(b)(3). This remains true even if the work product is made by a non-attorney. *Id.*

We are not currently aware of any exception or waiver that would permit Schwabe to disclose protected information. We see no basis for disclosing or divulging work product. As discussed in the following section(s), we also have not been permitted time to identify responsive documents.

---

[1] *See* OR. RPC 1.6, 1.9, and 1.18.
[2] ORS 9.460(3).
[3] Subsection 1.6(b) provides certain exceptions, none of which apply here.

Ex. G
P. 8 of 9

James J. Nicita
September 11, 2023
Page 3

### C.    Undue burden and expense and inability to comply within the time permitted

Not only is the disclosure objectionable as discussed above, but it is also objectionable based on its breadth. This firm would incur substantial expense in reviewing its files for responsive documents. Moreover, there is not enough time to comply with the subpoena.

Schwabe is not a party to the case in which the subpoena was served. Thus, we find it difficult to see how any meaningful concept of fairness or reasonableness would require a non-party to bear the expense of such an undertaking. The productivity that would be lost would be substantial, and it would significantly outweigh any utility of such an exercise. *See* Fed. R. Civ. P. 26(b)(1).

Due to the extremely burdensome nature of the subpoena, Schwabe objects and will not comply.

### D.    Time spent in preparation and document review

If you were to move for an order to compel compliance with the subpoena, you should expect Schwabe to oppose such a motion and seek to shift to you the fees and costs involved in searching for and reviewing responsive documents and generating a privilege log. No arrangements have been made to compensate the firm for the time that would be required to review documents for responsiveness and privilege.

These objections are made based upon the information that we have as of the date of this letter, and we reserve the right to add, amend, or withdraw objections upon the receipt of additional information.

Thank you for your attention to this matter. Absent a court order on a properly conferred-upon motion to which the firm will have the opportunity to respond, the firm will not comply with the subpoena.

Best regards,

SCHWABE, WILLIAMSON & WYATT, P.C.


*/s/ Colin Folawn*


Colin Folawn

CJF
cc:    Jeffrey W. Hansen, Esq.
        John R. Barhoum, Esq.
        Jordyn M. Parson, Esq.

PDX\112784\144512\ASM\37381625.1

 Gmail

**James Nicita <james.nicita@gmail.com>**

## 3:19-cv-01960-YY Nicita v. Holladay et al
23 messages

**James Nicita** <james.nicita@gmail.com>                                    Tue, Oct 10, 2023 at 8:31 PM
To: CFolawn@schwabe.com

Mr. Folawn:

I hope this email finds you well.

I write to follow up on our earlier email exchanges regarding the two *subpoenas duces tecum* I served upon your firm in August and September, in regards to the above-referenced case.

I  indicated that if I was able to obtain the communications between Mr. Michael Robinson and the Oregon City city attorneys from Defendant Oregon City, I would not pursue a motion to compel regarding the first subpoena from August.

I have received a limited number of such exchanges in response to a discovery request to the City, but they are not substantive, and they are far from the total number I anticipate.

At this time, I am going to continue to pursue such documents from the City of Oregon City, in hopes of reducing the burden on your firm.

Regarding the second *subpoena duces tecum*, to which you responded with the attached objections, I am writing pursuant to to attempt consultation prior to filing a motion to compel.

Would you have time later this week to discuss the matter by telephone or in person? If you would like to discuss the matter in person, I can come to your office.

Thank you for your attention to and consideration of this matter.

James Nicita
Attorney at Law
302 Bluff Street
Oregon City, OR  97045

p) 503-799-0725
e) james.nicita@gmail.com

CONFIDENTIALITY NOTICE: This message is confidential and may be privileged. If you believe that this email has been sent to you in error, please reply to the sender that you received the message in error; then please delete this e-mail. Thank you.

---------- Forwarded message ---------
From: **Sherwood, Rayanne** <rsherwood@schwabe.com>
Date: Mon, Sep 11, 2023 at 5:00 PM
Subject: Nicita v Holladay [IWOV-pdx.FID4988314]
To: james.nicita@gmail.com <james.nicita@gmail.com>

Ex. H
P. 1 of 8



**James Nicita <james.nicita@gmail.com>**

---

## 3:19-cv-01960-YY Nicita v. Holladay et al

---

**Folawn, Colin J.** <CFolawn@schwabe.com>                    Tue, Oct 17, 2023 at 7:41 AM
To: James Nicita <james.nicita@gmail.com>
Cc: "Helton, Anna" <AHelton@schwabe.com>


I am not in a position to accept service.


I understand that you will be seeking your discovery from one of the parties, rather than pursuing your two subpoenas to my firm, both of which we have objected to.


Best,


Colin


**Colin Folawn**

---

General Counsel

503.796.7462

cfolawn@schwabe.com




[Quoted text hidden]
[Quoted text hidden]

[Quoted text hidden]


[Quoted text hidden]

Ex. H
P. 2 of 8

[Quoted text hidden]

Legal Assistant

*Pronouns: she, her, hers*

(206) 689-1208

rsherwood@schwabe.com

_____

```
NOTICE: This email may contain material that is confidential, privileged and/or
attorney work product for the sole use of the intended recipient. Any review,
reliance or distribution by others or forwarding without express permission is
strictly prohibited. If you are not the intended recipient, please contact the
sender and delete all copies.
```

[Quoted text hidden]

Ex. H
P. 3 of 8

 Gmail                                                    **James Nicita <james.nicita@gmail.com>**

---

### 3:19-cv-01960-YY Nicita v. Holladay et al

**James Nicita** <james.nicita@gmail.com>                                    Fri, Oct 20, 2023 at 2:37 PM
To: "Folawn, Colin J." <CFolawn@schwabe.com>
Cc: "Helton, Anna" <AHelton@schwabe.com>

Mr. Folawn:

I write respectfully to correct your statement below in your email of October 17th.

Pursuant to my email to you below of October 10, I indicated that I would not be filing a motion to compel regarding my first *subpoena duces tecum* <u>at this time</u>.

I also stated that I will in fact be filing a motion to compel regarding my second *subpoena duces tecum*. I also requested to consult with you by telephone or in person prior to filing the motion to compel regarding the second subpoena.

I conclude by your silence and non-response to my October 10 request to consult in person or by telephone that you are not interested in such consultation.

Nevertheless, as a last attempt to secure such telephonic or in-person consultation, I have just left you a voicemail message requesting such consultation.

Thank you for your kind consideration in this matter.

James Nicita
Attorney at Law
302 Bluff Street
Oregon City, OR  97045

p) 503-799-0725
e) james.nicita@gmail.com

CONFIDENTIALITY NOTICE: This message is confidential and may be privileged. If you believe that this email has been sent to you in error, please reply to the sender that you received the message in error; then please delete this e-mail. Thank you.

[Quoted text hidden]

Ex. H
P. 4 of 8



**James Nicita <james.nicita@gmail.com>**

---

### 3:19-cv-01960-YY Nicita v. Holladay et al

---

**Folawn, Colin J.** <CFolawn@schwabe.com>                    Mon, Oct 23, 2023 at 4:07 PM
To: James Nicita <james.nicita@gmail.com>
Cc: "Helton, Anna" <AHelton@schwabe.com>, "jeff.hansen@chockbarhoum.com"
<jeff.hansen@chockbarhoum.com>, "john.barhoum@chockbarhoum.com" <john.barhoum@chockbarhoum.com>,
"jordyn.parsons@chockbarhoum.com" <jordyn.parsons@chockbarhoum.com>


I apologize if I misunderstood your earlier communications. As to your email on Friday, I was out of
state on business.


I would be glad to confer telephonically in advance of a motion and should have some time to do so
next week, if not late this week. In the interest of transparency, I am copying the other lawyers in the
matter.


Thanks,

[Quoted text hidden]
[Quoted text hidden]

Ex. H
P. 5 of 8



**James Nicita <james.nicita@gmail.com>**

---

## 3:19-cv-01960-YY Nicita v. Holladay et al

---

**James Nicita** <james.nicita@gmail.com>                                        Wed, Nov 1, 2023 at 5:16 PM
To: "Folawn, Colin J." <CFolawn@schwabe.com>
Cc: Aaron Hisel <aaron@capitol.legal>, "Helton, Anna" <AHelton@schwabe.com>, Jeff Hansen
<jeff.hansen@chockbarhoum.com>, Joanna Ritchie <joanna@capitol.legal>, John Barhoum
<john.barhoum@chockbarhoum.com>, Marnie Weeks <marnie@capitol.legal>, Molly Silver
<molly.silver@chockbarhoum.com>

Here is the conference call info for November 2 at 2 pm:

605-313-5848

Access code: 7140732#
[Quoted text hidden]

Ex. H
P. 6 of 8

 **Gmail**

**James Nicita <james.nicita@gmail.com>**

## FreeConferenceCall Detail Report
1 message

**FreeConferenceCall Services** <noreply@freeconferencecall.com>    Thu, Nov 2, 2023 at 2:56 PM
Reply-To: noreply@freeconferencecall.com
To: james.nicita@gmail.com



# That was a great meeting!

Here are some details from your most recent call.

This meeting was brought to you by



.

## Meeting Information

| | |
|---|---|
| Meeting ID | Conference Number |
| **jamesnicita** | (605) 313-5848 |
| Date | Access code |
| November 2, 2023 3:58:25 PM | 7140732 |
| Attendees | Duration |
| 3 | 58m |

Ex. H
P. 7 of 8

For more information about your online account and to view your full call detail report, please tap below.

**View Call Detail Report**

Generated for account #s28915309

Questions? visit our online support page

You are receiving this email because you subscribed to FreeConferenceCall.com.
4300 E Pacific Coast Hwy, Long Beach, CA 90804

Manage your Email Settings

Ex. H
P. 8 of 8

**OREGON CITY**

**Community Development – Planning**

221 Molalla Ave.  Suite 200  | Oregon City OR 97045
Ph (503) 722-3789 | Fax (503) 722-3880

# LAND USE APPLICATION FORM

| **Type I (OCMC 17.50.030.A)** | **Type II (OCMC 17.50.030.B)** | **Type III / IV (OCMC 17.50.030.C)** |
|---|---|---|
| ❑ Compatibility Review | ❑ Extension | ❑ Annexation |
| ❑ Lot Line Adjustment | ❑ Detailed Development Review | ❑ Code Interpretation / Similar Use |
| ❑ Non-Conforming Use Review | ❑ Geotechnical Hazards | ❑ Concept Development Plan |
| ❑ Natural Resource (NROD) | ❑ Minor Partition (<4 lots) | ❑ Conditional Use |
| Verification | ❑ Minor Site Plan & Design Review | ❑ Comprehensive Plan Amendment (Text/Map) |
| ❑ Site Plan and Design Review | ❑ Non-Conforming Use Review | ☒ Detailed Development Plan |
| | ❑ Site Plan and Design Review | ❑ Historic Review |
| | ❑ Subdivision (4+ lots) | ❑ Municipal Code Amendment |
| | ❑ Minor Variance | ❑ Variance |
| | ❑ Natural Resource (NROD) Review | ❑ Zone Change |

**File Number(s):** _PA 17-02 & PA 16-30_

**Proposed Land Use or Activity:** _DDP FOR PHASE ONE OF ABERNETHY PLACE GDP INCLUDING HOTEL + EXISTING HISTORIC BUILDING (OFFICE)_

**Project Name:** _OREGON CITY HAMPTON INN + SUITES_ **Number of Lots Proposed (If Applicable):** _N/A_

**Physical Address of Site:** _415 17TH ST + (NO ADDRESS) ON WASHINGTON ST._

**Clackamas County Map and Tax Lot Number(s):** _MAP 2S-2E-29CA, LOTS 601, 900, 1000, 1100, 1200, 1300, 1301_

**Applicant(s):**

**Applicant(s) Signature:** _[signature]_

**Applicant(s) Name Printed:** _HILL ARCHITECTS_    **Date:** _4/14/2017_

**Mailing Address:** _1750 BLANKENSHIP RD., SUITE 400, WEST LINN, OR 97068_

**Phone:** _(503) 305-3033_    **Fax:** _(503) 305-3034_    **Email:** _lloyd.hill@hillarchitects.com_

**Property Owner(s):**

**Property Owner(s) Signature:** _D.B. Desai_

**Property Owner(s) Name Printed:** _HACKETT HOSPITALITY GROUP, LLC_ **Date:** _4/14/17_

**Mailing Address:** _1419 W. MAIN ST., BATTLEGROUND, WA 98604_

**Phone:** _(360) 655-1455_    **Fax:** ___    **Email:** _2/kesh@tripodi.com_

**Representative(s):**

**Representative(s) Signature:** ___

**Representative (s) Name Printed:** ___    **Date:** ___

**Mailing Address:** ___

**Phone:** ___    **Fax:** ___    **Email:** ___

*All signatures represented must have the full legal capacity and hereby authorize the filing of this application and certify that the information and  exhibits herewith are correct and indicate the parties willingness to comply with all code requirements.*

Ex. I
P. 1 of 23

# HAMPTON INN & SUITES
## Oregon City, Oregon

An Application for:

**Detailed Development Plan (DDP)**

Submitted:

14 April 2017

Owner:

**Hackett Hospitality Group, LLC**
1419 W. Main Street
Battleground, WA
(360) 666-5551

Applicant:

**Hill Architects**
1750 Blankenship Road
West Linn, Oregon
(503) 305-8033

Oregon City Planning Project Number  **PA 17-02**
**PA 16-30**
**PA-15-25**
Hill Architects Project  **# 13647**

29830

Ex. I
P. 2 of 23


## Schwabe
### WILLIAMSON & WYATT ®

January 30, 2018

**Michael C. Robinson**
Admitted in Oregon
T: 503-796-3756
C: 503-407-2578
mrobinson@schwabe.com

**VIA E-MAIL**

Mayor Dan Holladay
City of Oregon City Commission
Oregon City City Hall
625 Center Street
Oregon City, OR 97045

RE:   City of Oregon City File No. AP-17-0006(Appeal of CP-17-0002), DP-17-0003,
and NR-17-0004); Applicant's Response to Appellant's Fee Waiver Request

Dear Mayor Holladay and Members of the Oregon City City Commission:

This office represents the Applicant. This letter responds to the Appellant's Fee Waiver Request
filed with the Notice of Appeal of the above-referenced Planning Commission decision.

## 1. Introduction.

Oregon City Municipal Code ("OCMC") 17.50.290.C provides an Appellant with the ability to
request a waiver to the appeal fee. The standard provides as follows:

> **"Appeal fees may be waived, wholly or in part, by the City Commission, if
> the City Commission finds that, considering fairness to the Applicant and
> to opposing parties, a full or partial waiver of the appeal fee is warranted."**

Appellant requested a fee waiver in whole so that he may avoid paying the base appeal fee of
$3,258 and the actual City Attorney's fees for the City Commission's review of Appellant's
appeal of the Planning Commission's decision.  The remainder of this letter explains why the
City Commission should reject Appellant's Fee Waiver Request and require Appellant to
commit, on the record, to waiving his right to a refund of the base appeal fee and committing to
paying the actual City Attorney's fees for the appeal.

## 2.    Requested Procedure.

The Appeal Fee Waiver Request is separate from the appeal of the Planning Commission's
approval of the applications. The Applicant requests that the City Commission consider the
Appeal Fee Waiver first and as appropriate to the Appeal Fee Waiver, conduct the hearing as a
*de novo* hearing. However, the City Council should state on the record that new evidence outside
of the Planning Commission record received by the City Commission for purposes of
considering the Appeal Fee Waiver Request may not become part of the City Commission appeal
because it is an on-record proceeding.

Ex. I
P. 3 of 23

Mayor Dan Holladay
January 30, 2018
Page 2

Additionally, Applicant requests that the City Commission make a threshold determination as to whether the Appeal Fee Waiver should be granted. If the City Commission determines to grant the Appeal Fee Waiver in whole or in part, then the City Commission should proceed to consideration of the appeal. If the City Commission denies the Appeal Fee Waiver in whole or in part, then the City Commission should proceed with the appeal only in the event that the Appellant states on the record that he waives his right to recover his base appeal fee and commits to paying the actual City Attorney's fees.

**3.  Appellant has failed to justify the Fee Waiver under the applicable OCMC standard.**

OCMC 17.50.290.C establishes the standard by which the City Commission may waive an appeal fee in whole or in part. The standard is "considering fairness to the Applicant and to opposing parties"

Appellant submitted a written narrative explaining why the appeal fee should be waived. However, notwithstanding the arguments in Appellant's written statement, Appellant failed to address the issue of why waiving the Appeal Fee in whole or in part would be fair to the Applicant and to opposing parties.

The 2017 Planning Fee Schedule (effective January 1, 2017) is established pursuant to ORS 227.180(1)(c). The statute provides that the City Commission may prescribe by ordinance or regulation fees "to defray the costs incurred in acting upon an appeal from a Hearings Officer, Planning Commission, or other designated person. The amount of the fee should be reasonable and shall be no more than the average costs of such appeals or the actual cost of the appeal, excluding the cost of preparing a written transcript." In this case, the City Commission established by resolution a fee schedule to cover the actual costs of an appeal of a Planning Commission decision to be heard by the City Commission. The actual cost of the appeal includes the actual City Attorney Fees. Appellant's letter failed to explain why waiving Appellant's appeal fee in whole or in part would be fair to the applicant or to opposing parties. The City Commission should reject Appellant's fee waiver request because he has failed to address OCMC 17.50.290.C.

Additionally, the City Commission can find that waiving the appeal fee in whole or in part is unfair to the Applicant and to opposing parties for the following reasons. First, the Applicant seeks approval of its applications submitted to, reviewed by, and approved by the Oregon City Planning Commission. An appeal may reverse the Planning Commission's approval of the applications. It would be unfair to Applicant to allow an appeal to proceed without the Appellant paying the appeal fee because it would encourage frivolous appeals since Appellant would have no risk of losing his funds in the event that his appeal is rejected.

Second, an appeal prolongs the decision-making process. While the appeal process is within the 120-day permit established in ORS 227.178(2), an appeal nevertheless prolongs the process. To the extent Appellant has a "free" appeal, it is unfair to the Applicant to allow an appeal to proceed without the Appellant bearing the burden of the appeal where the Planning Commission has rejected his arguments and approved the application.

Mayor Dan Holladay
January 30, 2018
Page 3

Finally, the City Commission can find that waiving the appeal fee in whole or in part is unfair to opposing parties. Allowing an appeal to be filed without paying the actual costs of the appeal prolongs the permit-approval process for opposing parties and is thus unfair to them as well.

Notwithstanding the Applicant's reasons above as to why the City Commission should reject the Appeal Fee Waiver, the City Commission can find that the Applicant's failure to justify the Appeal Fee Waiver standard is a fundamental reason for the denial of the Appeal Fee Waiver request.

**4.  OCMC 17.50.290.D is Irrelevant to the Appeal Fee Waiver Proceeding.**

Appellant spends several pages of his Appeal Fee Waiver statement explaining why OCMC 17.50.290.B has not been adopted by ordinance. However, the fee before the City Commission in the Appeal Fee Waiver request is the appeal fee which is different from the application fee. The City Commission may find that OCMC 17.50.290.D is irrelevant to its determination whether to grant the waiver of the appeal fee either in whole or in part.

**5.  The City is not Required to Adopt the Planning Fee Schedule by Ordinance.**

Appellant argues that the Planning Fee Schedule is unenforceable because it has not been adopted by ordinance. However, as noted above, ORS 227.180(1)(c) authorizes a governing body to adopt fees by ordinance or regulation. In other words, the City Commission may adopt, as it has done the Planning Fee Schedule by resolution. Exhibit 1 of this letter is the Oregon City 2017 Planning Fee Schedule. The first line below the title of the document states "all fees are subject to change by Resolution of the City Commission." Thus, the City Commission has clearly adopted the fee schedule by resolution which is permitted by ORS 227.180(1)(c).

The Applicant cites *Doty v. City of Bandon, 49 Or LUBA 411, 419 (2005),* as authority for the proposition that a resolution is not a "regulation" as required by ORS 227.180(1)(c).  The Appellant is incorrect.  The case held that a fee resolution was not a post-acknowledgment land use regulation.  The City may reject this argument.

**6.  The City's Planning Fee Schedule is not Unconstitutional for any Reason Advanced by the Appellant.**

The Appellant argues that the Planning Fee Schedule is unconstitutional for several reasons. However, the City Commission should take official notice of the fact that every jurisdiction in the state of Oregon, pursuant to ORS 227.180(1)(c), charges the actual or average cost of Planning applications, including appeals fees. Notwithstanding this fact and the fact that such fees have been in effect for many years, Appellant cites to no state or federal court decision ruling such fees unconstitutional on any grounds. One would believe that if an appeal fee such as adopted by the City are unconstitutional, the issue would have been raised and resolved in favor of the Appellant long before now. The fact that such is not the case and fact that Appellant cites to no relevant case law supporting that argument demonstrates the fallacy of Appellant's arguments.

Mayor Dan Holladay
January 30, 2018
Page 4

Appellant argues, based on *dicta* from *Bell v. City of Hood River, 283 Or App 13, 19(2016)*, that not knowing the actual Attorney's Fees presents a "onerous financial burden" on Appellant. The City Commission may reject this argument for several reasons. Further, *Bell* held that Oregon Constitution Article I, Section 10 applies to courts, not administrative agencies. *Id.* at 18.

First, Appellant argues that he cannot know what the City Attorney Fees and other "consultant's" fees are. However, the relevant Oregon City Planning Fee Schedule requires Appellant to pay only the base fee and actual City Attorney's fees. No other consultants' costs are allowed to be imposed by the fee schedule.

Second, Appellant fails to define the term "onerous financial burden", or explain why not knowing the fee is an "onerous financial burden" on Appellant. Without more, Appellant cannot merely cite *dicta* from *Bell* as persuasive authority for his argument.

Third, it is very likely true that Appellant knew he would appeal a Planning Commission approval of the application. Appellant could have made his case in the record before rather than waiting until now. The failure to do so demonstrates that he was not concerned at all about the cost of an appeal fee, notwithstanding the actual City Attorney's costs.

Fourth, Appellant argues that its "perfectly impossible" to appeal without paying the appeal fees. Nevertheless, this is the situation faced by all appellants. Moreover, all applicants must pay an application fee. The land use program embodied in ORS Chapter 197 anticipates that cities and counties may recover costs of processing applications and appeals by appropriate fees.

Fifth, Appellant argues that his due process rights (without being specific as to the source of those rights) are violated by the requirement for an appeal fee. Yet, the City Commission may take official notice that virtually every administrative agency and court imposes some fees on a party to an administrative or court proceeding. In many cases, those fees are not known at the time an action is commenced, including the award of attorney's fees. Appellant's argument is backwards. It is not unconstitutionally vague to not have the amount of fees defined; it would only be unconstitutionally vague not to know that fees are required. In this case, even though the actual costs of the Attorney's fees are unknown, the fact is that the Appellant knows that the actual City Attorney's fees will be required.

Finally, Appellant's arguments amount to a procedural argument which he alleges violates his substantial rights to a full and fair hearing and an opportunity to make his case. Nevertheless, it is legal and constitutional to require Appellant to bear his costs of bringing the appeal. This is especially true in this case, which began in the summer of 2017 and will not conclude until sometime in early 2018, principally because of Appellant's opposition to the applications. While his opposition is certainly within the framework of Oregon's land use system, it is perverse for the Appellant to argue that his rights have been denied. In fact, he has been given every right to oppose and delay the application and now seeks to have the City expend City Attorney's costs without recapturing those costs.

Mayor Dan Holladay
January 30, 2018
Page 5

## 7. Conclusion

For the reasons contained in this letter, the Applicant respectfully requests that the City
Commission reject the Appellant's request for an Appeal Fee Waiver in whole or in part and
require Appellant to state on the record that he understands his base appeal fee will not be
returned and that he agrees to pay the actual City Attorney's fees for the appeal, in order to
proceed with this appeal hearing.

Sincerely,

Michael C. Robinson

MCR:gv
cc:     Mr. Dan Fowler (*Via Email*)
        Mr. Alkesh Patel (*Via Email*)
        Mr. Lloyd Hill (*Via Email*)
        Mr. Patrick Campbell (*Via Email*)
        Mr. Robin Chard (*Via Email*)
        Ms. Carrie Richter (*Via Email*)
        Mr. Bill Kabeiseman (*Via Email*)

PDX\132609\237630\MCR\22286409.1

Ex. I
P. 7 of 23



**Community Development – Planning**

221 Molalla Ave.  Suite 200  | Oregon City OR 97045
Ph (503) 722-3789 | Fax (503) 722-3880

**January 31, 2018**

| | |
|---|---|
| **To:** | Mayor Holladay and City Commission |
| **From:** | Laura Terway, Community Development Director and<br>Carrie Richter, Deputy City Attorney |
| **Re:** | James Nicita Appeal Fee Waiver (Abernethy Place Hotel and Mixed Use Development) |

This memo provides background information and guidance related to a request by Mr. James Nicita (Appellant) to appeal the Planning Commission's approval of the Abernethy Place Hotel and Mixed Use Development General Development Plan, Detailed Development Plan and Natural Resources Overlay District Verification – Planning Files CP-17-0002 / DP-17-0003 and NR 17.0004, without paying an appeal fee in the amount of $3,488 plus actual city attorney fees.

In addition to filing the City's appeal form, a narrative describing the ground for appeal, an appeal fee of $3,488.00 with a cashier's check under protest, the Appellant also filed a request that the City Commission waive or otherwise not impose the appeal fee.  The Appellant identifies three reasons for granting his request:

1) The City Commission should exercise its call-up authority to review the decision, thereby allowing the Appellant to withdraw his independent appeal;
2) The City Commission should grant a fee waiver pursuant to OCMC 17.50.290(C); or
3)  The City lacks statutory or constitutional authority to impose the fee.

**Applicable Procedures**

OCMC 17.50.190(F) provides that City Commission's review of an appeal shall be limited to the record created during the Planning Commission proceeding.  However, the appeal fee waiver request was separately filed and raises a challenge to the Commission procedures rather than the substance of the Planning Commission's review.  Although this issue could have been raised before the Planning Commission, the Appellant has asked that the City Commission consider additional evidence and argument in support of his fee waiver request.  As a result, staff recommends that the City Commission consider and resolve this fee waiver issue first before moving to the substance of the appeal.  This will require opening the record to allow all parties to submit new evidence limited to the fee waiver issue. The evidence and testimony submitted on this fee waiver issue will be kept separate and will not be considered when reviewing the merits of the appeal.

After receiving testimony from the Appellant, the applicant and any other interested party, the City Commission should close the public hearing, deliberate and make a tentative decision.  Staff will return at a subsequent meeting with written findings in support of this decision.  If the Commission determines to grant the fee waiver, it should then proceed to considering the appeal on the merits.  If the Commission denies the fee waiver, in whole or in part, the Appellant must be asked to state on the

record whether he wishes to proceed with the appeal, committing to payment of the appeal fee, including the reimbursement of actual city attorney fees.

**Whether the City Commission Should Call-Up the Planning Commission's Decision**

ORS 227.180(1) authorizes the City Commission to review any decision of the Planning Commission on its own motion.  The Appellant does not provide any explanation of the circumstances that justify a call-up in this case, other than his challenges to the City's authority to impose the fee.  The City has used its call-up authority infrequently, only in cases where the time limits or certain policy issues justified this approach.  Since it is not clear what unique circumstance would justify a call-up in this case, other than relieving the Appellant from the obligation to pay the fee, staff recommends that the Commission elect not to exercise its authority to call-up the decision in this case.

**Whether the City Should Grant a Fee Waiver "Considering Fairness the Applicant and Opposing Parties"**

OCMC 17.50.290 – Fees, Subsection (C) provides the following standard for granting a fee waiver:

> "C. Fee Waivers. The planning division may waive all or any portion of an application fee if, in the opinion of the director, a particular application must be resubmitted because of an error made by the city. Appeal fees may be waived, wholly or in part, by the city commission, if the city commission finds that, considering fairness to the applicant and to opposing parties, a full or partial waiver of the appeal fee is warranted. Appeal fees shall not be charged for an appeal filed by a city-recognized neighborhood association, so long as the appeal has been officially approved by the general membership or board of the neighborhood association at a duly announced meeting."

The Commission must decide whether a fee waiver is justified "considering fairness to the applicant and to opposing parties."  Rather than address the applicable fairness standard directly, the Appellant challenges the obligation to pay the fee in the first instance arguing that it is unconstitutional as well as illegal.

The Commission has broad discretion to determine whether a fee waiver is fair to the applicant as well as to others to participate in the proceeding.  The applicant has submitted testimony pointing out that waiving the fee would encourage "frivolous appeals," which in turn, have the effect of prolonging the review process for the applicant a well as for participants, for whom a protracted review process may impose adverse impacts as well.

In order to provide some context for the Commission in considering whether waiver the attorney fee portion of this request might be appropriate.  The following table summarizes appeals filed by individuals or entities, other than neighborhood associations where no appeal fee would be required, since 2004, when the appeal fee was amended to require payment of actual city attorney fees.

Table 1. Summary of Attorney Fees Charged for Appeals of Planning Commission Decisions

| File # | Actual Attorney Fees Charged? |
|--------|-------------------------------|
| AP-04-0007 | No, paid base fee of $2280. |
| AP-08-0002 | No, paid base fee of $3909. |
| AP-08-0004 | No, paid base fee of $3909. |
| AP-09-0001 | No, appeal was withdrawn shortly after submittal. |
| AP-17-0005 | Yes, paid base fee of $3488 plus invoiced $7,919.50 for actual attorney fees. |
| AP-17-0006 | Under Review: Associated with this fee waiver request. |

*Source: EDENS permit data.*

Of the Planning Commission appeals, the first three (from 2004 and 2008) there is no indication that attorney fees were charged or collected.  The appeal in 2009 was withdrawn shortly after submittal and the fee was not charged since little or no attorney costs were identified.  The attorney fee was charged for an appeal in 2017, and the last appeal is associated with this request.

**Whether the City has Statutory Authority to Impose the Fee**

ORS 227.180(1)(c) authorizes local governments to charge a fee as a means to discharge the costs of acting on an appeal.  It provides, in relevant part:

> The governing body may prescribe by ordinance or regulation fees to defray the costs incurred in acting upon an appeal from a hearings officer, planning commission or other designated person.  The amount of the fee shall be reasonable and shall be no more than the average cost of such appeals or the actual cost of the appeal, excluding the cost of preparation of a written transcript.

The City has acted pursuant to this authorization, imposing fees in land use cases to cover the cost of processing application, as well as appeals, by regulation.  Oregon City Municipal Code 17.50.290 – Fees provides:

> "The city may adopt by resolution, and revise from time to time, a schedule of fees for applications and appeals. Fees shall be based upon the city's actual or average cost of processing the application or conducting the appeal process. The only exception shall be the appeal fee for a Type II decision, which shall be limited by ORS 227.175.10.b. The requirements of this section shall govern the payment, refund and reimbursement of fees."

This provision was enacted in 2004, as part of Ordinance No. 03-1014, amending the OCMC to authorize the City to impose fees.  See excerpts of the same attached.  This same year, the City adopted Resolution 04-01, modifying the planning and engineering fees for processing development applications as well as appeals.   With regard to appeals, it included a provision that, in addition to a base fee of $2,530, appellants would be required to pay the "actual city attorney fees."  See attached.  The Time

Estimate table attached to this resolution explains how appeals, not including legal services, are estimated to take 42 hours of staff time at an actual average cost of $2,519.  For this reason, the fee was set at $2,530.

The City's most recently adopted fee resolution, Resolution No. 16-23, sets the current appeal fee at "$3,446 plus actual City Attorney fees."  According to the latest resolution, the increase in staff costs is based on the "annual adjustment of the fees based on the consumer price index every year to account for inflation."  Appellant does not challenge whether the $3,446 fee accurately represents the average costs for processing an appeal.

The City's authority to impose fees is authorized by state law through the adoption of an ordinance, Ord. No. 03-1014, and a regulation as required by ORS 227.180(1)(c).  The City has complied with this requirement by adopting a regulation that authorizes the imposition of fees that are "based on the city's actual or average cost of…conducting the appeal process."  These fees are set by resolution, as authorized by the regulation.  The imposition of a fee, at the rates identified is lawful because they reflect the average planning and engineering costs and actual legal services costs of processing an appeal.  Based on this analysis, staff recommends that the City Commission conclude that the City has authority to impose an appeal fee.

**Whether imposing this Fee is Constitutional**

Appellant argues that imposing the fee violates Article I, section 10 of the Oregon Constitution or the "justice without purchase clause."  The text of Article 1, section 10 provides:

> No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property or reputation.

Appellant relies on *dicta*[1] from the case *Bell v. City of Hood River,* 283 Or App 13 (2016) to support his claim but he fails to explain why this constitutional provision or this case considering it provides any basis for granting any relief.

In *Bell,* plaintiffs' opposed a development that was approved by the planning commission.  In order to appeal this decision, the city's fee resolution required the payment of an appeal fee in the amount of $3,258.  Plaintiffs filed a declaratory judgment action against the city asking the court to declare that the fee was unconstitutional because the payment of an appeal fee was required in order to perfect a local appeal and, in turn, the filing of a perfected local appeal is a prerequisite to seeking review before LUBA and the Court of Appeals, compromising their access to the courts.

---

[1]    *Dicta* is defined as:

Opinions of a judge that do not embody the resolution or determination of the specific case before the court. Expressions in a court's opinion that go beyond the facts before the court and therefore are individual views of the author of the opinion and not binding in subsequent cases as legal precedent.  *West's Encyclopedia of American Law*, edition 2. (2008). Retrieved January 29 2018 from https://legal-dictionary.thefreedictionary.com/Dicta

After a fair amount of textual analysis, the *Bell* court concluded that this provision is "directed to courts that are conducting adjudications."[2]  A "court" is defined as "a governmental institution composed of judges and their supporting staff, whom the law charges with the responsibility to administer justice." *Id.*

In reviewing the subject development application, the City is neither a "court," and the Court of Appeals has concluded that land use review is not the "administration of justice."  Rather, the City's home rule authority allows it to regulate the use and development of land for the health, safety and welfare of its citizens, which it does through the implementation of the OCMC, including zoning and development requirements.  Although similar to a court, the City's review of development applications for compliance with land use criteria is not the "administration of justice" as referenced in Article 1, section 10.  The court in *Bell* agreed with this analysis concluding:

> As explained above, Article I, section 10, prescribes how justice is to be administered in the courts.  Plaintiff, however, are not challenging the administration of justice in the courts.  Plaintiff are, in a declaratory judgment action brought against the city, directly challenging the validity of the city's fee-a fee that applies only to an appeal to the city council.  *Id* at 19.

Therefore, the court affirmed the lower court's conclusion that the City's imposition of an appeal fee did not violate Article 1, section 10.

The *dicta* that Appellant relies on from *Bell* as the basis for making his claim is the following:

> "[T]he bar to the courts that plaintiffs point out is the requirement in the land use statutes that plaintiffs must first exhaust local remedies before appealing.  It may be that that exhaustion requirement, as applied in plaintiffs' case, imposes an onerous

---

[2]    The court in *Bell* explained the scope of this constitutional imitation as follows:

Looking again at the text, although the first two clauses are grammatically independent, their meaning is not. The first clause, "No court shall be secret," and the second clause, "justice shall be administered," are linked by the conjunction "but." That linkage suggests that the administration of justice prescribed (including "without purchase") is the means by which courts are to fulfill their obligation to operate openly. In that way, the prescriptions on how justice is to be administered apply only to the work done in a "court." The Supreme Court previously has examined the word "court" and concluded that, "within the meaning of Article I, section 10, a 'court' is a governmental institution, composed of judges and their supporting staff, whom the law charges with the responsibility to administer justice." *Doe*, 352 Or at 90. Administering justice, in turn, is directed at adjudications, because "'[t]he fundamental function of courts is to determine legal rights based upon a presentation of evidence and argument.'" *Id. (quoting Oregonian Publishing Co. v. O'Leary*, 303 Or 297, 303, 736 P2d 173 (1987) (brackets in *Doe*)); *see also State v. MacBale*, 353 Or 789, 806, 305 P3d 107 (2013) ("Justice is administered when a court determines legal rights based on the presentation of evidence and argument."); *Oregonian Publishing Co.*, 303 Or at 303 ("The primary limitation on the scope of section 10 is that it is directed only at adjudications. To the extent that adjudications are not involved, the administration of justice is not governed by it."). Thus, the administration of justice prescribed by Article I, section 10, is directed to courts that are conducting adjudications.  283 Or App 13, 17-18 (2016).

> financial burden to the access to courts that is amenable to constitutional challenge. However, that is not the challenge that plaintiffs have brought." *Id*

As pointed out above, ORS 227.180(1)(c) unambiguously authorizes local governments to recover the costs associated with processing appeals based on the actual or average costs of those appeals. If the City's actual and average costs impose an onerous burden, as a result of the exhaustion requirement, then the proper challenge would be to the statutes that require exhaustion and authorize the charging of the fee before a court, and not before the City as part of a fee waiver request. In November, 2017, concurrent with filing the subject local appeal and appeal waiver, Appellant filed a LUBA appeal, presumably as a means to present this question to LUBA and, in turn, the Court of Appeals. The City has agreed to stay this parallel LUBA challenge, pending resolution of this fee waiver request.

The *Bell* opinion determined that the City's decision to impose a fee, consistent with state law, does not violate Article I, section 10 of the Oregon Constitution. Moreover, this challenge has no bearing on the standard for granting a fee waiver under OCMC 17.50.290(c).

Finally, Appellant makes a due process challenge citing the conundrum created by requiring the payment of the appeal fee at the time of filing the appeal as a condition precedent to perfecting a valid appeal when the appellant does not know the actual cost of the appeal. The City has accepted the appeal, notwithstanding the failure to pay any deposit, thereby eliminating the concern. Further, ORS 227.180(1)(c) authorizes the City to charge the "actual" cost for processing an appeal. The Appellant was aware that a fee would be charged. By definition, those costs will not be known until the appeal is finished and the total costs are assessed.

**Conclusion**

Based on the foregoing, the City Commission should deliberate and make a decision of whether to waive any or all of the fee request for the following reasons:

1. The City Commission wishes to call-up the decision for review;
2. Fairness to the applicant and to all parties dictates a full or partial waiver of the appeal fee;
3. A fee waiver should be granted because the City lacks statutory authority to impose the fee; or
4. A fee waiver should be granted because imposing the fee is unconstitutional.

Upon resolution of these questions, staff recommends that the City Commission make the following tentative decision:

1. Grant the fee waiver request and proceed with the appeal hearing on the merits;
2. Grant the fee waiver in part, and confirm that the Appellant agrees to payment of the fee as set by the City Commission and wishes to proceed with the appeal; or
3. Deny the fee waiver and confirm that the Appellant agrees to payment of the fee as set by the City Commission and wishes to proceed with the appeal.



# City of Oregon City

625 Center Street
Oregon City, OR 97045
503-657-0891

## Meeting Minutes - Final

## City Commission

*Dan Holladay, Mayor*
*Renate Mengelberg, Commission President*
*Brian Shaw, Nancy Ide, Frank O'Donnell*

| Wednesday, February 7, 2018 | 7:00 PM | Commission Chambers |
|---|---|---|

### REVISED

**1.    Convene Regular Meeting and Roll Call**

*Mayor Holladay called the meeting to order at 7:00 PM.*

**Present:**   5 -   Commissioner Brian Shaw, Mayor Dan Holladay, Commissioner Nancy Ide, Commissioner Renate Mengelberg and Commissioner Frank O'Donnell

**Staffers:**   12 -   City Manager Tony Konkol, Assistant City Attorney Carrie Richter, City Recorder Kattie Riggs, James Band, Community Services Director Phil Lewis, Community Development Director Laura Terway, Economic Development Manager Eric Underwood, Library Director Maureen Cole, Finance Director Wyatt Parno, Public Works Director John Lewis, Human Resources Director Jim Loeffler and Community Communications Coordinator Kristin Brown

**2.    Flag Salute**

**3.    Ceremonies, Proclamations**

**3a.**              Planning Commission Annual Update

*Denyse McGriff, Chair, and Paul Espe, Vice Chair, gave the annual Planning Commission update. They discussed the Planning Commission's goals and work plan for the coming year.*

**4.    Citizen Comments**

*William Gifford, resident of Oregon City, spoke about the upcoming Metro Council election and invited everyone to Carol Pauli's campaign kick-off party tomorrow night.*

*Patrick Rectenwald, resident of Oregon City, was representing citizens who were concerned about a halfway house for recently released inmates that was proposed in his neighborhood. He referred to the City's code and Oregon Revised Statutes which discussed the requirements for establishment of halfway houses in residential facilities. He requested a full risk analysis be performed on the area surrounding the home on Roosevelt Street and for the City to red tag the project immediately.*

*Laura Terway, Community Development Director, and Jim Band, Police Chief, explained the work that had been done to address the issue.*

*Jennifer Ostrick, resident of Oregon City, also expressed concerns regarding the halfway house.*

*Kent Ziegler, resident of Oregon City, discussed January's Oregon City Business Alliance Forum where Tony Konkol, City Manager, was the speaker. On behalf of Rediscover the Falls, he encouraged the adoption of the master plan for the Riverwalk. He referred to the recent edition of the Oregon City News where there was an article against a proposed annexation written by a Planning Commissioner. He thought Carol Pauli would be an excellent Metro Councilor.*

*Carrie Richter, City Attorney, advised Mr. Ziegler to bring the article up at the next Planning Commission meeting as the City Commission would be reviewing the application and she preferred not to talk about now.*

## 5.    Adoption of the Agenda

*The agenda was adopted as presented.*

## 6.    Public Hearings

**6a.**                     AP-17-0006: Appeal of the Planning Commission Approval of Planning Files CP-17-0002, DP-17-0003, and NR-17-0004 Including a Request to Waive or Otherwise not Impose the Appeal Fee

*Mayor Holladay opened the public hearing.*

*Ms. Terway explained the process for City Commission review of the fee waiver request hearing and for the appeal hearing. The fee waiver request was to waive the appeal fee and City Attorney costs for the Abernethy Place application. The appeal fee was $3,488 and the attorney costs were estimated to be $6,000. She entered into the record additional comments received from the appellant, Resolution 04-01, and Resolution 16-23.*

*Carrie Richter, City Attorney, read the hearing statement. She asked if any Commissioner had ex parte contacts, conflicts of interest, bias, or any other statements to declare. There were none.*

*Ms. Terway presented the staff report. The Commission could decide to waive the fee for any or all of the following reasons:  the City Commission wished to call up the decision for review, fairness to the applicant and to all parties dictated a full or partial waiver of the appeal fee, a fee waiver should be granted because the City lacked statutory authority to impose the fee, and a fee waiver should be granted because imposing the fee was unconstitutional.*

*Jim Nicita, appellant, had researched how the City applied appeal fees. He discussed an ordinance from May 1980 where an appeal fee from the HRB to the City Commission was set at $50 and it remained today at $50. The appeal fee was different from the Planning Commission to the City Commission. He found an appeal in 1985 indicating a $100 charge for an appeal. ORS 227.181c stated the fee must be prescribed by ordinance or by regulation. One of the questions that was subject to interpretation was whether the resolution met the criteria of that statute. Two City ordinances set the appeal fees, Ordinance 88-1012, setting the fee at $200, and Ordinance 90-1044, setting the fee at $250. Ordinance 92-1016 changed the code to*

Ex. I
P. 15 of 23

*allow the Commission to set appeal fees by resolution rather than by ordinance. Since that time the City had set its fees by resolution. In 1992, Resolution 92-29 was adopted setting the fee at $500 and in 1996, Resolution 96-45 set the fee at $750. A very significant jump occurred in 2001 when Resolution 01-02 was adopted which set the fee at $2,400. In 2004, the fee was set at a base fee of $2,530 and added the City Attorney fees through Resolution 04-01. Resolution 06-18 amended Resolution 04-01 and set the appeal fee at $2,659 but removed the City Attorney fees. Resolution 07-26 set the fee at $3,009 with no City Attorney fees and the increase was based on accommodating the additional overhead associated with Community Development's move to an alternate facility. He questioned if that reason met the intent of ORS 227.181c. Resolution 10-19 was on the City Commission's consent agenda and restored the inclusion of the City Attorney fees. There were progressive increases in the fee in 2013 to the present, which was $3,488 and attorney fees. He discussed the fairness standard in OCMC 17.50.290c, and how it was unfair to pay more for an appeal of a Planning Commission decision than for an appeal of a Historic Review Board decision. There had only been one time the City Attorney fees had been charged since 2004, which set up a fairness issue of applying the fee to some parties and waiving it for others. It was not fair for appellants to pay the fees when they had not been justified with facts. The fees were set by resolution instead of by ordinance, providing inadequate notice to the public and City Commission as to the fees being set, justification, and their implication. An open-ended City Attorney fee provision subjected citizens to the hypothetical possibility of retribution for pursuing their right to free speech or their right to address grievances against the City in Circuit Court or LUBA. He then discussed the arguments under ORS 227.181c. He thought the City's Code conflicted with the State Statute, and therefore was invalid as the City approved increases through resolution instead of ordinance.*

*Michael Robinson, attorney representing the applicant, gave arguments in opposition to the fee waiver. The City Commission had to decide if it was fair to grant a fee waiver for this application. This application went through five Planning Commission meetings and the record included thousands of pages. Staff had expended an enormous amount of time as well as the applicant and its supporters. The fees did not capture all of the costs, but did require the appellant to repay the base fee plus the actual City Attorney's fees. He thought waiving the fee would be unfair when there was this much process and demand on staff time. There was no reason to call this decision up for review. The City had the statutory authority to do what it had done. Fees like this were charged by every jurisdiction and there were no LUBA, state, or federal cases where these fees were found to be statutorily impermissible. It was not unconstitutional to impose fees. He discussed a court case, Bell v. City of Hood River, and how it was not on point with the appellant's argument. The history of the fee was irrelevant as he saw it as a collateral attack on what past City Commissions had done and it did not have any bearing on the specific facts that the Commission was being asked to decide on tonight. He did not think the Commission was doing anything unlawful. The legislature had said the City could charge actual or average fees. He did not think the argument of approving fees by resolution as opposed to ordinance would have merit in a LUBA or court case. He discussed how the City of Bandon case raised by the appellant was not on point. He asked the Commission to reject the appeal fee waiver request.*

*Mayor Holladay asked how much the delay had cost the applicant.*

*Dan Fowler, applicant, said if the delay caused the hotel not to be built it could cost millions. He and his partners had put in close to a million dollars in this project so far.*

*There was discussion regarding the difference between a resolution and a regulation*

*and how the appeal did not meet the reasons for a waiver as outlined by staff.*

*William Gifford, resident of Oregon City, asked that the Commission consider the lack of support for this unclear idea.*

*Paul Edgar, resident of Oregon City, thought the issue was about public participation and making fees so unreasonable that they shut off public involvement.*

*Mr. Nicita gave rebuttal. He discussed the constitutional issues Mr. Robinson raised. There were three appeals from 2004 to 2007 where the base fee was charged, but the City Attorney fees were not charged. He thought charging the fees to some parties and not to others without any explanation for the differential treatment was getting into some federal constitutional issues, such as the fairness standard, due process, and equal protection clause, and the privileges and immunities clause of the Oregon constitution.*

*Mayor Holladay closed the public hearing.*

*Ms. Richter said in regard to the three appeals where no City Attorney fees were charged, at that time the Attorney fees were not part of the fee resolution.*

*Mayor Holladay asked if there had been a time when appellants were charged the base fee and City Attorney fees. Ms. Terway said yes, the last appeal that had been submitted this year paid both those fees.*

*Commissioner Shaw thought it was fair to charge the fees, especially with how much time and resources had gone into the process.*

*Commissioner Mengelberg said the fee schedules and conditions had been in place for a long time, and everyone knew the rules. Citizens could come to meetings and voice their opinions for free. The cost for evaluation of the information and legal review needed to be paid for, and she thought they did not need to waive the fee.*

*Commissioner O'Donnell did not think the requirement of a fee denied a person justice as was described in Bell v. City of Hood River. He thought the fee should be applied.*

*Commissioner Ide said the City had the authority to charge the fees and as a home rule city had the right to establish the fees by resolution. She thought they should deny the waiver of the fees.*

*Mayor Holladay said there had been a lot of public process on this application. He asked if the appellant had gone to the McLoughlin Neighborhood Association for support of the appeal fee waiver.*

*Mayor Holladay reopened the public hearing to get an answer to his question.*

*Mr. Robinson said there were three neighborhood associations that had standing before the Planning Commission. One supported the application, and the other two did not. One neighborhood association never took up the issue of a fee waiver. The McLoughlin Neighborhood Association without a general membership vote granted a fee waiver, and then in a general membership meeting voted to rescind the fee waiver. None of the neighborhood associations appealed the decision and none of them had the ability to ask for a fee waiver.*

*Mr. Fowler said when there was a specific request for support of a fee waiver, the McLoughlin Neighborhood Association voted it down 32-3.*

*Mr. Nicita clarified the sequence was as follows: the McLoughlin Neighborhood Association steering committee first voted to appeal the application and request a fee waiver. The City's ordinance allowed a steering committee and a general membership to vote to appeal and request a fee waiver. The steering committee decided to take the decision to the general membership meeting. During that meeting there was a motion to rescind the steering committee's vote. The first vote on it was a tie, and a second vote was taken which also resulted in a tie. On a third vote, the motion to rescind the steering committee's decision failed. Thereafter Mr. Fowler and other members of the McLoughlin Neighborhood Association requested the chair hold a special meeting. At that special meeting, the general membership voted to rescind the decision of the steering committee.*

*Mr. Fowler stated he never requested a special meeting. That was done by members of the steering committee who thought the process was not fair to the applicant because they did not have notice of that meeting. The motions never included a fee waiver request; it was about the appeal only. The only time the fee waiver request was brought up was at the last meeting where it was voted down.*

*Mayor Holladay closed the public hearing.*

*Mayor Holladay reviewed the list of reasons to waive the fee that was provided by staff. There was consensus that the City Commission did not wish to call up the decision for review, did not wish to give a full or partial waiver of the appeal fees, did not believe the City lacked statutory authority to impose the fee, and did not think imposing the fee was unconstitutional.*

**A motion was made by Commissioner Shaw, seconded by Commissioner Mengelberg, to tentatively deny the fee waiver request for AP 17-0006 and to continue the item to March 7, 2018 for the adoption of findings. The motion carried by the following vote:**

**Aye:**   5 -   Commissioner Brian Shaw, Mayor Dan Holladay, Commissioner Nancy Ide, Commissioner Renate Mengelberg and Commissioner Frank O'Donnell

*Mayor Holladay opened the public hearing.*

*Ms. Terway explained the process for the appeal of the Conditional Use, Detailed Development Plan, and Natural Resource Overlay District for a development near 17th and Washington Streets.*

*Ms. Richter read the hearing statement. No new evidence could be submitted and the evidence for the fee waiver could not be considered for this appeal. The only ones who could participate in the hearing were those who participated before the Planning Commission. She asked if any Commissioner had ex parte contacts, conflicts of interest, bias, or any other statements to declare.*

*Commissioner Ide participated in a Clackamas Heritage Partners meeting where a letter of support for the hotel was discussed. She did not participate in that decision and left the meeting early.*

*Commissioner Shaw attended the McLoughlin Neighborhood Association meetings as a spectator and was not involved when this application was brought before the Association.*

*Mayor Holladay, Commissioners Shaw, Ide, and O'Donnell had visited the site.*

*Ms. Richter said the Planning Commission record and all other materials had been placed before the City Commission and were part of the record. Given the results of the fee waiver denial, she asked the appellant if he wished to proceed with the appeal.*

*Jim Nicita, appellant, said he would not be withdrawing the appeal.*

*Ms. Terway provided the staff report. She gave a general overview of the project, which was development of a five-story hotel with approximately 99 rooms and associated frontage improvements. She reviewed the site plan, elevations of the proposed building, and appeal issues. The appeal issues were as follows: failure to comply with the neighborhood association meeting requirement, failure to utilize materials and a design that matched the Hackett House, failure to require a variance rather than an adjustment, failure to comply with the End of the Oregon Trail design guidelines, failure to obtain a variance rather than a modification, failure to comply with stormwater management and applicable state water quality standards, failure to give notice to the applicable tribal representatives, failure to utilize a watershed scale assessment and there was no Goal 5 analysis of storm water impacts to Clackamette Cove, and failure of the Planning Commission to consider the request for reconsideration. She then discussed the appeal process.*

*Mr. Nicita discussed the 1990 End of the Oregon Trail Master Plan, which he thought was a legally binding planning document. The City Commission of that time adopted a Tourist Commercial Code, Comprehensive Plan policies, and Urban Renewal Plan to implement this Master Plan. However they only accepted the Master Plan, rather than adopted the Master Plan. The City also expended large sums of money to purchase land for the Master Plan. He thought they had effectively adopted the Master Plan. They did not adopt the End of the Oregon Trail Design Guidelines that were published in 1991. Later on the Downtown Community Plan adopted the Design Guidelines by reference. He discussed a case, Gonzalez v. Lane County, that was an example of a law of incorporation by reference. He thought both the Downtown Community Plan and End of the Oregon Trail Design Guidelines applied. The Comprehensive Plan controlled the code and he thought the Design Guidelines would control any of the ordinances in the Development Code. The Design Guidelines had a height limitation of 2.5 stories and new development was to be complimentary with a wood exterior that would evoke the era of the Oregon Trail. He did not think this application met those Design Guidelines. OCMC 17.62.050A3a required the hotel to utilize similar materials and design that incorporated the architecture of the adjacent Hackett House as well as the surrounding district. The Hackett House had a wood exterior. He did not think the hotel could exceed the height limitation with an adjustment or variance because the Design Guidelines controlled anything in the code. When the applicant's representative went to the Two Rivers Neighborhood Association meeting, he met with one person. The code said they had to meet with an association, and one person did not meet that standard. They were required to give a pre-certified mailed letter to the chair of the CIC and that was not done. Another issue was bicycle connectivity. Under OCMC 12.04.195, block spacing standards, there was supposed to be a bicycle access lane at 550 feet or more. The applicant did not measure the block to comply with the code, and no bicycle access lane had been provided. Regarding the letter from the tribes, the submission from staff had email addresses that could not identify who the emails were being sent to. It did not constitute evidence that the appropriate cultural officials were contacted.*

*Mayor Holladay said the time was now 10:00 PM and asked if the Commission wanted to proceed with the meeting.*

**A motion was made by Commissioner Mengelberg, seconded by Commissioner Ide, to proceed with the hearing. The motion carried by the following vote:**

**Aye:**   5 -   Commissioner Brian Shaw, Mayor Dan Holladay, Commissioner Nancy Ide, Commissioner Renate Mengelberg and Commissioner Frank O'Donnell

*Dan Fowler, applicant, said he had been working on this project for almost two years. During that time, he attended numerous staff meetings, two Historic Review Board meetings, three McLoughlin Neighborhood Association meetings, Two Rivers Neighborhood Association meeting, and five Planning Commission meetings. The application had received unanimous approval.*

*Michael Robinson, attorney representing the applicant, was in agreement with the staff report and Planning Commission decision that the applicant met the burden of proof by substantial evidence that the relevant approval criteria were satisfied. This site was not within a historic district and was properly zoned for this use. The Historic Review Board and Clackamas Heritage Partners were in support of the application. This was the right use in the right location at the right time. The End of the Oregon Trail Master Plan was not a planning document. Mr. Nicita cited OCMC 17.62.050A3a, stating the architectural style of the hotel had to match the Hackett House. He thought this standard did not apply as the site was not within a historic district. Also the code provision only said it had to match the architecture, not architectural style. He did not think the Planning Commission erred by not granting Mr. Nicita's reconsideration. That issue was not in the record, and the request was made after the decision and record was closed. Regarding the allegation that the City did not follow notice to the tribes, the Code required that notice be given to five designated tribes and they had 45 days to respond. The City gave email notice to each of the five tribes as five individual emails and only one responded. Regarding the letter to the CIC, the Code did not impose a jurisdictional defect on the letter as it did not have to be sent via certified mail. Three neighborhood associations participated in the process. The Code also did not mandate how many people had to attend a neighborhood meeting to make it a meeting. The End of the Oregon Trail Design Guidelines were a draft, and did not function properly if they followed its intent. The Guidelines and the Master Plan had never been adopted; they were drafts. He explained two cases raised by Mr. Nicita, Baker v. City of Milwaukie and Gonzalez v. Lane County, that had been incorrectly used as examples. He thought the Planning Commission did its job and the application met the criteria. He requested the Commission reject the appeal and approve the application.*

*Jerry Herrmann, resident of Gladstone, passed out a memo and gave reasons why he thought the proposed hotel should go forward, especially as it could become a hub for the redevelopment of the north end district.*

*Ms. Richter said the first three bullet points and the two images of Mr. Herrmann's memo were in the record, but the last two bullet points were not and could not be considered.*

*Paul Edgar, resident of Oregon City, testified about the lack of historic design of the hotel and how it detracted from the area.*

*Mr. Nicita gave rebuttal. He did not think Mr. Robinson presented accurately the information regarding the notification to the tribes. Only one email was sent to five different email addresses and it was unclear in those email addresses who the emails*

*were sent to and if they were the correct representatives. Regarding the height and the rationale to preserve a view corridor, this was a two phase project and when the second phase that was a mixed use condo retail development came in, it would block that view corridor. He disagreed with Mr. Robinson's interpretation of OCMC 17.62.050A3a. He thought Mr. Robinson had suggested the site had to be in the McLoughlin District, Canemah District, and Downtown District simultaneously and that was not possible.*

*Mayor Holladay said a past Commission could not bind a future Commission and without adopted plans, something that had happened over 20 years ago was not relevant to the Commission today. Master plans were about visions for an area, but they were not cast in stone.*

*Mr. Robinson gave final rebuttal. If the Commission closed the hearing and record tonight, the applicant would waive his right to final written argument. Mr. Nicita was right that individual emails were not sent out. It was one email sent to five different email addresses. One of the tribes responded and he thought it went to the right people. There was a memo from staff stating this was how staff sent notice to the tribes and he did not think there was an issue. Regarding the height adjustment to preserve the view corridor, Phase 2 was not going to interfere with the view. Regarding the architectural style, the Code did not include the word style and he thought OCMC 17.62.050A3a required that the site had to be in one of the three districts and it had to be adjacent to a historic structure. This site was not in any of the three districts. If the End of the Oregon Trail Design Guidelines had been adopted, there would have been evidence to show that, but it was not in the record. Incorporating them by reference did not make them mandatory approval criteria. He asked that the appeal be rejected.*

*Mayor Holladay closed the public hearing.*

*Commissioner O'Donnell summarized the issues. The Design Guidelines and Master Plan were never adopted. Alternative communications with the neighborhood groups were allowed. He thought the Planning Commission had not erred in their decision. He thought the decision was justifiable and without prejudice.*

*Commissioner Shaw agreed. The hotel had to hit a certain price point for the rooms, and in order to get a hotel that was financially stable and would be successful, the applicant had done the best design that he could.*

*Commissioner Mengelberg said the development was not in a historic district and the Code provision did not apply. Communities and architectural styles evolved over time. She thought it was a beautiful design and supported the application.*

*Commissioner Ide thought it was the Commission's job to ensure the Planning Commission complied with all of the City codes and other applicable regulations and she thought the Planning Commission had complied. She supported the denial of the appeal.*

*Mayor Holladay stated he thought this was a mission to kill a project.*

*Mr. Nicita challenged the Mayor for personal bias on that statement.*

*Mayor Holladay said the Planning Commission and Historic Review Board both reviewed the project and approved it. He strongly supported the Planning Commission's decision and did not find the appellant's arguments persuasive.*

Warner Milne Road

**8b.**                    Contract for Technical Advisor Consulting Services for the Police and
Municipal Court Facility

**8c.**                    Personal Services Agreement with Wallis Engineering for 2018
Waterline System Improvements Project

**8d.**                    OLCC: Liquor License Application- On-Premises Sales, Applying as a
Limited Liability Company, Ruby's Pub & Grill, 515 Main Street

**8e.**                    Minutes of the December 20, 2017 Regular Meeting

**8f.**                    Minutes of the January 3, 2018 Regular Meeting

**9.    Communications**

**a.    City Manager**

*Mr. Konkol announced ODOT would be starting the rock fall improvement project on
99E and traffic delays would be expected.*

**b.    Commission**

*There were no Commission communications.*

**c.    Mayor**

*There were no Mayor communications.*

**10.    Adjournment**

*Mayor Holladay adjourned the meeting at 10:49 PM.*

*Respectfully submitted,*

*Kattie Riggs*
_____

*Kattie Riggs, City Recorder*

*Ms. Richter asked in regard to the bias challenge, was Mayor Holladay going to vote based on the applicable approval criteria and the appeal issues as they related to the applicable approval criteria. Mayor Holladay said yes, he was.*

**A motion was made by Commissioner Shaw, seconded by Commissioner Ide, to tentatively deny AP 17-0006 and approve Planning Files CP 17-0002, DP 17-0003, and NR 17-0004 to be brought back on March 7 for the adoption of the findings with the record closed. The motion carried by the following vote:**

**Aye:**   5 -   Commissioner Brian Shaw, Mayor Dan Holladay, Commissioner Nancy Ide, Commissioner Renate Mengelberg and Commissioner Frank O'Donnell

## 7.   General Business

**7a.**                    Resolution No. 18-04, Willamette Falls Riverwalk Master Plan Adoption

*Phil Lewis, Community Services Director, and Alex Gilbertson, Metro Planner, presented the Riverwalk Master Plan.*

*Ms. Gilbertson reviewed the project background, details about the site, concept planning, community engagement, themes from the public input, recommended Riverwalk concept design, and draft Riverwalk Master Plan.*

*Mr. Lewis discussed and showed images of the Woolen Mill Overlook, Public Yard and Woolen Mill Alcove, Clarifier landscape and PGE Dam Promenade, and the Willamette Falls Overlook.*

*Ms. Gilbertson explained the cultural and historic interpretation of the site, phasing of the Riverwalk, Rediscover the Falls organization, funding of $19 million and counting, and next steps. Staff recommended adoption of the resolution.*

*Those who spoke in favor of the Master Plan were as follows:  Alice Norris, president of Rediscover the Falls;*
*Martha Schrader, Clackamas County Commissioner; MG Devereux, Deputy Director for Oregon Parks and Recreation; and Jonathan Stone, Executive Director of the Downtown Oregon City Association.*

*There was Commission discussion on the years this project had been in process and how it would restore a national treasure.*

**A motion was made by Commissioner Shaw, seconded by Commissioner Mengelberg, to approve Resolution No. 18-04, Willamette Falls Riverwalk Master Plan adoption. The motion passed by the following vote:**

**Aye:**   5 -   Commissioner Brian Shaw, Mayor Dan Holladay, Commissioner Nancy Ide, Commissioner Renate Mengelberg and Commissioner Frank O'Donnell

## 8.   Consent Agenda

**A motion was made by Commissioner Mengelberg, seconded by Commissioner Ide, to approve the consent agenda. The motion carried by the following vote:**

**Aye:**   5 -   Commissioner Brian Shaw, Mayor Dan Holladay, Commissioner Nancy Ide, Commissioner Renate Mengelberg and Commissioner Frank O'Donnell

**8a.**                    Resolution No. 18-03, Public Waterline Easement Vacation at 358

Ex. I
P. 23 of 23

# Bateman Seidel

Bateman Seidel Miner Blomgren Chellis & Gram, P.C.

City of Oregon City
Oregon City Hall
625 Center Street
Oregon City, OR 97045
Tony Konkol

January 11, 2018
Invoice Number:    71644
Page    2

Bill Kabeiseman

---

In Reference To:    61231-044

City of Oregon City
Abernathy Fee Land Use Board of Appeals Appeal

**For Professional Services Rendered:**

| DATE | INITIALS | DESCRIPTION | HOURS | AMOUNT |
|------|----------|-------------|-------|--------|
| 12/08/2017 | WK | Review Land Use Board of Appeals Notice of Appeal; legal research ability to go to Land Use Board of Appeals from Planning Commission; telephone conference with D. Kearns regarding Hood River case. | 2.50 | $587.50 |
| 12/11/2017 | CAR | Discuss with counsel and M. Robinson and L. Terway. | 1.60 | $376.00 |
| 12/11/2017 | CAR | Review and revise appeal notice. | 0.80 | $188.00 |
| 12/12/2017 | CAR | Telephone call from M. Robinson regarding Land Use Board of Appeals appeal. | 0.50 | $117.50 |
| 12/12/2017 | WK | Telephone conference with L. Terway, C. Richter regarding Land Use Board of Appeals appeal of Planning Commission decision. | 0.40 | $94.00 |
| 12/13/2017 | CAR | Meeting with M. Robinson regarding fee waiver issues. | 0.60 | $141.00 |

Ex. J
P. 1 of 2

DEF 007433

This invoice reflects current fees and costs plus any balance due from prior invoice.  Payment is made in U.S. dollars, payable to Bateman Seidel, upon receipt. Funds may be wired to Account No. 144100518,  Bank of the West, Main Office, Portland, OR, ABA routing number 121100782.  Tax ID202185060.

# Bateman Seidel

Bateman Seidel Miner Blomgren Chellis & Gram, P.C.

City of Oregon City
Oregon City Hall
625 Center Street
Oregon City, OR 97045
Tony Konkol

January 11, 2018

Invoice Number:   71644

Page   3

Bill Kabeiseman

| Date | | Description | Hours | Amount |
|------|-----|-------------|-------|--------|
| 12/13/2017 | WK | Review proposed notice and revise. | 0.30 | $70.50 |
| 12/14/2017 | CAR | Drafting hearing notice. | 0.40 | $94.00 |
| 12/21/2017 | CAR | Telephone call from M. Robinson regarding motions to dismiss and intervene. | 0.40 | $94.00 |
| 12/28/2017 | CAR | Telephone call from M. Robinson regarding status; telephone call to L. Terway regarding staff Land Use Board of Appeals appeal processing. | 0.60 | $141.00 |
| | | **Total** | **8.10** | **$1,903.50** |

**Fee Summary:**

| NAME | HOURS | RATE | AMOUNT |
|------|-------|------|--------|
| Carrie A. Richter | 4.90 | $235.00 | $1,151.50 |
| Bill Kabeiseman | 3.20 | $235.00 | $752.00 |
| **Total Fee Summary** | **8.10** | | **$1,903.50** |

Ex. J
P. 2 of 2

DEF_007434

This invoice reflects current fees and costs plus any balance due from prior invoice.  Payment is made in U.S. dollars, payable to Bateman Seidel, upon receipt. Funds may be wired to Account No. 144100518,  Bank of the West, Main Office, Portland, OR, ABA routing number 121100782.  Tax ID202185060.

 Gmail

**James Nicita <james.nicita@gmail.com>**

---

**requested items**
1 message

---

**Dan Fowler** <DanF@abernethycenter.com>                                              Fri, Oct 27, 2023 at 3:34 PM
To: "james.nicita@gmail.com" <james.nicita@gmail.com>

Hi Jim,

You will be getting several emails from me due to their size.

Dan

---------- Forwarded message ----------
From: Dan Fowler <DanF@abernethycenter.com>
To: "'Cowan, Danielle'" <Danielle@mthoodterritory.com>
Cc: "'Austin, Jim'" <jim@mthoodterritory.com>
Bcc:
Date: Tue, 12 Dec 2017 19:04:58 +0000
Subject: ANOTHER APPEAL OF HILTON HOTEL

Hi Danielle and Jim,

I need to ask another big favor from you. Mr. Nicita is still trying to prove he is right and everyone else is wrong. He is now back at the
McLoughlin Neighborhood Association (MNA) asking them to support his request for a fee waiver on his appeal of our plans to the City
Commission. Yes, he is appealing our project to the City Commission and he has actually already filed an intent to appeal our project to
LUBA the Oregon Land Use Board of Appeals. He is really trying to hurt me. He will say it is all about the design guidelines and comp plan
but that is a cover for his real motive which is the hurt anyone that was connected to his recall from office. In that regard I am enemy #1. I
am asking that you again show up to the MNA meeting to be held at **7pm on January 4, 2018 (most likely at the new library).** I will
confirm the location once it is set. We must stop this madness so good projects and progress can happen in Oregon City. Please reply and
let me know if you are able to make it. Also if you know of anyone who lives, owns property or works in the McLoughlin Neighborhood
please have them come to the meeting and vote not to support a fee waiver.

Thank you so much,

Dan

503-351-4500

---------- Forwarded message ----------
From: Dan Fowler <DanF@abernethycenter.com>
To: "'Gillespie, Tiffany [PWFMC]'" <Tiffany.Gillespie@providence.org>
Cc:
Bcc:
Date: Tue, 12 Dec 2017 19:01:35 +0000
Subject: ANOTHER McLoughlin Neighborhood Appeal

Hi Tiffany,

I need to ask another big favor from you. Mr. Nicita is still trying to prove he is right and everyone else is wrong. He is now back at the
McLoughlin Neighborhood Association (MNA) asking them to support his request for a fee waiver on his appeal of our plans to the City
Commission. Yes, he is appealing our project to the City Commission and he has actually already filed an intent to appeal our project to
LUBA the Oregon Land Use Board of Appeals. He is really trying to hurt me. He will say it is all about the design guidelines and comp plan

Ex. K
P. 1 of 16

2023-11-09, 20:36

From: **Dan Fowler**  DanF@abernethycenter.com
Subject: ANOTHER McLoughlin Neighborhood Appeal
Date: December 12, 2017 at 11:00 AM
To: larry.didway@orecity.k12.or.us
Cc: Wes Rogers  wes.rogers@orecity.k12.or.us

Hi Larry & Wes,
I need to ask another big favor from you. Mr. Nicita is still trying to prove he is right and everyone else is wrong. He is now back at the McLoughlin Neighborhood Association (MNA) asking them to support his request for a fee waiver on his appeal of our plans to the City Commission. Yes, he is appealing our project to the City Commission and he has actually already filed an intent to appeal our project to LUBA the Oregon Land Use Board of Appeals. He is really trying to hurt me. He will say it is all about the design guidelines and comp plan but that is a cover for his real motive which is the hurt anyone that was connected to his recall from office. In that regard I am enemy #1. I am asking that you again show up to the MNA meeting to be held at **7pm on January 4, 2018 (most likely at the new library).** I will confirm the location once it is set. We must stop this madness so good projects and progress can happen in Oregon City. Please reply and let me know if you are able to make it. Also if you know of anyone who lives, owns property or works in the McLoughlin Neighborhood please have them come to the meeting and vote not to support a fee waiver.
Thank you so much,
Dan
503-351-4500

**From:** Dan Fowler
**Sent:** Monday, November 13, 2017 9:00 AM
**To:** larry.didway@orecity.k12.or.us
**Cc:** Wes Rogers <wes.rogers@orecity.k12.or.us>
**Subject:** McLoughlin Neighborhood Appeal
Larry & Wes,
We need any one who lives, works or owns property in the McLoughlin Neighborhood to come to a special neighborhood meeting Monday the 20th at 7:15 at the Oregon City Public library. They will be voting on whether or not to appeal our unanimous approval planning commission approval to the city commission. Anyone who shows up and meets the above criteria is automatically eligible to vote. We need a strong vote to not appeal. It is the only way we have a chance of stopping Nicita in dragging our hotel out for another LUBA appeal and most likely a year or more delay. So if you know of anyone PLEASE have them attend Monday night the 20th 7:15 at the Oregon City public library. If you can represent the district if you work in the neighborhood you can personally vote.
Thanks,
Dan

**From:** Dan Fowler
**Sent:** Tuesday, September 05, 2017 4:31 PM
**To:** larry.didway@orecity.k12.or.us
**Cc:** Wes Rogers <wes.rogers@orecity.k12.or.us>
**Subject:** Re: Hilton Hotel Public Hearing
Dear Larry and Wes,
I know it is a to ask put if it ilots at all possible I would like to ask you to attend the second planning commission meeting on our hotel project. Our friend Mr. Nicita is causing us trouble again; so we need as much support as possible. I will be sending out some talking points in terms of actually meeting to criteria.

The meeting is Monday September 11th 7pm at City Hall.
Thank you,
Dan
*Sent from my Verizon 4G LTE Droid*
On Aug 10, 2017 4:29 PM, "Didway, Larry" <<u>larry.didway@orecity.k12.or.us</u>> wrote:
Dan:
Unfortunately, we have a school board meeting at exactly the same time, and we both need to be in attendance due to the topics on the agenda. Wes is out of town right now, but I'll talk to him on Monday. Do you have an estimated timeframe for when public remarks might be made? We are really close, so maybe we can work something out.
-Larry



**Larry Didway, Superintendent**
**Oregon City School District No. 62**
1417 12th Street | PO Box 2110 | Oregon City, OR 97045
phone: 503.785.8430 | fax: 503.657.2492 | email: <u>larry.didway@orecity.k12.or.us</u>
On Thu, Aug 10, 2017 at 10:49 AM, Dan Fowler <<u>DanF@abernethycenter.com</u>> wrote:

> Hi,
>
> I want to remind you that our public hearing for the new Hampton Inn and Suites Hotel is Monday night 7pm. It is being held at the Oregon City Public Library located at 606 John Adams St. Below are some talking points that you may choose to use.
>
> First, you should begin by saying they support the application.
>
> The main point to make is the hotel's support for tourism and economy of Oregon City and Clackamas County. Its proximity to downtown OC, Abernethy Center, the EOOT Museum and McLoughlin House.
>
> The second point to make, to the extent you are willing to so, is that they have reviewed the plans and submittal and think the hotel is properly sited and is compatible with the surrounding uses.
>
> Finally, regardless of what else you say please ask the Planning Commission to approve the application that night
>
> Thank you for your support,
>
> Dan
>
> -----Original Message-----
> From: Dan Fowler
> Sent: Monday, July 24, 2017 10:52 AM
> To: 'Larry Didway' <<u>Larry.Didway@orecity.k12.or.us</u>>; Rogers, Wes (<u>wes.rogers@orecity.k12.or.us</u>)

<wes.rogers@orecity.k12.or.us>
Subject: RE: Hilton Hotel Public Hearing

Hi Larry & Wes,

Our public hearing on the hotel has been postponed until Aug. 14th at 7 pm; due to a lack of a quorum.

Hopefully you will still be able to attend.

Thank you for your support,

Dan


-----Original Message-----
From: Dan Fowler
Sent: Monday, June 19, 2017 4:33 PM
To: 'Larry Didway' <Larry.Didway@orecity.k12.or.us>; Rogers, Wes (wes.rogers@orecity.k12.or.us)
<wes.rogers@orecity.k12.or.us>
Subject: Hilton Hotel Public Hearing

Dear Larry and Wes,

I wanted to let you know early on our hearing is scheduled for the new Hilton Hotel hearing for July 24th, 7pm, at the City Hall chambers. I would appreciate your attendance and verbal support. If you were able to send a letter of support if you can't attend that would be great.

Thank you,

Dan

Dan Fowler
503-351-4500

Owner group Information:
Hackett Hospitality Group, LLC
1419 West Main St.
Battleground, WA, 98604

**From:** **Dan Fowler** DanF@abernethycenter.com
**Subject:** Another APPEAL OF THE HILTON HOTEL
**Date:** December 12, 2017 at 11:12 AM
**To:** marilyn@morrisseyfp.com, **Joyce Cohen** jcohen0671@msn.com, happyrockhusky@aol.com, **Jon George** Jon.George@grandronde.org, gail@historicoregoncity.org, **Lowell Miles** lmiles@milesfiberglass.com, fredabeal@comcast.net, hscott.guptill@gmail.com, **Cowan, Danielle** Danielle@mthoodterritory.com, **Austin, Jim** jim@mthoodterritory.com, jon@downtownoregoncity.org, **Don Slack** donslack5@msn.com, **Blane D. Meier** blane@fccycles.net, **Nick V** nick@willamette-equities.com, **Sherrie** SHenson@columbiabank.com, **Robb** robb@funnelbox.com, **William Gifford** WilliamG@ocBusinessAlliance.com, **Kent Ziegler** Kntzig001@aol.com, **Rose** Rose@ocgolfclub.com, **Maureen** maureen@parkinelectric.com, **Nick Dierckman** ndierckman@gmail.com, multijay@teleport.com, **Craig Morrow** ctm0714@gmail.com, **Tiffany Gillespie** Tiffany.Gillespie@providence.org, larry.didway@orecity.k12.or.us, **Rogers, Wes (wes.rogers@orecity.k12.or.us)** wes.rogers@orecity.k12.or.us, **Derek Metson (Derekm@greenboxpdx.com)** Derekm@greenboxpdx.com, **Alkesh Patel** apatel@evergreenhdg.com, **Ron Thom (ron.thom@msn.com)** ron.thom@msn.com, **Mark Foley** markf@fandfstructures.com, **Patty Jennings** ocpatty@yahoo.com, **Lloyd West** lloydwest1@comcast.net

Hi All,

I need to ask another big favor from you.  Mr. Nicita is still trying to prove he is right and everyone else is wrong.  He is now back at the McLoughlin Neighborhood Association (MNA) asking them to support his request for a fee waiver on his appeal of our plans to the City Commission.  Yes, he is appealing our project to the City Commission and he has actually already filed an intent to appeal our project to LUBA the Oregon Land Use Board of Appeals.  He is really trying to hurt me.  He will say it is all about the design guidelines and comp plan but that is a cover for his real motive which is the hurt anyone that was connected to his recall from office.  In that regard I am enemy #1. I am asking that you again show up to the MNA meeting to be held at 7pm on January 4, 2018 (most likely at the new library).   I will confirm the location once it is set.  We must stop this madness so good projects and progress can happen in Oregon City.  Please reply and let me know if you are able to make it.  Also if you know of anyone who lives, owns property or works in the McLoughlin Neighborhood please have them come to the meeting and vote not to support a fee waiver.

Thank you so much,

Dan
503-351-4500

 **Gmail**

**James Nicita <james.nicita@gmail.com>**

## Requested items
1 message

**Dan Fowler** <DanF@abernethycenter.com>                                Fri, Oct 27, 2023 at 3:48 PM
To: "james.nicita@gmail.com" <james.nicita@gmail.com>

---------- Forwarded message ----------
From: Renate Mengelberg <rmengelberg@ci.oregon-city.or.us>
To: William Gifford <William@smallflags.com>, "kntzig001@aol.com" <kntzig001@aol.com>, Dan Fowler
<DanF@abernethycenter.com>, "bmeier@crownmail.net" <bmeier@crownmail.net>, "donslack5@msn.com"
<donslack5@msn.com>, "maureen@parkinelectric.com" <maureen@parkinelectric.com>,
"ndierckman@gmail.com" <ndierckman@gmail.com>, "nick@willamette-equities.com" <nick@willamette-
equities.com>, "'Robb Crocker'" <robb@funnelbox.com>, "Rose@ocgolfclub.com" <Rose@ocgolfclub.com>,
"SHenson@columbiabank.com" <SHenson@columbiabank.com>, "pastormike@livinghopechurchoc.com"
<pastormike@livinghopechurchoc.com>, "carolpauli2009@q.com" <carolpauli2009@q.com>,
"trventures@msn.com" <trventures@msn.com>, "'Amber Holveck'" <aholveck@oregoncity.org>,
"mike.k.mitchell@gmail.com" <mike.k.mitchell@gmail.com>, "'Brian D Shaw'" <brian_d_shaw@msn.com>,
"'Nancy Ide'" <nancyide4oc@gmail.com>, "drakeel@gmail.com" <drakeel@gmail.com>,
"dan_holladay@comcast.net" <dan_holladay@comcast.net>, "Jonathan.Stone@gmail.com"
<Jonathan.Stone@gmail.com>
Cc:
Bcc:
Date: Tue, 30 Aug 2016 21:04:22 +0000
Subject: Urban Renewal Facts and Stats for voters pamplet and marketing information

Hello all: I asked Eric Underwood to provide some details about the program. He was very helpful in providing two
attachments (assessors information and grant information) as well as the following:

Hi Renate, Provided below is a link to the City's urban renewal webpage that contains much of the information
that you are requesting:
http://www.orcity.org/economicdevelopment/urban-renewal  This page also contains the most recent UR Annual
Report and the UR Plan, which was established in 1992.  We created this page to promote the benefits of urban
renewal but it's intended primarily as an educational tool for those that wish to become more knowledgeable on
the subject.

Also, I've attached the financials associated with the current District for your reference.  Hopefully, this covers it
but I am happy to provide additional information, if needed.

All Best, Eric

Eric Underwood

Ex. K
P. 6 of 16

From: **Nancy Ide**  nancyide4oc@gmail.com
Subject: Tri-fold candidate brochure
Date: June 19, 2016 at 3:06 PM
To: Dan Fowler  DanF@abernethycenter.com

Hi Dan,
Alice Norris has reviewed the attached draft brochure for my campaign. The brochure will be taken to a professional printer for formatting, colors, photo enhancement, etc.

Do you have a moment to also review it and give me your feedback? I'd like to get it to the printer before the end of the week to have available for an event next week.

Any and all suggestions are welcome.

Nancy

_____

Nancy Ide
Candidate for City Commission, Position #2
City of Oregon City
www.facebook.com/nancyide4oc
503-758-6363



Ex. K
P. 7 of 16

**From: Nancy Ide** nancyide4oc@gmail.com
**Subject:** Research on pull-out of CenterCal's project
**Date:** October 6, 2018 at 5:45 PM
**To:** BRIAN D SHAW brian_d_shaw@msn.com, Dan Fowler DanF@abernethycenter.com

I've done more research on URC meetings in 2010-11 regarding the Rivers project. Here's a recap of meetings related to CenterCal's project at the Rivers. It does not include everything, but highlights of meetings from Dec 2010 to Sept 2011.

I want to emphasize that the URC never formally voted on the Rivers project. There were many executive sessions (which are now public record available to the public by request) between Dec. of 2010 when the project was first presented until Sept 2011. Bruning seemed to simply leave town because of the negative activity he received - from Kathy Roth's burial ground comments to why there was a recall.

My summary thoughts are these, after listening to Rocky: Rocky DID listen to the people, and saw the 400+ people stand up at the Senior Center meeting, and in subsequent meetings he asked good questions that could have improved the project, and he expressed his concerns about the project, but HE NEVER ACTED ON THEIR WISHES OR FOUGHT FOR THE PROJECT. In my opinion, he was silent and negative and fearful. He saw the large number of people who wanted the project to develop, but if he had really wanted the project, he would have called out the big guns and got it pushed through.

12/15/2010: Fred Bruning presented The Rivers project to the URC. Video is here: http://oregon-city.granicus.com/MediaPlayer.php?view_id=2&clip_id=536
Rocky's comments (at 37:35) were that there were a lot of great aspects of the project, but not at the level he wanted, such as he was concerned about the gap between downtown and the Rivers site and that adding more businesses would close the current businesses downtown. He speculated, for example, that the theater on the hilltop would close when the Rivers theater opened. He didn't like the "gathering places and art" concept that Bruning proposed because the City already has closed museums. He felt the area around the Rivers should be compatible to the surrounding area -like the EOT. At 43:18, he said he thinks the Rivers would "kill downtown." He said the project had to tie into the City's history.

News article on Rocky being paired with Roth and Nicita on the project: https://www.oregonlive.com/oregon-city/index.ssf/2011/02/oregon_city_backs_off_seeking_voter_approval_of_the_rivers_mall.html

2/16/2011: URC meeting at the Senior Center where 400+ people were present. The charter amendment to require a vote on urban renewal projects was tabled. Mayor Neeley asked all those present who were in favor of the Rivers project to stand. You know the result of that. The meeting was to consider whether the City Commission should invite CenterCal to submit a DDA for the Rivers project. Rocky suggested the URC be the one to invite CenterCal to bring forward the DDA, not the City Commission, and he moved to invite CenterCal to do that. Yes votes included: Smith, Neeley, Shaw, Peterson, Mumm; No votes were Walters, Roth, Nicita, Edgar.

Then..... everything went fairly silent over the next many months. This is where several executive sessions took place and Bruning began to learn about the unhealthy makeup of the URC. He never did submit a DDA. At a meeting on 6/1/2011, Dan Drentlaw said he had urged CenterCal to give an update two weeks prior, and was still waiting for their response.

9/7/2011: URC motion passed to release executive session negotiations related to the CenterCal DDA for 2011 only. Smith agreed to release. It was clarified that anyone could submit a public records request for these executive session recordings/materials.

Next came the recall, and there was no further formal discussion on the Rivers project.

So... when Rocky says he never voted to kill the Rivers project, I believe that's a true statement because the DDA never came to the URC for a vote. However, he did NOTHING to promote the proposed project. HE DIDN'T FIGHT FOR THIS PROJECT, AND THUS HIS SILENCE CONTRIBUTED TO ITS LOSS.

Here are a couple news articles regarding Cabela's and Bruning:
Cabela's signs letter of intent: https://www.oregonlive.com/oregon-city/index.ssf/2010/11/cabelas_signs_letter_of_intent_to_anchor_oregon_city_mall.html

Here's an article that identifies Rocky in opposition:
https://www.oregonlive.com/oregon-city/index.ssf/2011/01/the_rivers_a_proposed_oregon_city_mall_may_dry_up_and_leave_town_taking_cabelas_with_it.html

That's all for now.

Nancy

 **Gmail**

James Nicita <james.nicita@gmail.com>

---

### requested items
1 message

---

**Dan Fowler** <DanF@abernethycenter.com>                    Fri, Oct 27, 2023 at 3:57 PM
To: "james.nicita@gmail.com" <james.nicita@gmail.com>

Dan

---------- Forwarded message ----------
From: Nancy Ide <nancyide4oc@gmail.com>
To: BRIAN D SHAW <brian_d_shaw@msn.com>, Dan Fowler <DanF@abernethycenter.com>
Cc:
Bcc:
Date: Sun, 7 Oct 2018 00:45:03 +0000
Subject: Research on pull-out of CenterCal's project
I've done more research on URC meetings in 2010-11 regarding the Rivers project. Here's a recap of meetings related to CenterCal's project at the Rivers. It does not include everything, but highlights of meetings from Dec 2010 to Sept 2011.

I want to emphasize that the URC never formally voted on the Rivers project. There were many executive sessions (which are now public record available to the public by request) between Dec. of 2010 when the project was first presented until Sept 2011. Bruning seemed to simply leave town because of the negative activity he received - from Kathy Roth's burial ground comments to why there was a recall.

My summary thoughts are these, after listening to Rocky: Rocky DID listen to the people, and saw the 400+ people stand up at the Senior Center meeting, and in subsequent meetings he asked good questions that could have improved the project, and he expressed his concerns about the project, but HE NEVER ACTED ON THEIR WISHES OR FOUGHT FOR THE PROJECT. In my opinion, he was silent and negative and fearful. He saw the large number of people who wanted the project to develop, but if he had really wanted the project, he would have called out the big guns and got it pushed through.

12/15/2010: Fred Bruning presented The Rivers project to the URC. Video is here: http://oregon-city.granicus.
com/MediaPlayer.php?view_id=2&clip_id=536
Rocky's comments (at 37:35) were that there were a lot of great aspects of the project, but not at the level he wanted, such as he was concerned about the gap between downtown and the Rivers site and that adding more businesses would close the current businesses downtown. He speculated, for example, that the theater on the hilltop would close when the Rivers theater opened. He didn't like the "gathering places and art" concept that Bruning proposed because the City already has closed museums. He felt the area around the Rivers should be compatible to the surrounding area -like the EOT. At 43:18, he said he thinks the Rivers would "kill downtown." He said the project had to tie into the City's history.

News article on Rocky being paired with Roth and Nicita on the project: https://www.oregonlive.com/oregon-city/index.ssf/2011/02/
oregon_city_backs_off_seeking_voter_approval_of_the_rivers_mall.html

2/16/2011: URC meeting at the Senior Center where 400+ people were present. The charter amendment to require a vote on urban renewal projects was tabled. Mayor Neeley asked all those present who were in favor of the Rivers project to stand. You know the result of that. The meeting was to consider whether the City Commission should invite CenterCal to submit a DDA for the Rivers project. Rocky suggested the URC be the one to invite CenterCal to bring forward the DDA, not the City Commission, and he moved to invite CenterCal to do that. Yes votes included: Smith, Neeley, Shaw, Peterson, Mumm; No votes were Walters, Roth, Nicita, Edgar.

Then..... everything went fairly silent over the next many months. This is where several executive sessions took place and Bruning began to learn about the unhealthy makeup of the URC. He never did submit a DDA. At a meeting on 6/1/2011, Dan Drentlaw said he had urged CenterCal to give an update two weeks prior, and was still waiting for their response.

9/7/2011: URC motion passed to release executive session negotiations related to the CenterCal DDA for 2011 only. Smith agreed to release. It was clarified that anyone could submit a public records request for these executive session recordings/materials.

Next came the recall, and there was no further formal discussion on the Rivers project.

Ex. K
P. 9 of 16

**From:** **Dan Fowler** DanF@abernethycenter.com
**Subject:** Brian's & Dan's Lawn Sign
**Date:** August 29, 2014 at 2:12 PM
**To:** **Blane** bmeier@crownmail.net, **Don** donslack5@msn.com, **Kent Ziegler** Kntzig001@aol.com, **Nick D** ndierckman@gmail.com, **Nick V** nick@willamette-equities.com, **Robb** robb@funnelbox.com, **Rose** Rose@ocgolfclub.com, BMUMMB@comcast.net
**Cc:** BRIAN D SHAW brian_d_shaw@msn.com, danh@e-c-co.com

Hello everyone.
I quick update. Brian and I have been working designing lawn signs with my good friend John Higgins. They are attached. I would appreciate any feedback ASAP. I will also be sending a photo of Brian we had taken today for the voters Pamphlet as well as a couple we did with Les De Asis. Had a great lunch with Les. Please do not share these outside our group until it is finalized.
Please let me know your thoughts right away.
Thanks,
Dan






From: **Dan Fowler**  DanF@abernethycenter.com
Subject: Brian Shaw 10.29.14 Nice Flyer
Date: August 26, 2018 at 5:33 PM
To: Brian Shaw  brian_d_shaw@msn.com

**From:** Brian Shaw <bshaw4oc@gmail.com>
**Sent:** Wednesday, October 22, 2014 6:08 PM
**To:** Dan Fowler
**Subject:** Fwd: FW: Brian Shaw 10.29.14

---------- Forwarded message ----------
From: <JWilson@clackamasreview.com>
Date: Wed, Oct 22, 2014 at 4:42 PM
Subject: FW: Brian Shaw 10.29.14
To: bshaw4oc@gmail.com

Hi Brian,
Attached is your revised Who's Who ad. Please let me know if you approve or would like to make changes. Thanks
**John Wilson**  Advertising Account Executive
Clackamas Review • Oregon City News
6605 SE Lake Rd. Portland, OR 97222
Phone: 503 546 0789 · Fax: 503 620 3433
Mobile: 503 705 2858
Special Publications / Online Magazines
Follow Us on Facebook!





- Historic Review Board — 10 years (founding member)
- Parks and Recreation Committee — 10 years
- Urban Renewal Commission — 4 years
- Planning Commission — 2 years
- Budget Committee — 2 years
- Knights of Columbus, St. John the Apostle Church

## Endorsed By

- Oregon City Chamber of Commerce
- Doug Neeley, Mayor
- Former Mayors:
  Eddy Allick    Don Anderson
  Alice Norris   Dan Fowler
  Ron Thom
- Les DuAsis, Benchmade Knives
- Carl Coffman
- Robb Crocker, Funnelbox

Legacy Project (Blue Heron).
- Work tirelessly to bring another world-class project like The Rivers / Cabela's to Oregon City

## Live Here, Work Here

With your support, the goal of attracting new jobs and revenues to Oregon City will become a reality --allowing our citizens to live here and also work here.

*"I can help our great city realize its potential as a livable, healthy, and prosperous community."*

Paid for by Brian Shaw for Oregon City

# Live Here, Work Here



| ID# 486857.102914 | | SIZE: 5"x7.75" |
| --- | --- | --- |
| ACCT: | Friends Brian Shaw | |
| REP: | John W | |
| PUB: | Who's Who/CR | |
| LAST REV: | | CREATED: Gary 10/22/14 |
| JOB NOTES: | 4c | |

CIRCLE NEXT STEP!
OK as is!   New PDF   OK w/Changes   NOT OK NEED NEW PROOF

 **Gmail**

**James Nicita <james.nicita@gmail.com>**

## Requested items
1 message

**Dan Fowler** <DanF@abernethycenter.com>                                    Fri, Oct 27, 2023 at 4:07 PM
To: "james.nicita@gmail.com" <james.nicita@gmail.com>

---------- Forwarded message ----------
From: Brian Shaw <BDS@ingersoll-imc.com>
To: Dan Fowler <DanF@abernethycenter.com>
Cc:
Bcc:
Date: Fri, 14 Sep 2018 20:52:33 +0000
Subject: campaign PSA

Your thoughts…..30 sec PSA


-----------------------------------------------------------
Ingersoll Cutting Tool Company
www.ingersoll-imc.com


---------- Forwarded message ----------
From: Nancy Ide <nancyide4oc@gmail.com>
To: DON SLACK <donslack5@msn.com>, Brian Shaw <brian_d_shaw@msn.com>, Nick Dierckman
<ndierckman@gmail.com>, renate mengelberg <renatemengelberg@yahoo.com>, Doug Neeley
<intstats@sbcglobal.net>, David Wimmer <dmwimmer@comcast.net>, Claire Met <hawaii0317@gmail.com>,
William Gifford <william@smallflags.com>, Dan Fowler <DanF@abernethycenter.com>, Alice Norris
<norrisa@teleport.com>, Daphne Wuest <mdwuest@gmail.com>
Cc:
Bcc:
Date: Mon, 27 Jun 2016 19:11:07 +0000
Subject: Campaign Update
Hello Supporters!

I've been busy on the campaign trail and thought I'd give you and **update** on what's been happening since the
committee met June 12th. I'm adding events to my calendar frequently, but **please don't hesitate to text me if
you become aware of an event** that would be helpful for me to attend. 503-758-6363 If I'm available, I'll be there!

If you are willing to distribute fundraising letters, brochures, or wear a "Vote for Nancy Ide" button around town, I
will get these to you. LET ME KNOW!

I'm ALWAYS open to suggestions, ideas for campaigning, etc. I need your help to make this campaign successful.

Ex. K
P. 14 of 16

From: **Blane Meier**  bmeier@crownmail.net
Subject: DH Response to Chamber Questionnaire
Date: September 2, 2014 at 1:35 AM
To: Dan Fowler  DanF@abernethycenter.com, William Gifford  William@smALLFLAGs.com, Kntzig001@aol.com, DON SLACK
donslack5@msn.com, ndierckman@gmail.com, robb@funnelbox.com, Rose Holden  Rose@ocgolfclub.com, Nick Veroske
nick@willamette-equities.com
Cc: danh@e-c-co.com

Dan,
Really good answers.  I made some changes to create efficiency, connection,
and flow.  Also, I editorialized a bit in the last section regarding Urban
Renewal Financing.  Feel free to delete the additional if they do not
reflect your views.

Regarding TIF, I agree that voter-approved bonding is the law of the land,
but the clear intent of the measure's backers was to introduce an additional
roadblock to projects deemed undesirable. If the answer to effective
management of taxpayer funds is to require a vote of the people, then
perhaps staff salaries, employee benefits, and the city budget itself ought
to be put up for a vote of the people--after all, it's all their money,
right?  I'm being sarcastic, of course, but I believe the misuse of UR funds
could have been more effectively resolved through internal policies rather
than taking projects to a public vote.  There is too much uncertainty in the
voting process and I'm betting that most developers will not be willing to
risk millions of upfront costs (lawyer and architect fees, studies, reports,
administrative labor costs, etc.) only to be shot down by a vote of the
people--people who are ultimately vulnerable to misleading and negative
anti-retail, anti-minimum wage, "malls are dead" grassroots campaign
messages.  I'm open to your input on these points, Dan.  Just offering my 2
cents.

Also, thanks for stepping up to run for Mayor.  I know it's a lot of
responsibility and I'm grateful that you chose to take up the challenge.

Blane--


-----Original Message-----
From: Dan Fowler [mailto:DanF@abernethycenter.com]
Sent: Sunday, August 31, 2014 10:49 AM
To: Blane D. Meier (bmeier@crownmail.net); William Gifford;
Kntzig001@aol.com; DON SLACK; ndierckman@gmail.com; robb@funnelbox.com; Rose
Holden; Nick Veroske
Cc: danh@e-c-co.com
Subject: FW: Fwd: Brian's & Dan's Lawn Sign

Hello All,

Dan H has asked me to forward his answers to a questionnaire for review and
comment.  Please see his request below.  Please give your comments directly
to Dan but cc all.

Thanks,

Dan F

_____
From: Dan Holladay [danh@e-c-co.com]
Sent: Saturday, August 30, 2014 5:49 PM
To: Dan Fowler
Subject: Re: Fwd: Brian's & Dan's Lawn Sign

Dan attached is my draft of the chamber question please share it with a few
people. Please edit for grammar and spelling, track changes. If there are
any suggestions about content please send them via email please do not edit
content in this form.

Thanks
Dan H



**CERTIFICATE OF FILING AND SERVICE**

I JAMES J. NICITA, hereby certify that on November 24, 2023 I filed the foregoing **DECLARATION OF JAMES NICITA IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL PRODUCTION FROM SCHWABE WILLIAMSON & WYATT, P.C.** with the U.S. District Court of Oregon via the Court's electronic filing system ("E-File").

I further certify that on November 24, 2023, I served the foregoing **DECLARATION OF JAMES NICITA IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL PRODUCTION FROM SCHWABE WILLIAMSON & WYATT, P.C.** upon Defendants Daniel W. Holladay and City of Oregon City by E-File to the their following counsel:

Aaron Hisel
OSB No. 161265
Capitol Legal Services
901 Capitol St NE,
Salem, OR, 97301
(503) 223-3000
aaron@capitol.legal

I further certify that on November 24, 2023, I served the foregoing **DECLARATION OF JAMES NICITA IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL PRODUCTION FROM SCHWABE WILLIAMSON & WYATT, P.C.** upon Schwabe Williamson & and Wyatt, P.C. by first class mail, return receipt requested, at the following address:

Schwabe Williamson & Wyatt, P.C.
1211 SW 5th Ave., Suite 1900
Portland, OR 97204

I further certify that on November 24, 2024, I served the foregoing **DECLARATION OF JAMES NICITA IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL PRODUCTION FROM SCHWABE WILLIAMSON & WYATT, P.C.** upon Colin Folawn, general counsel for Schwabe Williamson & and Wyatt, P.C. by first class mail and email, at the following address:

**Declaration of James Nicita in Support of Plaintiff's**
**Motion to Compel Production From Schwabe**
**Williamson & Wyatt, P.C. - 6**

**James J. Nicita**
**Attorney at Law**
**302 Bluff Street**
**Oregon City, Oregon 97045**
**p) (503)-799-0725**
**e) james.nicita@gmail.com**

Colin Folawn
OSB No. 112298
General Counsel
Schwabe Williamson & Wyatt, P.C.
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
(206)-407-1500
cfolawn@schwabe.com

DATED November 24, 2023

<u>s/ James J. Nicita</u>
James J. Nicita
OSB No. 024068
302 Bluff Street
Oregon City, OR
(503) 799-0725
james.nicita@gmail.com

Plaintiff *Pro Se*

**Declaration of James Nicita in Support of Plaintiff's**
**Motion to Compel Production From Schwabe**
**Williamson & Wyatt, P.C. - 7**

**James J. Nicita**
**Attorney at Law**
**302 Bluff Street**
**Oregon City, Oregon 97045**
**p) (503)-799-0725**
**e) james.nicita@gmail.com**